UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
THOMAS GESUALDI, LOUIS BISIGNANO, :
MICHAEL O'TOOLE, MICHAEL C. BOURGAL, :
DARIN JEFFERS, FRANK H. FINKEL, MARC :
HERBST, THOMAS CORBETT, ROBERT G. : Civil Action No.:
WESSELS and ROCCO TOMASSETTI, SR., as : 2:24-cv-02049-SIL
Trustees and Fiduciaries of the Local 282 Welfare :
Trust Fund, the Local 282 Pension Trust Fund, the :
Local 282 Annuity Trust Fund, the Local 282 Job :
Training Fund, and the Local 282 Vacation and Sick :
Leave Trust Fund, :
　　　　　　　　　　　　　　　　　　　　　　　 :
　　　　　　　　　　　　　　　　Plaintiffs, :
　　　　　　　　　　　　　　　　　　　　　　　 :
　　　　　　　vs. :
　　　　　　　　　　　　　　　　　　　　　　　 :
GWA MECHANICAL INC., :
　　　　　　　　　　　　　　　　　　　　　　　 :
　　　　　　　　　　　　　　　　Defendant. :
　　　　　　　　　　　　　　　　　　　　　　　 :
------------------------------------------------------------------X

## **DECLARATION OF MICHAEL S. ADLER**

I, Michael S. Adler, under penalty of perjury and in lieu of an affidavit as permitted by 28 U.S.C. § 1746, declare as follows:

　　　1.　　I am an attorney with the law firm of Cohen, Weiss and Simon LLP (the "Firm"), counsel to plaintiffs herein, and I am a member of the bar of this Court.

　　　2.　　I am fully familiar with the facts and proceedings herein.

　　　3.　　I submit this declaration in support of plaintiffs' application for a default judgment and order against defendant GWA Mechanical Inc. ("GWA").

Procedural History

　　　4.　　This is an action under Section 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1145, brought by fiduciaries of multiemployer benefits plans against an employer to collect to collect delinquent contributions owing to the plans.

10067240.1

5. The action commenced on March 20, 2024 with the filing of the Summons and Complaint. A copy of the Complaint is attached as Exhibit A.

6. GWA was served on March 22, 2024. The Affidavit of Service was filed with the Clerk of Court on March 22, 2024. A copy of the Affidavit of Service is attached as Exhibit B.

7. The time for GWA Mechanical Inc. ("GWA") to answer or otherwise move with respect to the complaint herein has expired.

8. GWA has not answered or otherwise moved with respect to the complaint, and the time for GWA to answer or otherwise move has not been extended.

9. The Clerk of the Court entered the default on April 25, 2024. (Docket No. 8).

The Collective Bargaining and Trust Agreements

10. GWA is a party to the Building Material Freight Suppliers Memorandum of Agreement with Local 282 for the period from May 1, 2018 through April 30, 2023 (the "2023 MOA"). May 31, 2024 Declaration of Joseph Puccio ("Puccio Decl.") ¶ 12; Ex. B(2023 MOA); Ex. C (Building Material Freight Suppliers Collective Bargaining Agreement with Local 282 for the period from May 1, 2014 through April 30, 2018 (the "2018 CBA.

11. The 2018 CBA binds Employers to the Trust Agreement. Specifically, the 2018 CBAs provides that the Funds' Restated Agreement and Declaration of Trust ("Trust Agreement") is "hereby made a part of this Agreement with the same force and effect as if fully incorporated herein, and the Employer and the Union hereby agree that upon the execution of this Agreement they shall be deemed parties to said Trust Agreement[]." Puccio Decl. ¶ 13; Ex. C (2018 CBA), at 11.

2

12. Thereafter, by its conduct, GWA evinced intent to be bound by the Building Material Freight Suppliers Memorandum of Agreement with Local 282 for the period from May 1, 2023 through April 30, 2029 (the 2029 MOA") (collectively, with the 2023 MOA and 2018 CBA, the "CBAs"), and thereby adopted said agreement by its conduct. Puccio Decl. ¶ 14; Ex. D (2029 MOA).

13. In short, the Trust Agreement provides:

> In the event the Employer has neither signed nor authorized an Industry association to sign a current collective bargaining agreement on its behalf, the Employer shall remain obligated to make timely contributions to each Fund as set forth in the most recent collective bargaining agreement to which the Employer is a party unless the Trustees have received notice from the Employer, at least 60 days prior to the expiration of the most recent collective bargaining agreement to which the Employer is a party, that the Employer does not intend to sign a new collective bargaining agreement and will not contribute to the Funds for work performed after the expiration of the most recent collective bargaining agreement to which it is a party. If the Employer makes contributions at the rates stated in the current collective bargaining agreement applicable to its Industry, the Employer shall be deemed a party to that current collective bargaining agreement, and shall be obligated to make timely contributions to each Fund as set forth in that collective bargaining agreement.

Puccio Decl. ¶ 15; Ex. A (Trust Agreement), at 24-25.

14. GWA did not notify the Trustees of intent not to sign a new collective bargaining agreement, in accord with the Trust Agreement terms, thereby adopting the 2029 MOA. Puccio Decl. ¶ 16.

15. The CBAs require GWA to make contributions to the Funds on behalf of its employees who are covered by the CBAs, at specified rates for each hour of covered employment, subject to certain limitations set forth in the CBAs. Puccio Decl. ¶ 17; Ex. A (2023 MOA); Ex. B (2018 CBA) at 9-11; Ex. D (2029 MOA).

16. Pursuant to the CBAs, contributions are due forty-five (45) days after the close of the calendar month. Puccio Decl. ¶ 18; Ex. A (2023 MOA); Ex. B (2018 CBA) at 10; Ex. D (2029 MOA).

17. Along with the contributions, GWA is also required to submit remittance reports to the Funds. The remittance reports provide GWA's statement of the employees who performed work covered by the CBAs and the number of hours each such employee worked in covered employment. Puccio Decl. ¶ 19; Ex. A (Trust Agreement), at 25.

18. To verify the accuracy of the remittance reports submitted by Employers and to determine whether contributions are being made in accordance with the applicable collective bargaining agreements, the Funds conduct agreed-upon procedures engagements (commonly referred to as "audits"). The Trust Agreement authorizes the Trustees to examine an Employer's books and records "at any time." Puccio Decl. ¶ 21; Ex. A (Trust Agreement), at 25.

19. If an Employer refuses to submit to audit or fails to submit remittance reports, the Trustees estimate the amount of contributions owed based on formulas in the Trust Agreement. Puccio Decl. ¶ 27.

20. The Trust Agreement provides that an Employer who fails to submit the required remittance reports must pay an increased monthly contribution, which is computed by first adding 10% to the number of hours for the month in which the largest number of hours were reported in the previous twelve (12) months or fifty two (52) weeks (or any combination thereof) worth of remittance reports submitted by the Employer that reflect at least one hour of covered work performed (hereinafter referred to as the "base month"). This Section of the Trust Agreement further provides that: (1) in the event that an audit discloses unreported hours for the base month, the amount of said unreported hours plus 10% thereof shall be added to arrive at the total number

4

of covered hours, and (2) if there is no base month because there are no previous remittance reports or audit reports, then the Employer shall be deemed to have the number of employees that the Union reports in writing that the Employer is employing, with each employee deemed to have worked 40 hours per week for the entire unreported period. Once a total number of covered hours is arrived at by the above-described methods, it is then multiplied by the then-current contribution rates to arrive at the Employer's liability for monthly contributions. Puccio Decl. ¶ 28; Ex. A (Trust Agreement), at 25-26.

21. The Trust Agreement also provides that the Trustees are entitled to a mandatory injunction directing GWA to submit to audit. Puccio Decl. ¶ 29; Ex. A (Trust Agreement), at 26.

Audit #20-1143

22. The Funds' outside auditors performed an audit of GWA's books and records for the period from September 1, 2018 through October 1, 2019 (Audit # 20-1143). Puccio Decl. ¶ 23.

23. Audit # 20-1143 reflects $3,514.01 in contributions due. Puccio Decl. ¶ 25.

24. The Funds have not received any payment on Audit # 20-1143. Puccio Decl. ¶ 26.

Estimated Contributions

25. Despite requests, GWA has failed to submit its books and records to audit for the period commencing October 2, 2019. Puccio Decl. ¶ 30.

26. Despite requests, GWA failed to submit remittance reports for the period commencing October 2021. Puccio Decl. ¶ 31.

27. Accordingly, the Fund Office applied the Trust Agreement's estimated contribution provisions to estimate the contributions owed to the Funds by GWA for the period from October 2021 through March 2024. Puccio Decl. ¶ 32.

28. The total amount of estimated contributions due for the months of October 2021 through March 2024 is $332,230.80. Puccio Decl. ¶ 37.

Late-Payment

29. Funds' records reflect that GWA paid late $4,335.04 in contributions for the month of March 2020,[1] with payment being remitted on July 17, 2020. Puccio Decl. ¶ 38.

Plaintiffs Are Entitled to Interest, Liquidated Damages, Administrative Fees, Audit Costs, and Attorney's Fees and Costs Incurred

30. GWA's failure to pay the Funds the required contributions constitute a violation of Section 515 of ERISA, 29 U.S.C. §1145, which obligates employers to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement.

31. Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), mandates that, "[i]n any action under this subchapter by a fiduciary for or on behalf of a Plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan:

> (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of (i) the interest on the unpaid contributions or; (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent …of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action, and (E) such other legal or equitable relief as the court deems appropriate…."

---

[1] The Complaint mistakenly lists the March contributions as May contributions.

6

32. The Trust Agreement similarly provides that plaintiffs are entitled to interest, liquidated damages, administrative fees, audit fees, attorney's fees, and costs. Puccio Decl. Ex. A (Trust Agreement), at 27.

Interest

33. Pursuant to the Trust Agreement and Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), GWA is required to pay interest on the delinquent contributions.

34. The Trust Agreement provides for interest to be calculated at the rate of 1-1/2 percent per month. Puccio Decl. Ex. A (Trust Agreement amendment), at 27.

35. Accordingly, interest has been calculated at the rate of 1-1/2 percent per month, or eighteen percent (18%) per year.

36. Interest is calculated from the date due. Puccio Decl. Ex. A (Trust Agreement), at 48.

37. Here, interest was determined, for each of the Funds separately, by (1) taking eighteen percent of the monthly contribution amount, (2) dividing that number by 365 days to determine the per diem (daily) interest rate, and (3) multiplying the daily interest rates by the number of days between the date the contributions were due, and if still unpaid the date the interest calculation was performed (June 10, 2024) or if late-paid, the date of payment.[2]

38. Wirth respect to Audit 2#20-1143, the auditor calculated interest from the monthly dates due through February 24, 2021. June 5, 2024 Declaration of Ken Jones ("Jones Decl.") ¶ 32; Ex. A (Audit #20-1143), at 1-2.

---

[2] For example, interest on estimated contributions for October 2021 was calculated by (1) multiplying the contribution amount $10,920.80 by 18% (0.18), which equals $1,965.744, (2) which was then multiplied by the number of days between the due date December 15, 2021 and June 10, 2024 (908 days), equaling $1,784,895.55, (3) which was then divided by 365 (days in a year), equaling $4,890.12 in interest due for October 2021 estimated contributions.

7

39. The total amount of interest for that period is $1,028.01. *Id.*

40. As the audit delinquency remains unpaid, interest from February 25, 2021 through June 10, 2024 totals $2,081.26.[3]

41. Therefore, the total amount of interest for Audit #20-1143 equals $3,109.27 ($1,028.01 plus $2,081.26).

42. In addition, interest on Audit #20-1143 contributions continues to accrue from June 11, 2024 at a $1.73 daily per diem rate.[4]

43. GWA owes $76,052.15 in interest on estimated contributions, calculated through June 10, 2024, broken down as follows:

| Month | Total Contributions | Calculation Date | Interest Start Date | Days Late | Interest |
|---|---|---|---|---|---|
| 10/31/2021 | $10,920.80 | 6/10/24 | 12/15/21 | 908 | $4,890.12 |
| 11/30/2021 | $10,920.80 | 6/10/24 | 1/14/22 | 878 | $4,728.56 |
| 12/31/2021 | $10,920.80 | 6/10/24 | 2/14/22 | 847 | $4,561.60 |
| 1/31/2022 | $10,920.80 | 6/10/24 | 3/17/22 | 816 | $4,394.65 |
| 2/28/2022 | $10,920.80 | 6/10/24 | 4/14/22 | 788 | $4,243.85 |
| 3/31/2022 | $10,920.80 | 6/10/24 | 5/15/22 | 757 | $4,076.90 |
| 4/30/2022 | $10,920.80 | 6/10/24 | 6/14/22 | 727 | $3,915.33 |
| 5/31/2022 | $10,920.80 | 6/10/24 | 7/15/22 | 696 | $3,748.38 |
| 6/30/2022 | $10,920.80 | 6/10/24 | 8/14/22 | 666 | $3,586.81 |
| 7/31/2022 | $11,017.60 | 6/10/24 | 9/14/22 | 635 | $3,450.17 |
| 8/31/2022 | $11,017.60 | 6/10/24 | 10/15/22 | 604 | $3,281.74 |
| 9/30/2022 | $11,017.60 | 6/10/24 | 11/14/22 | 574 | $3,118.74 |
| 10/31/2022 | $11,017.60 | 6/10/24 | 12/15/22 | 543 | $2,950.30 |
| 11/30/2022 | $11,017.60 | 6/10/24 | 1/14/23 | 513 | $2,787.30 |
| 12/31/2022 | $11,017.60 | 6/10/24 | 2/14/23 | 482 | $2,618.87 |
| 1/31/2023 | $11,017.60 | 6/10/24 | 3/17/23 | 451 | $2,450.43 |
| 2/28/2023 | $11,017.60 | 6/10/24 | 4/14/23 | 423 | $2,298.30 |
| 3/31/2023 | $11,017.60 | 6/10/24 | 5/15/23 | 392 | $2,129.87 |
| 4/30/2023 | $11,017.60 | 6/10/24 | 6/14/23 | 362 | $1,966.87 |
| 5/31/2023 | $11,017.60 | 6/10/24 | 7/15/23 | 331 | $1,798.43 |

---

[3] Calculated as follows: $3,514.01 in audited contributions x 18% x 1,201 (days between February 25, 2021 and June 10, 2024 /365.

[4] Calculated as follows: $3,514.01 in audited contributions x 18% /365.

| Month | Total Contributions | Calculation Date | Interest Start Date | Days Late | Interest |
|---|---|---|---|---|---|
| 6/30/2023 | $11,017.60 | 6/10/24 | 8/14/23 | 301 | $1,635.43 |
| 7/31/2023 | $11,303.60 | 6/10/24 | 9/14/23 | 270 | $1,505.08 |
| 8/31/2023 | $11,303.60 | 6/10/24 | 10/15/23 | 239 | $1,332.28 |
| 9/30/2023 | $11,303.60 | 6/10/24 | 11/14/23 | 209 | $1,165.05 |
| 10/31/2023 | $11,303.60 | 6/10/24 | 12/15/23 | 178 | $992.24 |
| 11/30/2023 | $11,303.60 | 6/10/24 | 1/14/24 | 148 | $825.01 |
| 12/31/2023 | $11,303.60 | 6/10/24 | 2/14/24 | 117 | $652.20 |
| 1/31/2024 | $11,303.60 | 6/10/24 | 3/16/24 | 86 | $479.40 |
| 2/28/2024 | $11,303.60 | 6/10/24 | 4/13/24 | 58 | $323.31 |
| 3/31/2024 | $11,303.60 | 6/10/24 | 5/15/24 | 26 | $144.93 |
| Totals | $332,230.80 | | | | $76,052.15 |

44. In addition, interest on estimated contributions continues to accrue from June 11, 2024 at a $163.84 daily per diem rate.[5]

45. GWA owes $134.65 in interest on late paid March 2020 contributions.[6]

46. Therefore, GWA owes $79,296.07 in total interest ($3,109.27 + $76,186.81 +$134.65), plus owes $165.57 ($1.73 + $163.84) in per diem interest (which begins accruing on June 11, 2024).

Liquidated Damages

47. Pursuant to the Trust Agreement and Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), GWA is also required to pay liquidated damages in an amount greater than (i) the amount of interest owed, or (ii) 20 percent of the contributions. Puccio Decl. Ex. A (Trust Agreement), at 27.

---

[5] Calculated as follows: $332,230.80 in estimated contributions x 18% / 365.

[6] Calculated as follows: $4,335.04 in contributions x 18% x 63 (number of days between May 15, 2020 due date and July 17, 2020 payment date) / 365.

9

48. Twenty percent of $3,514.01 in audited contributions equals $702/80 and interest on the audited contribution delinquency equals $3,109.27.

49. Accordingly, $3,109.27 in liquidated damages on the audit delinquency is due.

50. $90,262.61 in liquidated damages on estimated contributions are due, broken down as follows:

| Month | Total Contributions | Interest | Liquidated Damages |
|---|---|---|---|
| 10/31/2021 | $10,920.80 | $4,890.12 | $4,890.12 |
| 11/30/2021 | $10,920.80 | $4,728.56 | $4,728.56 |
| 12/31/2021 | $10,920.80 | $4,561.60 | $4,561.60 |
| 1/31/2022 | $10,920.80 | $4,394.65 | $4,394.65 |
| 2/28/2022 | $10,920.80 | $4,243.85 | $4,243.85 |
| 3/31/2022 | $10,920.80 | $4,076.90 | $4,076.90 |
| 4/30/2022 | $10,920.80 | $3,915.33 | $3,915.33 |
| 5/31/2022 | $10,920.80 | $3,748.38 | $3,748.38 |
| 6/30/2022 | $10,920.80 | $3,586.81 | $3,586.81 |
| 7/31/2022 | $11,017.60 | $3,450.17 | $3,450.17 |
| 8/31/2022 | $11,017.60 | $3,281.74 | $3,281.74 |
| 9/30/2022 | $11,017.60 | $3,118.74 | $3,118.74 |
| 10/31/2022 | $11,017.60 | $2,950.30 | $2,950.30 |
| 11/30/2022 | $11,017.60 | $2,787.30 | $2,787.30 |
| 12/31/2022 | $11,017.60 | $2,618.87 | $2,618.87 |
| 1/31/2023 | $11,017.60 | $2,450.43 | $2,450.43 |
| 2/28/2023 | $11,017.60 | $2,298.30 | $2,298.30 |
| 3/31/2023 | $11,017.60 | $2,129.87 | $2,203.52 |
| 4/30/2023 | $11,017.60 | $1,966.87 | $2,203.52 |
| 5/31/2023 | $11,017.60 | $1,798.43 | $2,203.52 |
| 6/30/2023 | $11,017.60 | $1,635.43 | $2,203.52 |
| 7/31/2023 | $11,303.60 | $1,505.08 | $2,260.72 |
| 8/31/2023 | $11,303.60 | $1,332.28 | $2,260.72 |
| 9/30/2023 | $11,303.60 | $1,165.05 | $2,260.72 |
| 10/31/2023 | $11,303.60 | $992.24 | $2,260.72 |
| 11/30/2023 | $11,303.60 | $825.01 | $2,260.72 |
| 12/31/2023 | $11,303.60 | $652.20 | $2,260.72 |
| 1/31/2024 | $11,303.60 | $479.40 | $2,260.72 |
| 2/28/2024 | $11,303.60 | $323.31 | $2,260.72 |
| 3/31/2024 | $11,303.60 | $144.93 | $2,260.72 |
| Totals | $332,230.80 | $76,186.81 | $90,262.61 |

51. Therefore, GWA owes $93,371.88 ($3,109.27 + $90,262.61) in total liquidated damages.

Audit Fees

52. The Trust Agreement provides that GWA is responsible to pay audit fees in the amount of $350 per day or such other amounts as the Trustees in their sole discretion shall apply in all cases in which collection is referred to Fund Counsel. Puccio Decl. ¶ 39; Ex. A (Trust Agreement), at 28-29.

53. Fund Office records reflect that the outside auditors charged $1,353.93 in fees for performing Audit #20-1143. Puccio Decl. ¶ 40.

Attorney's Fees and Costs

54. Plaintiffs seek to recover attorney's fees and costs pursuant to Sections 502(g)(2) of ERISA, 29 U.S.C. §§1132 (g)(2), and the Trust Agreement. Puccio Decl. Ex. A (Trust Agreement), at 30.

55. Attorneys and paralegals at the Firm maintain contemporaneous time records which are entered into a computer based time record and billing program. At the end of each month, billing records are compiled, reviewed for typographical errors, and reduced, if appropriate. The bills are then submitted to the client for payment. Attached as Exhibit C are copies of monthly bills that the Firm sent to the Funds pertaining to the instant matter and "pre-bills" which reflect services performed by the Firm, but not yet billed to the Funds. The bills and pre-bills provide the date legal services were performed, and the contemporaneously kept record of legal services performed (using the initials to identify the attorney or paralegal who performed the services), along with the amount of time spent (in six minute increments) in performance of these services and a statement of the actual amount of fees and expenses billed to the Funds each month in the instant matter.

56. The individuals at the Firm who spent time working on this litigation are myself and Courtney Vice, an associate of the Firm.

57. Hours were spent as follows:

| | | |
|---|---|---|
| Michael S. Adler | $5,025.00 | (15 hrs. at $335.00/hr.) |
| Courtney Vice | $2,044.00 | (7.3 hrs. at $280.00/hr.) |
| **TOTAL** | **$7,069.00** | |

58. Plaintiffs seek attorney's fees in this litigation from its inception through the filing of the motion for default judgment. These attorney's fees relate to time spent:

    (a) drafting demand letters;

    (b) communicating with the Fund Office prior to the filing of the complaint;

    (c) preparing the complaint;

    (d) communicating with the Trustees regarding the case;

    (e) calculating the amounts and preparing this default motion. (Like with all default motions, even in instances where prior motions in the same case have been filed, extensive time is necessary to calculate and update the amounts due, revise the documents filed to account for the additional amounts due, audit disputes, and communications with the defendant, among other changes).

*See* Ex. C.

59. It is my opinion that the fees charged in this matter are reasonable. As far as I am aware, the fees charged in this matter are comparable to fees rates charged by other firms for similar work. The fees here also reflect the expertise of the attorneys and paralegals representing the Fund. The Firm is engaged almost exclusively in the representation of labor unions and employee benefit plans.

60. I am a 2002 graduate of the George Washington University Law School and since 2003 have been engaged in employee benefits practice, including litigating cases to collect monies owed to employee benefit plans. I assist clients in drafting, implementing and monitoring

all phases of their collection policies. I have been counsel of record in over 250 cases, primarily handling ERISA collections (in court as well as arbitration proceedings), including complex, multi-party *alter ego* and single-employer litigations. I also litigate withdrawal liability claims, including claims against controlled group members. I have secured multi-million dollar judgments and settlements on behalf of benefit plan clients. Prior to joining the Firm, I engaged in a similar practice of labor and employee benefits law in New York and the District of Columbia.

61.  Courtney Vice is a 2022 graduate of Fordham Law School, where they served as Online Managing Editor of the Fordham Urban Law Journal. Before joining the Firm in February 2023, they worked as an investigator at the Department of Labor's Employee Benefits Security Administration and reviewed numerous ERISA plans' compliance with federal law.

62.  Plaintiffs have also incurred expenses (not including administrative and/or audit fees) of $530.29, including a court filing fee of $405, Overnight Mail postage of $47.29 and $78 for service of process upon GWA and. A copy of the service of process invoice is attached as Exhibit D. *See also* Ex. C.

63.  Therefore, attorney's fees and costs total $7,599.29.

Total Amounts

64.  GWA owes a total of $517,365.98, plus $165.47 in per diem interest (beginning June 11, 2024), broken down as follows:

|  | Contributions Due | Interest | Liquidated Damages | Audit Fees | Attorney's Fees and Costs |
|---|---|---|---|---|---|
| Audit 20-1143 | $3,514.01 | $3,109.27 | $3,109.27 | $1,353.93 |  |
| Contributions - Estimated | $332,230.80 | $76,052.16 | $90,262.61 |  |  |
| Late Paid Contributions |  | $134.65 |  |  |  |
| Totals | $335,744.81 | $79,296.07 | $93,371.88 | $1,353.93 | $7,599.29 |

13

I declare under penalty of perjury that to the best of my knowledge the foregoing is true and correct.

Dated: New York, New York
June 7, 2024

/s/ Michael S. Adler
Michael S. Adler

14