UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
THOMAS GESUALDI, LOUIS BISIGNANO,  :
MICHAEL O'TOOLE, MICHAEL C. BOURGAL,  :
DARIN JEFFERS, FRANK H. FINKEL, MARC  :
HERBST, THOMAS CORBETT, ROBERT G.  :  Civil Action No.:
WESSELS and ROCCO TOMASSETTI, SR., as  :  2:24-cv-02049-SIL
Trustees and Fiduciaries of the Local 282 Welfare  :
Trust Fund, the Local 282 Pension Trust Fund, the  :
Local 282 Annuity Trust Fund, the Local 282 Job  :
Training Fund, and the Local 282 Vacation and Sick  :
Leave Trust Fund,  :
:
                              Plaintiffs,  :
:
            vs.  :
:
GWA MECHANICAL INC.,  :
:
                             Defendant.  :
:
------------------------------------------------------------------X

## DECLARATION OF JOSEPH PUCCIO

I, Joseph Puccio, under penalty of perjury and in lieu of an affidavit as permitted by 28 U.S.C. § 1746, declare as follows:

        1.    I am a member of the Collections Department of the above-captioned Local 282 Trust Funds (the "Funds").

        2.    The Funds' Collections Department staff is responsible for ensuring that the hundreds of employers who contribute to the Funds each do so in a timely and accurate manner. For each reporting period when an employer fails to submit contributions, the Collections Department demands payment from that employer.

        3.    The Collections Department also demands interest when an employer fails to pay its contributions on time, demands payments of shortages when an employer fails to pay the full amount owing, and demands payment for bounced checks.

10066606.1

4. The Collections Department also refers matters to counsel where appropriate and, once matters are referred to counsel, provides information and assistance to counsel, including providing declarations for litigation such as this.

5. Additionally, the Collections Department oversees and administers the Funds' extensive and ongoing program of employer payroll audits and works to resolve disputes that arise with employers regarding amounts that the audits determine to be owing.

6. My responsibilities include, among other things, monitoring and overseeing the collection of contributions from Contributing Employers.

7. As such, I am familiar with those provisions of the Collective Bargaining Agreements between the Building Material Teamsters Local 282, International Brotherhood of Teamsters (the "Union") and various employers, and the Funds' Restated Agreement and Declaration of Trust (the "Trust Agreement") governing employer obligations to the Funds.

8. I submit this declaration in support of plaintiffs' application for a default judgment and order against defendant GWA Mechanical Inc. ("GWA")

The Parties and the Plan Documents

9. Plaintiffs are the Trustees and fiduciaries of the Funds.

10. The Funds are jointly administered by a Board of Trustees, comprised of an equal number of union-appointed and employer-appointed Trustees.

11. The Funds are governed by the Restated Agreement and Declaration of Trust (the "Trust Agreement"). A copy of the Trust Agreement is attached as Exhibit A.

12. GWA is a party to the Building Material Freight Suppliers Memorandum of Agreement with Local 282 for the period from May 1, 2018 through April 30, 2023 (the "2023 MOA"). A copy of the 2023 MOA is attached as Exhibit B. A copy of the Building Material Freight Suppliers Collective Bargaining Agreement with Local 282 for the period from May 1,

10066606.1

2014 through April 30, 2018 (the "2018 CBA"), incorporated by reference into the 2023 MOA, is attached as Exhibit C.

13.   The 2018 CBA binds Employers to the Trust Agreement. Specifically, the 2018 CBAs provides that the Trust Agreement is "hereby made a part of this Agreement with the same force and effect as if fully incorporated herein, and the Employer and the Union hereby agree that upon the execution of this Agreement they shall be deemed parties to said Trust Agreement[]." *See* Ex. C (2018 CBA), at 11.

14.   Thereafter, by its conduct, GWA evinced intent to be bound by the Building Material Freight Suppliers Memorandum of Agreement with Local 282 for the period from May 1, 2023 through April 30, 2029 (the 2029 MOA") (collectively, with the 2023 MOA and 2018 CBA, the "CBAs"), and thereby adopted said agreement by its conduct. A copy of the 2029 MOA is attached as Exhibit D.

15.   In short, the Trust Agreement provides:

> In the event the Employer has neither signed nor authorized an Industry association to sign a current collective bargaining agreement on its behalf, the Employer shall remain obligated to make timely contributions to each Fund as set forth in the most recent collective bargaining agreement to which the Employer is a party unless the Trustees have received notice from the Employer, at least 60 days prior to the expiration of the most recent collective bargaining agreement to which the Employer is a party, that the Employer does not intend to sign a new collective bargaining agreement and will not contribute to the Funds for work performed after the expiration of the most recent collective bargaining agreement to which it is a party. If the Employer makes contributions at the rates stated in the current collective bargaining agreement applicable to its Industry, the Employer shall be deemed a party to that current collective bargaining agreement, and shall be obligated to make timely contributions to each Fund as set forth in that collective bargaining agreement.

*See* Ex. A (Trust Agreement), at 24-25.

16. GWA did not notify the Trustees of intent not to sign a new collective bargaining agreement, in accord with the Trust Agreement terms, thereby adopting the 2029 MOA.

Obligation to Remit Contributions and Submit Remittance Reports

17. The CBAs require GWA to make contributions to the Funds on behalf of its employees who are covered by the CBAs, at specified rates for each hour of covered employment, subject to certain limitations set forth in the CBAs. *See* Ex. A (2023 MOA); Ex. B (2018 CBA) at 9-11; Ex. D (2029 MOA).

18. Pursuant to the CBAs, contributions are due forty-five (45) days after the close of the calendar month. *See* Ex. A (2023 MOA); Ex. B (2018 CBA) at 10; Ex. D (2029 MOA).

19. Along with the contributions, GWA is also required to submit remittance reports to the Funds. The remittance reports provide GWA's statement of the employees who performed work covered by the CBAs and the number of hours each such employee worked in covered employment. *See* Ex. A (Trust Agreement), at 25.

20. GWA submitted remittance reports reflecting at least one hour worked for September 2019 through March 2020 and June 2021 through October 2021. Copies of these remittance reports are attached as Exhibit E.[1]

21. To verify the accuracy of the remittance reports submitted by Employers and to determine whether contributions are being made in accordance with the applicable

---

[1] Under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), P.L. 104-91, which became effective April 14, 2003, health plans (which include the Local 282 Welfare Trust Fund) and their "business associates" (which include plaintiffs' counsel) are prohibited from disclosing "protected health information" regarding a health fund participant. Given this legislation, information in the remittance reports attached as Exhibit E that is not necessary for determination of this motion has been redacted.

10066606.1

collective bargaining agreements, the Funds conduct agreed-upon procedures engagements (commonly referred to as "audits"). The Trust Agreement authorizes the Trustees to examine an Employer's books and records "at any time." *See* Ex. A (Trust Agreement), at 25.

22. The Trust Agreement specifically defines "pertinent books and records" to include but not be limited to:

    (a) Payroll records, including payroll journals, time cards, print-outs, ledgers or any other form of payroll record;

    (b) Payroll tax records submitted to federal and state governments, including Forms 941, W-2;

    (c) Complete business income tax returns;

    (d) Cash disbursements records;

    (e) General ledgers;

    (f) Records relating to the hiring of trucks, including equipment vouchers, invoices and payment records; and

    (g) Any other records specifically requested by the Funds' auditors, including the classification of Employees, their social security numbers, and the amount of wages paid and hours worked.

*See* Ex. A (Trust Agreement), at 25.

<u>Audit #20-1143</u>

23. The Funds' outside auditors performed an audit of GWA's books and records for the period from September 1, 2018 through October 1, 2019 (Audit # 20-1143).

24. Consistent with our usual procedure, we provided the remittance report information, as input into the Funds' database to the auditors for the conduct of Audit # 20-1143.

25. Audit # 20-1143 reflects $3,514.01 in contributions due.

26. The Funds have not received any payment on Audit # 20-1143.

10066606.1

The Trust Agreement's Estimated Contribution
Provisions Where an Employer Fails to Submit to Audit

27. If an Employer refuses to submit to audit or fails to submit remittance reports, the Trustees estimate the amount of contributions owed based on formulas in the Trust Agreement.

28. The Trust Agreement provides that an Employer who fails to submit the required remittance reports must pay an increased monthly contribution, which is computed by first adding 10% to the number of hours for the month in which the largest number of hours were reported in the previous twelve (12) months or fifty two (52) weeks (or any combination thereof) worth of remittance reports submitted by the Employer that reflect at least one hour of covered work performed (hereinafter referred to as the "base month"). This Section of the Trust Agreement further provides that: (1) in the event that an audit discloses unreported hours for the base month, the amount of said unreported hours plus 10% thereof shall be added to arrive at the total number of covered hours, and (2) if there is no base month because there are no previous remittance reports or audit reports, then the Employer shall be deemed to have the number of employees that the Union reports in writing that the Employer is employing, with each employee deemed to have worked 40 hours per week for the entire unreported period. Once a total number of covered hours is arrived at by the above-described methods, it is then multiplied by the then-current contribution rates to arrive at the Employer's liability for monthly contributions. *See* Ex. A (Trust Agreement), at 25-26.

29. The Trust Agreement also provides that the Trustees are entitled to a mandatory injunction directing GWA to submit to audit. *See* Ex. A (Trust Agreement), at 26.

Estimated Contributions

30.  Despite requests, GWA has failed to submit its books and records to audit for the period commencing October 2, 2019.

31.  Despite requests, GWA has failed to submit remittance reports for the period commencing October 2021.

32.  Accordingly, I have applied the Trust Agreement's estimated contribution provisions to estimate the amount of contributions owed to the Funds by GWA for the period from October 2021 through March 2024.

33.  The contribution rates for each Fund for the months at issue are as follows:

| Fund: | Relevant Months | | |
|---|---|---|---|
| | 10/21-6/22 | 7/22-6/23 | 7/23-3/24 |
| Welfare Fund | $16.11 | $16.00 | $16.65 |
| Pension Fund | $8.71 | $9.04 | $9.04 |

*See* Ex. A (2023 MOA); Ex. B (2018 CBA) at 9-11; Ex. D (2029 MOA).

34.  GWA submitted remittance reports reflecting at least one hour of covered employment performed to the Funds for the following relevant months: September 2019 through March 2020 and June 2021 through October 2021. *See* Ex. E.

35.  In accordance with the Trust Agreement, the amount of contributions due from GWA for the months during which GWA did not submit any remittance reports has been determined by taking 110% of the number of hours reported for the relevant base months to the Funds, multiplied by the applicable contribution rates. For the months of October 2021 through March 2024, the base month used was December 2019 as that month had the highest number of

- 7 -

hours reported (400) to the Welfare and Pension Trust Funds during the twelve (12) prior months in which at least one hour was reported. *See* Ex. E.

36. Adding 10% to the 400 hours reported to the Welfare and Pension Trust Funds equals 440 hours, which was then multiplied by the applicable Welfare and Pension rates. The chart below sums those calculations:

| Month | Welfare | Pension | Total Contributions |
|---|---|---|---|
| 10/31/2021 | $7,088.40 | $3,832.40 | $10,920.80 |
| 11/30/2021 | $7,088.40 | $3,832.40 | $10,920.80 |
| 12/31/2021 | $7,088.40 | $3,832.40 | $10,920.80 |
| 1/31/2022 | $7,088.40 | $3,832.40 | $10,920.80 |
| 2/28/2022 | $7,088.40 | $3,832.40 | $10,920.80 |
| 3/31/2022 | $7,088.40 | $3,832.40 | $10,920.80 |
| 4/30/2022 | $7,088.40 | $3,832.40 | $10,920.80 |
| 5/31/2022 | $7,088.40 | $3,832.40 | $10,920.80 |
| 6/30/2022 | $7,088.40 | $3,832.40 | $10,920.80 |
| 7/31/2022 | $7,040.00 | $3,977.60 | $11,017.60 |
| 8/31/2022 | $7,040.00 | $3,977.60 | $11,017.60 |
| 9/30/2022 | $7,040.00 | $3,977.60 | $11,017.60 |
| 10/31/2022 | $7,040.00 | $3,977.60 | $11,017.60 |
| 11/30/2022 | $7,040.00 | $3,977.60 | $11,017.60 |
| 12/31/2022 | $7,040.00 | $3,977.60 | $11,017.60 |
| 1/31/2023 | $7,040.00 | $3,977.60 | $11,017.60 |
| 2/28/2023 | $7,040.00 | $3,977.60 | $11,017.60 |
| 3/31/2023 | $7,040.00 | $3,977.60 | $11,017.60 |
| 4/30/2023 | $7,040.00 | $3,977.60 | $11,017.60 |
| 5/31/2023 | $7,040.00 | $3,977.60 | $11,017.60 |
| 6/30/2023 | $7,040.00 | $3,977.60 | $11,017.60 |
| 7/31/2023 | $7,326.00 | $3,977.60 | $11,303.60 |
| 8/31/2023 | $7,326.00 | $3,977.60 | $11,303.60 |
| 9/30/2023 | $7,326.00 | $3,977.60 | $11,303.60 |
| 10/31/2023 | $7,326.00 | $3,977.60 | $11,303.60 |
| 11/30/2023 | $7,326.00 | $3,977.60 | $11,303.60 |
| 12/31/2023 | $7,326.00 | $3,977.60 | $11,303.60 |
| 1/31/2024 | $7,326.00 | $3,977.60 | $11,303.60 |
| 2/28/2024 | $7,326.00 | $3,977.60 | $11,303.60 |
| 3/31/2024 | $7,326.00 | $3,977.60 | $11,303.60 |
| **Totals** | $214,209.60 | $118,021.20 | **$332,230.80** |

10066606.1

37. Accordingly, the total amount of estimated contributions due for the months of October 2021 through March 2024 is $332,230.80.

Late-Payment

38. Funds' records reflect that GWA paid late $4,335.04 in contributions for the month of March 2020, with payment being remitted on July 17, 2020.

Audit Costs

39. The Trust Agreement provides that GWA is responsible to pay audit fees in the amount of $350 per day or such other amounts as the Trustees in their sole discretion shall apply in all cases in which collection is referred to Fund Counsel. *See* Ex. A (Trust Agreement), at 28-29.

40. Fund Office records reflect that the outside auditors charged $1,353.93 in fees for performing Audit #20-1143.

I declare under penalty of perjury that to the best of my knowledge the foregoing is true and correct.

Dated: 5/31/24
Lake Success, New York

Joseph Puccio