# Exhibit A

# AMENDED AND RESTATED

## AGREEMENT AND DECLARATION OF TRUST

WHEREAS Local 282, affiliated with the International Brotherhood of Teamsters (the "Union"), and Employers have entered and will enter into written collective bargaining agreements and participation agreements requiring contributions by the Employers for the purpose of providing welfare, pension, annuity, job training and /or vacation and sick leave benefits for Employees covered by said agreements, and

WHEREAS, to provide such benefits, there have previously been established five separate trust funds known as the Local 282 Pension Trust Fund, the Local 282 Welfare Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund and the Local 282 Vacation and Sick Leave Trust Fund (collectively "Funds"), pursuant to a written trust agreement duly entered into by and between the Union and the Employers, and the Trustees of said trusts, and

WHEREAS the Board of Trustees of said trusts desire to amend and restate the Agreement and Declaration of Trust, as from time to time amended;

NOW THEREFORE it is agreed that the Agreement and Declaration of Trust, with the Funds to be known as the "LOCAL 282 WELFARE, PENSION, ANNUITY, JOB TRAINING AND VACATION AND SICK LEAVE TRUST FUNDS," is hereby amended and restated and it is mutually understood and agreed as follows:

## ARTICLE I.
## DEFINITIONS

Section 1.    <u>Employer</u>.  The term "Employer" as used herein shall mean each Employer acceptable to the Trustees who has duly executed a Collective Bargaining Agreement ("CBA") with the Union and who is bound to this Agreement, and also any Employer not presently a party to such Collective Bargaining Agreement who hereafter executes such agreement or adopts such agreement by its conduct provided that such Employer satisfies the requirements for participation as established by the Trustees. The term "Employer" shall also include any successor or assign of the Employer or any common law alter ego/single employer.

Solely for the purpose of providing welfare, pension, annuity and job training benefits for their Employees, the Union and the Trust Funds shall also be considered an Employer, provided they pay contributions to the respective Funds with respect to any of their employees pursuant to a collective bargaining or participation agreement or for those not subject to collective bargaining agreements at the contribution rate contemporaneously in effect under the Local 282 High-Rise Contract.

An Employer shall be bound by the provisions of this Agreement. An Employer that ceases to be an Employer shall continue to be subject to the provisions of this

Agreement to the extent necessary to give effect to any obligations relating to its status as an Employer.

Section 2.    Union. The term "Union" as used herein shall mean Local 282, affiliated with the International Brotherhood of Teamsters, and any successor by consolidation, combination or merger.

Section 3.    Employee or Employees. The term "Employee" or "Employees" as used herein shall mean any person covered by and who fulfill the conditions of a collective bargaining or participation agreement that has been approved by the Board of Trustees, and who is engaged in employment with respect to which the Employer is obligated to make contributions to the Funds.

The term "Employees" shall also mean, if admitted to participation by the Trustees, any Employee of the Union or the Funds covered by a participation agreement or collective bargaining agreement and who is engaged in employment with respect to which the Employer is obligated to make contributions to the Trust Funds governed by this Agreement and Declaration of Trust and be bound by this Agreement and Declaration of Trust and any amendments thereto. Notwithstanding this paragraph, the Union and Funds shall not participate in the selection or replacement of Employer Trustees or vote as an Employer in any matter. Notwithstanding this paragraph, Fund employees may participate in the Funds without a participation agreement.

Section 4.    Trustees. The term "Trustees" as used herein shall mean the Board of Trustees consisting collectively of the Union Trustees and Employer Trustees designated in this Agreement and Declaration of Trust together with their successors designated in the manner provided herein.

Section 5.    Agreement and Declaration of Trust. The term "Agreement and Declaration of Trust" as used herein shall mean this Amended and Restated Agreement and Declaration of Trust, including any amendments hereto and modifications hereof made from time to time.

Section 6.    Policies. The term "Policy" or "Policies" as used herein shall mean the Policy or Policies of insurance or annuity purchased by the Trustees pursuant to this Agreement and Declaration of Trust and Accepted by the Trustees as part of the Trust Funds created under Articles II, III, IV, V and VI hereof, and all other Policies of insurance accepted by the Trustees as part of such Trust Funds, and shall also be deemed to include any amendments or riders attached to such Policy or Policies.

Section 7.    Contributions. The term "Employer Contributions" or "contributions" as used herein shall mean payments by Employers to any of the Trust Funds created by Articles II, III, IV, V and VI hereof in accordance with a collective bargaining or participation agreement.

-2-

Section 8.    Welfare Trust Fund. The term "Welfare Trust Fund" as used herein shall mean the trust fund created by Article II hereof.

Section 9.    Pension Trust Fund.The term "Pension Trust Fund" as used herein shall mean the trust fund created by Article III hereof.

Section 10.    Annuity Trust Fund.The term "Annuity Trust Fund" as used herein shall mean the trust fund created by Article IV hereof.

Section 11.    Job Training Trust Fund.The term "Job Training Trust Fund" as used herein shall mean the trust fund created by Article V hereof.

Section 12.    Vacation and Sick Leave Trust Fund.The term "Vacation and Sick Leave Trust Fund" as used herein shall mean the trust fund created by Article VI hereof.

Section 13.    Industry. The term "Industry" as used herein shall mean any group of Employers engaged in the same type of business who enter into uniform collective bargaining agreements with the Union.

Section 14.    Collective Bargaining Agreement.The term "collective bargaining agreement" ("CBA") as used herein shall mean any written collective bargaining agreement entered into between an Employer and the Union requiring contributions to the Funds or any of Funds.

Section 15.    Trust. The term "Trust," "Trusts," "Trust Fund" and "Trust Funds" shall mean the trusts created by Articles II, III, IV, V and VI hereof, or any of them.

Section 16.    Beneficiary. The term "Beneficiary" as used herein shall mean a person designated by a Participant, or by the terms of the Plan, who is or may become entitled to a benefit thereunder.

Section 17.    Spouse. The term "spouse" as used herein shall mean a person who is a legal spouse under New York law.

Section 18.    ERISA. The term "ERISA" as used herein shall mean the Employee Retirement Income Security Act of 1974, as amended.

Section 19.    Funds. The term "Funds" shall mean, collectively, the trusts created by Articles II, III, IV, V and VI hereof.

Section 20.    Participation Agreement. The term "participation agreement" as used herein shall mean an agreement acceptable to the Board of Trustees that evidences the obligation of the signatory thereto to be bound by this Trust Agreement and the actions of the Board of Trustees and to make contributions into the Trusts.

Section 21.    Code. The term "Code" means the Internal Revenue Code of 1986, as amended from time to time.

-3-

Section 22.    <u>Trust</u>. The term "Trust" as used herein shall mean the assets of the Fund and shall include the corpus and earnings, appreciations, or additions thereon and thereto held by the Board of Trustees for the purposes set forth in this Agreement.

## ARTICLE II.
## LOCAL 282 WELFARE TRUST FUND

Section 1.    There is hereby continued a trust, known hereinafter as the "Local 282 Welfare Trust Fund," which shall comprise the entire assets initially derived from Employer Contributions made for the purpose of providing welfare benefits heretofore or hereafter made to or for the account of this Trust pursuant to Collective Bargaining Agreements, together with all investments, income from investments, and any other property received and held by the Trustees of the Welfare Trust Fund for the uses, purposes and trusts set forth in this Article.

Section 2.    The Trustees of the Welfare Trust Fund agree to receive all such Employer Contributions, payments, deposits, monies, policies, and other properties and assets described or referred to in Section 1 of this Article II, and to hold the same in trust hereunder for the uses and purposes of the Trust created by this Article II.

Section 3.    The Welfare Trust Fund is created and established for the purpose of providing and maintaining through self-insurance (wherever permissible under the law and agreed upon by the Trustees) and through policies issued by duly licensed insurance carriers, group life and group accident and health, benefits, group hospitalization, medical and surgical benefits, dental benefits and prepaid legal services or any of such benefits, and insurance as may be determined by the Trustees for the benefit of the Employees, and if so determined by the Trustees, group insurance, in whole or in part, for hospitalization, surgical and medical care for the spouses of such Employees and their dependent children.

The welfare benefits under the program shall meet the requirements of the New York State Disability Benefits Law and the New Jersey Disability Benefits Law so that neither the Employer nor Employees shall be required to contribute to the support of programs required by said statute in addition to the private welfare program herein contemplated.

In the event that the Trustees do not apply the property and assets of the Welfare Trust Fund for the purpose of obtaining the disability benefits specified in the preceding paragraph, each Employer may provide for and contribute to the cost of obtaining such benefits in compliance with the aforesaid law directly, and in such event shall be entitled to deduct the cost of obtaining such benefits in compliance with the aforesaid law directly, and in such event shall be entitled to deduct the cost of obtaining such benefits from the payments required to be made to the Trust Fund created in this Article and, regardless of any other provision herein to the contrary, shall only be required to pay into said Trust Fund the difference between the contributions payable to the Trustees and the cost of obtaining the disability benefits required by the aforesaid law.

The Trustees shall promptly agree upon and formulate the provisions, regulations and conditions of the Welfare Plan herein contemplated, including definitions relating to eligibility of Employees, their spouses and children, waiting periods, full-time employment and any or all other matters relating thereto which the Trustees may deem appropriate for the determination of benefits and the administration of the program The said Welfare Plan need not provide identical benefits for Employees working in different Industries, but benefits shall be uniform for the Employees in each Industry. A copy of such Welfare Plan shall be adopted and filed, by the Trustees as part of the records and minutes of the Trustees.

The Trustees may amend such Plan from time to time, provided that such amendments comply with the purposes above stated. A copy of each such amendment shall be adopted and filed by the Trustees as part of the records and minutes of the Trustees.

The Trustees shall have the full and exclusive power, in their sole and absolute discretion, to construe the provisions of such Welfare Plan and the terms used therein, and any construction adopted by the Trustees in good faith shall be binding upon the Union, the Employers, the Employees and their beneficiaries. The Trustees shall be the sole judges of the standard of proof required in any welfare matter, including eligibility determinations, and also of any factual determinations required in the course of these operations. The application and interpretation of such Plan and the decisions of the Trustees made in good faith shall be final and binding on the Union, the Employers, the Employees and their beneficiaries. The Board of Trustees maintains discretionary authority to review all denied claims of the Funds, subject to external review, where applicable under the Affordable Care Act.

The Welfare Plan formulated hereunder shall be such so that there will be no discrimination against any employee, or applicant for employment, with respect to race, creed, color, national origin, sex, age, handicap, marital status, sexual orientation or affectional preferences, in the referral of any such employee or applicant for health and welfare and/or legal services benefits.

Section 4.     The Trustees shall use and apply the property and assets of the Welfare Trust Fund for benefits as stated in Section 3 and also for the following purposes:

(a)   To pay or provide for the payment of all reasonable and necessary expense of collecting the Employer Contributions and administering the affairs of the Welfare Trust Fund, including but without limitation all expenses which may be incurred in connection with the establishment and maintenance of the Welfare Trust Fund, the employment of such administrative, legal, expert and clerical assistance, the leasing of such premises and the purchase or lease of such materials, supplies and equipment as the Trustees, in their discretion, find necessary or appropriate in the performance of their duties.

-5-

(b) To pay or provide for the payment of premiums on the Policy or Policies of insurance when such premiums shall become due, and to provide for benefits through self insurance where permissible under the law and agreed upon by the Trustees.

Section 5. <u>HIPAA</u>.

(a) It is intended that the Welfare Plan shall at all times on and after April 14, 2003 and April 20, 2005, respectively, comply with the Privacy Rule and Security Rule, respectively and regulations issued pursuant to 45 C.F.R parts 160, 162 and 164, as same may be amended from time to time. It is further intended that the Trust Agreement, as so amended constitute the plan document which under the Privacy and Security Rules must incorporate provisions governing the disclosures of protected, health information ("PHI"), including ePHI, of the Welfare Plan's Participants and Beneficiaries to the Trustees of the Welfare Plan. Any obligation or responsibility under this amendment with respect to PHI applies as of April, 2003, and to ePHI as of April 20, 2005.

(b) The Welfare Plan may use and disclose PHI, including ePHI, for treatment, payment and operations, and such other uses and disclosures as are permitted and required under the Privacy Rule, and employees of the Welfare Plan shall have access to such PHI; including ePHI, as is necessary for them to perform their duties for the Welfare Plan.

(c) To the extent permitted by law, the Trustees may receive, use and disclose PHI, including ePHI if, in the sole discretion of the Trustees, such PHI or ePHI is necessary for the Trustees to perform their fiduciary or administrative duties as Trustees. In all cases, the Trustees shall receive, use and disclose the minimum amount of PHI or ePHI necessary for the Trustee to perform his or her functions under the Welfare Plan and shall safeguard such PHI or ePHI as required by the Privacy and Security Rules and this Trust Agreement.

(d) The Trustees may also receive summary health information within the meaning of the Privacy Rule, for the purpose of obtaining premium bids for providing coverage, or modifying or amending the Welfare Plan and may also receive enrollment and disenrollment information that lists which individuals are participating in the Welfare Plan.

(e) Each Trustee who receives PHI, including ePHI, from the Welfare Plan shall keep such information in strict confidence and shall not use or further disclose the PHI or ePHI received from the Welfare Plan other than as permitted or required by law arid this Agreement or upon the express written permission of the Participant who is the subject of the PHI or ePHI.

(f) The Welfare Plan will implement administrative, physical and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of the ePHI that it creates, receives, maintains, or transmits on behalf of the

-6-

Welfare Plan, and will ensure the "adequate separation" within the meaning of 45 C.F.R. §164.504(f) (2) (iii) of the Trustees and their agents and employees.

(g) Each Trustee who receives PHI, including ePHI, from the Welfare Plan shall ensure that the Trustee's agents to whom the Trustee provides such PHI or ePHI, if any, shall conform to the same restrictions on the agent's use or disclosure of the information as govern the Trustee's use or disclosure.

(h) Each Trustee who receives ePHI from the Welfare Plan shall ensure that the Trustee's agents to whom the Trustees provide such ePHI, if any, shall implement reasonable and appropriate security measures to protect ePHI.

(i)  Each Trustee who receives PHI, including ePHI, from the Welfare Plan shall not use or disclose such PHI or ePHI for any employment-related actions or decisions, or with respect to any other pension or other benefit plan sponsored by the Trustees.

(j) Each Trustee who receives PHI from the Welfare Plan shall report to the Welfare Plan's Privacy Officer any use or disclosure of such PHI that is inconsistent with the provisions set forth in this Agreement or otherwise required by law, of which the Trust becomes aware.

(k) If any Trustee becomes aware of any security incident with respect to ePHI, the Trustee will promptly report the incident to the Security Officer of the Welfare Plan and will cooperate with the Welfare Plan to correct the violation and to impose appropriate sanctions.

(l) The Trustees of the Welfare Plan shall, to the extent required by HIPAA, (1) make PHI that the Trustee has created or received from the Welfare Plan available to the individual about whom such PHI pertains for inspection and copying, as required by law, (2) make available any PHI that he has received from the Welfare Plan for amendment and incorporate any amendments to PHI the Trustee has received from the Welfare Plan as required by law, and (3) make available the information required to provide an accounting of disclosures as required by law.

(m) The Trustees and their staff, assistants and clerical employees may obtain PHI in the course of performing the duties of their job with or for the Trustee who obtained such information. If any Trustee becomes aware of any violation of the Privacy rule, the Trustee will promptly report the violation to the Privacy Officer of the Welfare Plan and will cooperate with the Welfare Plan to correct the violation, to impose appropriate sanctions, and to mitigate any harmful effects to the Participants.

(n) Each Trustee who receives PHI from the Welfare Plan shall return to the Welfare Plan or destroy all such PHI received from the Welfare Plan when there is no longer a need for the information or when the Trustee ceases to be a Trustee.

(o) The Trustees shall make available to the Secretary of HHS their internal practices, books and records relating to the use and disclosure of PHI received from the Welfare Plan to determine the Welfare Plan's compliance with the Privacy Rule.

## ARTICLE III.
## LOCAL 282 PENSION TRUST FUND

Section 1.    There is hereby continued a trust, known as the "Local 282 Pension Trust Fund," which shall comprise the entire assets initially derived from Employer Contributions pursuant to written Collective Bargaining Agreements made for the purpose of providing pension benefits, together with all investments, all monies received as contributions or as income from investments, and any other property received and held by the Trustees of the Pension Trust Fund for the uses, purposes and trusts set forth in this Article, provided such property was originally derived from the aforesaid Employer Contributions under the aforesaid Collective Bargaining Agreements.

Section 2.    The Trustees of the Pension Trust Fund agree to receive all such Employer Contributions, payments, deposits, monies, Policies and other properties and assets described or referred to in Section 1 of this Article III, and to hold the same in trust hereunder for the uses and purposes of the Trust created by this Article III.

Section 3.    The Pension Trust Fund is created and established for the purpose of providing and maintaining pension and retirement benefits for Employees.

The Trustees shall agree upon and formulate the provisions, regulations and conditions of the pension program herein contemplated, including those related to eligibility of Employees, retirement age, and any or all other matters relating thereto which the Trustees may deem appropriate for the determination of retirement benefits and the administration of the pension program A copy of such Pension Plan shall be adopted and filed by the Trustees as part of the records and minutes of the Trustees.

The Trustees shall have the full and exclusive power, in their sole and absolute discretion, to construe the provisions of such Pension Plan and the terms used therein, and any construction adopted by the Trustees in good faith shall be binding upon the Union, the Employers, the Employees and their beneficiaries and Alternate Payees. The Trustees shall be the sole judges of the standard of proof required in any pension matter, including eligibility determinations, and also of any factual determinations required in the course of these operations. The application and interpretation of such Plan and the decisions of the Trustees made in good faith shall be final and binding on the Union, the Employers, the Employees and their beneficiaries and Alternate Payees.

The Trustees may amend such Plan from time to time, provided that such amendments comply with the purposes above stated.  A copy of each such amendment shall be adopted and filed by the Trustees as part of the records and minutes of the Trustees.

The Pension Plan formulated by the Trustees under this Article III shall be such as to qualify under the Internal Revenue Code, as amended, so that contributions of Employers to the Pension Trust Fund will be deductible by such Employers under said Code, and approval of such Plan by the United States Treasury Department shall be obtained. The administration of such Plan and its terms and provisions, as amended from time to time, shall be such that it shall at all times be qualified under the Internal Revenue Code. The Pension Plan need not provide identical benefits for Employees working in different industries, but benefits shall be uniform for the Employees in each Industry.

Section 4.      The Trustees shall use and apply the Pension Trust Fund for the following purposes:

(a)   To pay or provide for the payment of all reasonable and necessary expenses of collecting the Employer Contributions and administering the affairs of the Pension Trust Fund, including but without limitation all expenses which may be incurred in connection with the establishment and maintenance of the Pension Trust Fund, the employment of such administrative, legal, expert, and clerical assistance, the leasing of such premises and the purchase or lease of such materials, supplies and equipment as the Trustees, in their discretion, find necessary or appropriate in the performance of their duties.

(b)   To pay or provide for the payment of retirement or other benefits to eligible Employees, their beneficiaries and Alternate Payees, in accordance with the terms, provisions, and conditions of the Pension Plan to be formulated and agreed upon hereunder.

## ARTICLE IV.
## LOCAL 282 ANNUITY TRUST FUND

Section 1.      There is hereby continued a trust, known as the "Local 282 Annuity Trust Fund," which shall comprise the entire assets initially derived from Employer Contributions pursuant to written Collective Bargaining Agreements made for the purpose of providing annuity benefits, together with all investments, all monies received as contributions or as income from investments and any other property received and held by the Trustees of the Annuity Trust Fund for the uses, purposes and trusts set forth in this Article, provided such property was originally derived from the aforesaid Employer Contributions under the aforesaid Collective Bargaining Agreements.

Section 2.      The Trustees of the Annuity Trust Fund agree to receive all such Employer Contributions, payments, deposits, moneys, Policies and other properties and assets described or referred to in Section 1 of this Article IV and to hold the same in trust hereunder for the uses and purposes of the Trust created by this Article IV.

Section 3.      The Annuity Trust Fund is created and established for the purpose of providing and maintaining annuity benefits to Employees and their beneficiaries.

The Trustee shall agree upon and formulate the provisions, regulations and conditions of the Annuity program herein contemplated, including those relating to eligibility of Employees, and any or all other matters relating thereto which the Trustees may deem appropriate for the determination of such benefits and the administration of the program. A copy of such Annuity Plan shall be adopted and filed by the Trustees as part of the records and minutes of the Trustees.

The Trustees shall have the full and exclusive power, in their sole and absolute discretion, to construe the provisions of such Annuity Plan and the terms used therein, and any construction adopted by the Trustees in good faith shall be binding upon the Union, the Employers, the Employees and their beneficiaries and Alternate Payees. The Trustees shall be the sole judges of the standard of proof required in any annuity matter, including eligibility determinations, and also of any factual determinations required in the course of these operations. The application and interpretation of such Plan and the decisions of the Trustees made in good faith shall be final and binding on the Union, the Employers, the Employees and their beneficiaries and Alternate Payees.

The Trustees may amend such Plan from time to time, provided that such amendments comply with the purposes above stated. A copy of each such amendment shall be adopted and filed by the Trustees as part of the records and minutes of the Trustees.

The Annuity Plan formulated by the Trustees under this Article IV shall be such that contributions of Employers to the Annuity Trust Fund will be deductible by such under the Internal Revenue Code, and approval of such Plan by the United States Treasury Department shall be obtained. The administration of such Plan and its terms and provisions, as amended from time to time, shall be such that it shall at all times be qualified under the Internal Revenue Code.

Section 4.    The Trustee shall use and apply the Annuity Trust Fund for the following purposes:

(a)   To pay or provide for the payment of all reasonable and necessary expense of collecting the Employer Contributions and administering the affairs of the Annuity Trust Fund, including but without limitation all expenses which may be incurred in connection with the establishment and maintenance of the Annuity Trust Fund, the employment or such administrative, legal, expert, and clerical assistance, the leasing of such premises and the purchase or lease of such materials, supplies and equipment as the Trustees, in their discretion, find necessary or appropriate in the performance of their duties.

(b)   To pay or provide for the payment of annuity benefits to eligible Employees and their beneficiaries and Alternate Payees in accordance with the terms, provisions and conditions of the Plan to be formulated and agreed upon hereunder. Such benefits include withdrawal for the payment by the Employee of tuition, fees and/or room and board to maintain him or herself, his or her spouse or a dependent child at an

educational institution at or beyond the high school level, or a school or institution for physically or mentally handicapped children.

## ARTICLE V.
## LOCAL 282 JOB TRAINING TRUST FUND

Section 1.    There is hereby continued a trust, known as the "Local 282 Job Training Trust Fund," which shall comprise the entire assets initially derived from Employer Contributions made for the purpose of providing job training benefits heretofore or hereafter made to or for the account of this trust fund pursuant to Collective Bargaining Agreements, together with all investments, all monies received by the Trustees as contributions or as income from investments, and any other property received and held by the Trustees of the Job Training Trust Fund for the uses, purposes and trusts set forth in this Article; provided such property was originally derived from the aforesaid Employer Contributions under the aforementioned Collective Bargaining Agreements.

Section 2.    The Trustees of the Job Training Trust Fund agree to receive all such Employer Contributions, payments, deposits, monies, Policies, and other properties and assets described or referred to in Section 1 of this Article V and to hold the same in trust hereunder for the uses and purposes of the Trust created by this Article V.

Section 3.    The Job Training Trust Fund is created and established for the purpose of providing and maintaining job training benefits to Employees.

The Trustees shall promptly agree upon and formulate the provisions, regulations and conditions of the job training program herein contemplated, including those relating to eligibility of Employees, and any or all other matters relating thereto which the Trustees may deem appropriate for the determination of such benefits and the administration of the program. A copy of such Job Training Plan shall be adopted and filed by the Trustees as part of the records and minutes of the Trustees.

The Trustees may amend such Plan from time to time, provided that such amendments comply with the purposes above stated. A copy of each such amendment shall be adopted and filed by the Trustees as part of the records and minutes of the Trustees.

The Trustees shall have the full and exclusive power, in their sole and absolute discretion, to construe the provisions of such Job Training Plan and the terms used therein, and any construction adopted by the Trustees in good faith shall be binding upon the Union, the Employers, the Employees and their beneficiaries. The Trustees shall be the sole judges of the standard of proof required in any job training matter, including eligibility determinations, and also of any factual determinations required in the course of these operations. The application and interpretation of such Plan and the decisions of the Trustees made in good faith shall be final and binding on the Union, the Employers, the Employees and their beneficiaries.

The Job Training Plan formulated by the Trustees under this Article V shall be such as to qualify as a tax-exempt organization under the Internal Revenue Code, as amended, and approval of such Plan by the United States Treasury Department shall be obtained. The administration of such Plan and its terms and provisions, as amended from time to time, shall be such that it shall at all times be exempt from taxation under the Internal Revenue Code.

Section 4.    The Trustees shall use and apply the property and assets of the Job Training Trust Fund for the following purposes:

(a)  To provide, or to provide for the payment of job training benefits to eligible Employees in accordance with the terms, provisions and conditions of the Plan to be formulated and agreed upon hereunder.

(b)  To pay or provide for the payment of all reasonable and necessary expense of collecting the Employer Contributions and administering the affairs of the Job Training Trust Fund, including, but without limitation, all expenses which may be incurred in connection with the establishment and maintenance of the Job Training Trust Fund, the employment of such administrative, legal, expert and clerical assistants, the purchase of leasing of such premises and the purchase or lease of such materials, supplies and equipment as the Trustees, in their discretion, find, necessary or appropriate in providing job training benefits and in performing their duties.

### ARTICLE VI.
### LOCAL 282 VACATION AND SICK LEAVE FUND

Section 1.    There is hereby continued a trust, known as the "Local 282 Vacation and Sick Leave Trust Fund," which shall comprise the entire assets initially derived from Employer Contributions made for the purpose of providing vacation and sick leave benefits heretofore or hereafter made to or for the account of this Trust pursuant to Collective Bargaining Agreements, together with all investments, all monies received by the Trustees as contributions or as income from investments, and any other property received and held by the Trustees of the Vacation and Sick Leave Trust Fund for the uses purposes and trusts set forth in this Article, provided such property was originally derived from the aforesaid Employer Contributions under the aforementioned Collective Bargaining Agreements.

Section 2.    The Trustees of the Vacation and Sick Leave Trust Fund agree to receive all such Employer Contributions, payments, deposit, monies, Policies, and other properties and assets described or referred to in Section 1 of this Article VI and to hold the same in trust hereunder for the uses and purposes of the Trust created by this Article VI.

Section 3.    The Local 282 Vacation and Sick Leave Trust Fund is created and established for the purpose of providing and maintaining vacation and sick leave benefits to Employees.

The Trustees shall promptly agree upon and formulate the provisions, regulations anti conditions of the Vacation and Sick Leave Plan herein contemplated, including those relating to eligibility of Employees, and any or all other matters relating thereto which the Trustees may deem appropriate for the determination of such benefits and the administration of the Plan. A copy of such Vacation and Sick Leave Plan shall be adopted and filed by the Trustees as part of the records and minutes of the Trustees.

The Trustees may amend such Plan from time to time, provided that such amendments comply with the purposes above stated. A copy of each such amendment shall be adopted and filed by the Trustees as part of the records and minutes of the Trustees.

The Trustees shall have the full and exclusive power, in their sole and absolute discretion, to construe the provisions of such Vacation and Sick Leave Plan and the terms used therein, and any construction adopted by the Trustees in good faith shall be binding upon the Union, the Employers, the Employees and their beneficiaries. The Trustees shall be the sole judges of the standard of proof required in any vacation and sick leave matter, including eligibility determinations, and also of any factual determinations required in the course of these operations. The application and interpretation of such Plan and the decisions of the Trustees made in good faith shall be final and binding on the Union, the Employers, the Employees and their beneficiaries.

The Vacation and Sick Leave Plan formulated by the Trustees under this Article VI shall be such as to qualify as a tax-exempt organization under the Internal Revenue Code, as amended, and approval of such Plan by the United States Treasury Department shall be obtained The administration of such plan and its terms and provisions, as amended from time to time, shall be such that it shall at all times be qualified under the Internal Revenue Code.

Section 4.      The Trustees shall use and apply the property and assets of the Vacation and Sick Leave Trust Fund for the following purposes:

(a)   To provide vacation and sick leave benefits to eligible Employees in accordance with the terms, provisions and conditions of the Plan to be formulated and agreed upon hereunder.

(b)   To pay or provide for the payment of all reasonable and necessary expense of collecting the Employer Contributions and administering the affairs of the Vacation and Sick Leave Trust Fund, including, but without limitation, all expenses which may be incurred in connection with the establishment and maintenance of the Vacation and Sick Leave Trust Fund, the employment of such administrative, legal, expert and clerical assistants, the purchase of leasing of such premises and the purchase or lease of such materials, supplies and equipment as the Trustees, in their discretion, find necessary or appropriate in providing vacation and sick leave benefits and in performing their duties.

## ARTICLE VII.
## TRUSTEES

Section 1.    The Funds shall be administered by a Board of Trustees.  The Trustees under this Agreement and Declaration and Trust, who shall be Trustees of the Trusts, created and established by Articles II, III, IV, V and VI hereof, shall be ten in number, five of whom shall be Union Trustees and five of whom shall be Employer Trustees. The Union Trustees shall be the Union Trustees of the Trusts established by Articles II, III, IV, V and VI hereof. The Employer Trustees shall be the Employer Trustees of the Trusts established by Articles II, III, IV, V and VI hereof.  There shall always be an equal number of Employer and Union Trustees.

Section 2.    The Trustees to the Funds hereby accept the Trusts created and established by this Agreement and Declaration of Trust and consent to act as Trustees therefor and declare that they will administer the said Trusts as separate trusts. The signature of a Trustee to any counterpart or copy of this Agreement and Declaration of Trust shall be conclusive evidence of his acceptance as aforesaid.

Section 3.    Each Union and Employer Trustee and each successor Trustee shall continue to serve as such until his death, incapacity, resignation or removal as herein provided.

Section 4.    A Trustee may resign and become and remain fully discharged from all further duty or responsibility hereunder upon giving thirty days' notice in writing to the remaining Trustees, or such shorter notice as the remaining Trustees may unanimously accept as sufficient, in which notice there shall be stated a date when such resignation shall take effect; and such resignation shall take effect on the date specified in the notice unless a successor Trustee shall have been appointed at an earlier date, in which event such resignation shall take effect immediately upon the appointment of such successor Trustee.

Section 5.

(a) The Employer Trustees shall be 5 in number, and the following five Industries respectively shall be entitled to appoint one Employer Trustee each to the Board of Trustees of the Trusts created and established by Articles II, III, IV, V and VI hereof: the Long Island Contractors Industry, Metropolitan Trucking Industry, New York City General Contractors Industry, New York City Ready Mix Industry, and the Plumbing Industry.

(b) In case any Employer Trustee or successor Employer Trustee shall die, become incapable of acting, resign, or be removed, a successor Employer Trustee from the same Industry shall be appointed by the Employer Association that appointed the Employer Trustee, subject to the approval of the remaining Employer Trustees.  If no Employer Association exists and no representative of that Industry is recognized by the Trustees at the applicable time, a new Employer Trustee shall be elected, by a vote of the majority of

-14-

the Employers in said Industry who are bound to this Agreement attending a special meeting to be called for such purpose at the direction of the remaining Trustees, to be held at such time and place and pursuant to such notice as they may direct. Said designated Trustee shall be either a contributing Employer (or, if the Employer is a Corporation, an officer thereof) from the same Industry; or a full-time official of an Employer Association recognized by the Trustees in their absolute and sole discretion as properly representative of the Industry involved.

Upon filing with the remaining Trustees of a written statement acceptable to the Trustees, certifying the name of the successor Employer Trustee designated as aforesaid, and subject to the approval of all of the Employer Trustees currently sitting on the Board of Trustees in their sole and absolute discretion, such designation shall be effective and binding in all respects.

Any Employer Trustee or his successor Employer Trustee may be removed and/or substituted at any time only by a majority vote of all of the remaining Employer Trustees sitting on the Board of Trustees at that time. A meeting to consider such questions shall be called by the Trustees upon written request of any Employer who is bound to this Agreement.
.

(c) In case any Union Trustee shall die, become incapable of acting, resign or be removed, a successor Union Trustee shall be designated by the Executive Board of the Union. Upon the filing with the remaining Trustees of a certificate in writing signed by the President or Secretary-Treasurer of the Union, such designation shall be effective and binding in all respects. Any Union Trustees or successor Union Trustees may be removed at any time by the Union by filing with the remaining Trustees a certificate in writing to such effect executed by the President or Secretary-Treasurer of the Union.

(d) In the event of a vacancy or vacancies, until the designation of a successor Trustee or Trustees, as hereinabove provided, the remaining Trustees shall not be impaired to act as a result of the vacancy and shall have full power to act and shall act. In the event of a removal and/or continued Trustee vacancy for any reason for ninety (90) days, the Board of Trustees may petition a presiding judge of the United States District Court of the district where the Fund maintains its principal office, for appointment of a successor Trustee.

Section 6.    Any successor Employer Trustee or any successor Union Trustee shall immediately upon his designation as a successor Trustee and his acceptance of the trusteeship in writing, filed with the Trustees, become vested with all the property, rights, powers and duties of a Trustee hereunder with like effect as if originally named as a Trustee and all the Trustees then in office and the insurance carrier of each Policy and all other necessary persons shall be immediately notified.

-15-

Section 7.

(a)   Any Employer Trustee who is or has been indicted for any of the crimes enumerated in Section 411 of the Employee Retirement Security Act of 1974, as amended, 29 U.S.C. § 1111, may be suspended by a majority of the Employer Trustees who are not indicted from exercising any power or authority under the Trust Agreement or from participating in any way in the administration of the Funds. This suspension shall remain in effect until the indicted Trustee is acquitted or obtains a court order pursuant to 29 U.S.C. § 1111(a), or the indictment is dismissed, or until a majority of the unindicted Employer Trustees decide to revoke the suspension.

(b)   Any Union Trustee who is or has been indicted for any of the crimes enumerated in Section 411 of the Employee Retirement Security Act of 1974, as amended, 29 U.S.C. § 1111, may be suspended by a majority of the Union Trustees who are not indicted from exercising any power or authority under the Trust Agreement or from participating in any way in the administration of the Funds. This suspension shall remain in effect until the indicted Trustee is acquitted or obtains a court order pursuant to 29 U.S.C. § 1111(a), or the indictment is dismissed, or until a majority of the unindicted Union Trustees decide to revoke the suspension.

## ARTICLE VIII.
## ADMINISTRATION OF THE TRUSTS

Section 1.     The Trustees of each of the Trust Funds are authorized and empowered to provide for the payment of all reasonable expenses which may be incurred in connection with the establishment and operation of the Fund, including but not limited to the lease or purchase such premises, materials, supplies and equipment, to hire and employ and retain such legal counsel, investment counsel, administrative, accounting, actuarial, expert, clerical and other assistants or employees as in their discretion they may find necessary or appropriate in the performance of their duties, and expenses of any meetings of the Board of Trustees, the costs of any arbitration, if required, and the costs and expenses or attendance by the Trustees, or any member of the staff of the Fund at any educational conference, seminar or other meeting, when deemed by the Board of Trustees, in its discretion, to be for the benefit of the Fund.

Section 2.     The Trustees may exercise all rights or privileges granted to the Policy holder by provisions of each Policy or allowed by the insurance carrier of such Policy and may agree with such insurance carrier to any alteration, modification or amendment of such Policy and may take any action respecting such Policy or the insurance provided hereunder which they, in their discretion, may deem necessary or advisable, and such insurance carrier shall not be required to inquire into the authority of the Trustees with regard to any dealings in connection with such Policy.

The Trustees shall have the full and exclusive power, in their sole and absolute discretion, to construe the provisions of this Agreement and Declaration of Trust the terms used herein, and any construction adopted by or any decision made by the Trustees in

good faith shall be binding upon the Union, the Employers, the Employees and their beneficiaries.  The Trustees shall be the sole judges of the standard of proof required in any matter pertaining to the operation of this Agreement and Declaration of Trust or the operations of the Trust Funds and also of any factual determinations required in the course of these operations.  The power and authority granted under this Trust Agreement shall be vested exclusively with the Board of Trustees, except the Board of Trustees shall have the power to delegate fiduciary responsibilities to an independent fiduciary or to specified Trustees, provided such Trustees shall equally represent the Union and Employer Trustee, unless the independent fiduciary is specifically retained to act on behalf of either the Union or the Employer Trustees due to a conflict and recusal of the Union or Employer Trustees and to designate persons other than the Trustees to carry out fiduciary responsibilities as provided in this Agreement.

Section 3.    The Trustees are hereby empowered, in addition to such other powers as are set forth herein or conferred by law:

(a)  To invest and reinvest such part of the Trust Funds as in their sole judgment is advisable and is not required for current expenditures in securities (of any classification), or other property or forms of investment, including but not limited to real estate, whether or not the same be authorized by law for the investment of trust funds generally, and to retain the services of one or more investment advisors, whether it be a bank or trust company or individual or corporation, to counsel, make and manage such investments for the Trust Funds. The Board of Trustees, as the named fiduciary of the Trust and Plan, may enter into a contract with one or more investment manager(s) as defined by Section 3(38) of ERISA, in a manner consistent with said Section 3(38), for the professional management of the Trust. Such investment manager shall receive such reasonable compensation, chargeable against the Trust, as shall be agreed to by the Board of Trustees, and manager shall 1) be either (a) registered under the Investment Advisers Act of 1940, (b) a bank or (c) an insurance company, and (2) have acknowledged that it is a fiduciary with respect to the applicable Plan and Trust.  Such investment manager shall have the authority to manage, acquire, or dispose of any assets of the applicable Fund and exercise any and all rights of the Trustees with respect to such assets, including, unless specifically provided otherwise, the authority and discretion to vote upon such securities. It is contemplated that assets of the Trust may be deposited in funds or accounts described in Section 408(b) (4) and Section 408(b) (8) of ERISA.

(b)  To acquire (through broker or otherwise), sell (through broker or otherwise), exchange (through broker or otherwise), lease (through broker or otherwise), mortgage (through broker or otherwise), pledge, option, receive hold, improve, repair, control, convey or dispose (for cash or upon credit or both) of any property, whether real or personal, at any time forming a part of the Trust Funds upon such terms as they may deem proper and to execute and deliver any and all instruments of conveyance and transfer in connection therewith, and exercise and enforce any and all rights of foreclosure, to bind in property on foreclosure, to take a deed in lieu of foreclosure with or without paying any consideration therefore, and in connection therewith to release the

-17-

obligation on the bond secured by such mortgage and to exercise and enforce in any action, suit or proceeding at law or in equity any rights or remedies in respect of any such mortgage or guarantee.

(c)   To vote in person or by proxy or refrain from voting upon securities held by the Trustees and to exercise by attorney any other rights of whatsoever nature pertaining to securities or any other property at any time held by them hereunder.  The Trustees may delegate the authority and discretion to vote upon such securities to an investment manager or managers upon such terms and conditions as imposed by the Trustees.

(d)   To exercise options, conversion privileges, or rights to subscribe for additional securities and to make payments therefore.

(e)   To consent to or participate in dissolutions, reorganizations, consolidations, mergers, sales, leases, mortgages, transfers or other changes affecting securities held by them and in connection therewith, and to pay assessments, subscriptions or other charges, and to generally exercise any of the powers of an owner with respect to the property held as part of the Trust.

(f)   To enter into any and all contracts and agreements for carrying out the terms of this Agreement and Declaration of Trust and for the administration of the Trust Funds and to do all acts as they, in their discretion, may deem necessary or advisable, and such contracts and agreements and acts shall be binding and conclusive on the parties hereto and on the Employees involved.

(g)   To compromise, settle, arbitrate and release claims or demands in favor of or against the Trusts or any of them, on such terms and conditions as the Trustees may deem advisable. The Board of Trustees, in its sole and absolute discretion, shall have the right to maintain any and all actions and legal proceedings necessary for the collection of the contributions or payments provided for and required and the right to prosecute, defend, compromise, settle, abandon or adjust, by arbitration or otherwise, any such actions, suits, proceedings, disputes, claims, details and things. The Board of Trustees has the power and authority to pay and provide for the payment of all reasonable and necessary expenses of collecting the Contributions or payments and the power and authority to establish rules and regulations setting forth the method of collection of Contributions and payments and when such matters should be settled or compromised.

(h)   To keep property and securities registered in the name of the Trustees or in the name of a nominee or nominees or in unregistered or bearer form.

(i)   To keep property or securities in the custody of a bank or trust company. The Trustees are authorized to delegate custody of all or a portion of the Trust. Such custodian shall hold the Trust as directed in writing by the Board of Trustees. It is contemplated that assets of the Trust may be deposited in funds or accounts described in Section 408(b) (4) and Section 408(b) (8) of ERISA. Such custodian shall receive such

-18-

reasonable compensation, chargeable against the Funds, as shall be agreed to by the Board of Trustees.

(j)    To establish and accumulate as part of the Trust Funds or any of them a reserve or reserves, adequate, in the opinion of the Trustees, to carry out the purposes of any of such Trusts.

(k)    To allocate among the Trust Funds expenses, not solely applicable to one of such Funds, on the basis of such ratio as the Trustees shall from time to time in their discretion, deem proper.

(l)    To borrow money in such amounts and upon such terms and conditions as shall be deemed advisable by the Trustees or proper to carry out the purposes of the Trusts and to pledge any securities or other property for the repayment of any such loans.

(m)  To hold part or all of the funds of the Trusts uninvested.

(n)    To pay out of the funds of the Trusts all real and personal property taxes, income taxes and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Trust Funds or any money, property or securities forming a part thereof.

(o)    To purchase insurance for the Funds and themselves, collectively and individually, and for any other employees by the Trustees to cover liability or losses occurring by reason of the act or omission, subject to the limitations of the ERISA.

(p)    To take all necessary steps to comply with funding requirements;

(q)    The Board of Trustees may hire, compensate and delegate certain duties to a professional administrative manager and administrative duties to any agent or employee of the Board of Trustees;

(r)    To provide for payment of benefits to persons eligible to receive benefits as determined by the Board of Trustees under the procedures contained in this Agreement, and any rules promulgated by the Board of Trustees.

(s)    To adopt claims and appeals procedures granting Participants and Beneficiaries the right to be informed of the Board of Trustees' decisions regarding payment of benefits, and the right to know the reasons for any denials of benefits.

(t)    To form a corporation or REIT under the laws of any jurisdiction, to participate in the forming of any such corporation, or to acquire an interest in or otherwise make use of any corporation already formed, for the purpose of investing in and holding title to any property.

-19-

(u)   To submit this Agreement and the Plans created hereunder, and any amendments to any of them, for approval to the United States Treasury Department, Commissioner of Internal Revenue, so that they may be ruled to be qualified and exempt from taxation under the provisions of the Internal Revenue Code, as they exist or may be amended, and the Employers' contributions to be deductible for tax purposes; to make whatever changes are, or may at any time be or become, necessary in this Agreement or in the Plans, in order to receive and retain such approval of the Commissioner of Internal Revenue.

(v)   To admit to participation in this Fund any Employer that signs a collective bargaining agreement with the Union or other agreement with the Board of Trustees obligating said Employer to make payments to the Fund; and to determine that an Employer may cease to be an Employer when it is delinquent in his contributions or reports to the Fund.

(w)   To merge any of the Trusts and Plans created hereunder with a similar Plan, Trust or Trust or to transfer assets and/or liabilities to, or receive from, such a Trust and Plan, if such merger or transfer does not result in the loss of the tax- exempt status of the affected Trust hereunder.

(x)   To require a bond or cash deposit as security for prompt future payments of Contributions in the event an Employer is, in the discretion of the Board of Trustees, habitually delinquent in paying contributions to the Fund.

(y)   To establish plan policies and procedures including but not limited to policies regarding withdrawal liability, shared administrative expenses and cost allocation, investments, collections, and procedures for approval of health fund claims and qualified domestic relations orders.

(z)   To enter business associate agreements.

(aa) To do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or proper for the protection of the property held hereunder and to enforce all rights of the Trust and carry out its purposes.

Section 4.      The Trustees shall not receive any compensation for the performance of their duties; however, reasonable actual expenses incurred by the Trustees in the performance of their duties shall, at the discretion of the Board of Trustees, be advanced or reimbursed by the Trust Fund or Funds for which such services were performed or are to be performed.

Section 5.      The Trustees may promulgate such requirements for the participation of new Employers in this Agreement and Declaration of Trust and such other rules and regulations as may, in their discretion, be deemed proper and necessary for the sound and efficient administration of the Trusts, provided that such requirements, rules and regulations are not inconsistent with this Agreement and Declaration of Trust.

Section 6.        To the fullest extent allowed by ERISA, neither the Trustees nor any individual or Successor Trustees shall be personally answerable or personally liable for any liabilities or debts of the Trust Funds contracted by them as such Trustees, or for the non-fulfillment of contracts, but the same shall be paid out of the Trust Fund chargeable therefor, except to the extent as it is paid by insurance or the employer, and the Trust Funds are hereby charged with a first lien in favor of such Trustees for his or their security and indemnification for any amount paid out by any such Trustee for any such liability and for his and their security and indemnification against any liability of any kind which the Trustees or any, of them may incur hereunder; provided, however, that nothing herein shall exempt any Trustee from liability arising out of the Trustee's own willful misconduct, bad faith or gross negligence, or entitle such Trustee to indemnification for any amounts paid or incurred as a result thereof.

Except as otherwise provided by law, the Trustees and each individual Trustee shall not be liable for any error of judgment or for any loss arising out of any act or omission in the execution of the Trusts so long as they act in good faith and without gross negligence; nor shall any Trustee, in the absence of his own willful misconduct, bad faith or gross negligence, be personally liable for the acts or omissions (whether performed at the request of the Trustees or not) of any other Trustee, or of any agent or attorney elected or appointed by or acting for the Trustees.

The Trustees shall be fully protected in acting upon any instrument, certificate, or paper believed by them to be genuine and to be signed or presented by the proper person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained.

The Trustees shall not be liable for acting upon the direction of an investment advisor they have appointed so long as the investment advisor (1) is either (a) registered under the Investment Advisers Act of 1940, (b) a bank or (c) an insurance company, and (2) has acknowledged that it is a fiduciary with respect to the plan and the trust.

The Trustees shall not be liable for the proper application of any part of the Trust Funds or for any other liabilities arising in connection with the administration or existence of the Trust Funds in this Agreement and Declaration of Trust except as herein provided.

The Trustees shall discharge their duties hereunder solely in the interest of the participants, former participants and beneficiaries of the Funds and for the exclusive purpose of providing benefits to participants and beneficiaries in accordance with the terms of the Plans and for defraying the reasonable expenses of administering the Funds, and shall act with care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.  The Trustees shall have full and exclusive authority to establish the policy and the rules pursuant to which this Agreement is to be operated and administered, including rules relating to the collection of contributions and other payments, amend such from time to

time as necessary or appropriate, and formulate and establish the conditions of eligibility with respect to the provisions and payment of benefits and formulate all other provisions, including all details pertaining to insurance policies or contracts if they are part of the Funds, which may be required or necessary in order to carry out the intent and purpose of this Agreement, and amend them from time to time, as necessary or appropriate.

The Trustees may from time to time consult with the Trust's legal counsel and shall be fully protected in acting upon such advice of counsel to the Trust as respects legal questions. The Board of Trustees shall have the authority to purchase fiduciary liability insurance and fidelity bonds for the Board and Fund personnel, except that the Trustees may not instruct the Funds to pay any Trustee non-recourse premium portion of any such fiduciary insurance.  To the extent not covered by insurance or their employer and allowed by law, the Trust Funds shall protect, indemnify and hold harmless the Board, each individual Trustee and the employees and agents of the Trust Funds from and against any and all liabilities, damages, taxes, judgments, debts, assessments, penalties, losses, expenses, costs and claims, including, without limitation, reasonable attorneys' fees, court costs; actuarial and related consulting costs; accounting and auditing costs; investment management, trustee and custodian costs; insurance premiums and related costs; and other professional fees (hereinafter collectively referred to as "Claims") incurred by any such person(s) as a result of any act, omission or conduct committed by said person(s)in connection with the performance of his or her powers, duties; responsibilities or obligations under the Plans, the Trusts, this Agreement, ERISA, as amended, the Internal Revenue Code or other applicable laws, except with respect to Claims arising from such person's own fraud or willful misconduct, to the extent permitted by law.

Section 7.      The Trustees shall keep true and accurate books of account and records of all their transactions, which shall be open to the inspection of each of the Trustees at all times and which shall be audited annually or more often by a Certified Public Accountant selected by the Trustees.  Such audits shall be available at all times for inspection by the Union and the Employers at the principal office of the Trust.

Section 8.      Questions concerning any action to be taken by the Trustees pursuant to this Agreement and Declaration of Trust shall be decided by in the following manner: The entire group of Employer Trustees shall have one vote and the entire group of Union Trustees shall have one vote. The number of Trustees needed to make up a quorum in order to have a legal and effective meeting of the Board of Trustees shall be three Employer Trustees and three Union Trustees. A total of at least three affirmative votes must be cast by the Employer Trustees to determine the one vote of the entire group of Employer Trustees and at least a total of three affirmative votes must be cast by the Union Trustees to determine the one vote of the Union Trustees.

There shall be at least one regular Board of Trustees meeting per year.  Any regular meeting of the Board of Trustees may be called by at least fifty percent of all of the Trustees or by four Trustees, whichever is less, upon the giving of at least ten (10) days' written notice of the time and place of such meeting to the other Trustees, together with a description of the purpose of the meeting. Meetings of Trustees may be held at any

-22-

time without notice if all the Trustees consent in writing thereto. Any Trustee may participate in a meeting of the Board of Trustees by means of a conference telephone or similar communication equipment allowing all persons participating in the meeting to hear each other at the same time. Participation by such means shall constitute presence in person at a meeting. If the circumstances require it, action may be taken by the Trustees without a meeting provided, however, that in such cases there is unanimous written approval by all of the Trustees then in office of the action to be taken.

(a)    In the event of a deadlock, the question shall be submitted for decision to an independent arbitrator mutually agreed upon by the Trustees, and, if they cannot agree upon an arbitrator within ten days after such deadlock occurs, then by an arbitrator designated by the American Arbitration Association. The decision of the arbitrator shall be final and binding and shall be adopted by the Trustees and deemed to be the vote of the Trustees. The cost and expense incidental to any proceedings needed to break a deadlock shall be borne by the Pension Trust Fund, Welfare Trust Fund, Annuity Trust Fund, Job Training Trust Fund or Vacation and Sick Leave Trust Fund, as the case may be, or allocated between such Funds in such proportion as the Trustees may determine in the event that such costs and expenses are not solely applicable to any of such Trust Funds. The said arbitrator shall be required to render his decision within the time limits fixed by the Trustees.

(b)    A deadlock shall be deemed to exist whenever the Trustees are unable to reach an agreement at a meeting after duly voting according to the voting procedure hereinabove set forth. A deadlock shall also be deemed to exist whenever the lack of a necessary quorum of Trustees continues for two successive meetings of the Trustees, or where at two successive meetings the minimum number of affirmative votes needed to cast the vote of the Employer Trustees or of the Union Trustees cannot be obtained.

Section 9.    The Trustees may authorize an Employer Trustee and a Union Trustee or any joint group equally composed of Employer and Union Trustees to act for and on behalf of the Trust and the Trustees by executing and delivering notices, assignments, agreements, deeds, mortgages, receipts, releases and any other instruments in writing appropriate for the administration of its trust powers as set forth in this Article, and all persons, partnerships, corporations or associations may rely thereupon that such act or instrument has been duly authorized by and is binding upon the Trust and the Trustees with the same effect and force as if taken by all of the Trustees.

Section 10.    All monies received by the Trustees hereunder shall be deposited by them in such bank or banks as the Trustees may designate for that purpose and all withdrawals of monies from such account or accounts shall be made only by checks signed by individuals whom the Trustees have authorized in writing to sign such checks.

The Trustees may, in their discretion, designate and authorize an employee of the Trust Funds to sign checks upon such separate and specific bank account or bank accounts as the Trustees may designate and establish for such purpose.

-23-

Section 11.     The Trustees may, in their discretion, at any time or from time to time, but shall not less frequently than once each year, render written accounts of their transactions and hold such accounts on file at the office of the Trust Funds. The Trustees shall file reports on the financial conditions of the respective Trust Funds as required by the Internal Revenue Service and the United States Department of Labor.

Section 12.     The Trustees shall administer the Trust Funds as separate trusts and in conformity to this Agreement and Declaration of Trust, as from time to time amended.

Section 13.     The Trustees and employees who are empowered and authorized to sign checks as aforesaid shall each be bonded by a duly authorized surety company in such amounts as may be determined from time to time by the Trustees. Each individual employed by the Trustees who may be engaged in handling monies of the Trust Funds shall also be bonded by a duly authorized surety company in the same manner. The cost of the premiums on such bonds shall be allocated among the Trust Funds covered thereby.

## ARTICLE IX.
## COLLECTION OF CONTRIBUTIONS

Section 1.

(a)   Each and every Employer shall pay to the Trustees the Employer Contributions to the Welfare Trust Fund, the Pension Trust Fund, the Annuity Trust Fund, the Job Training Trust Fund and the Vacation and Sick Leave Trust Fund as set forth in Article II, III, IV, V and VI of this Agreement, as required by the collective bargaining agreement and any amendments thereto, or as required by any participation agreement and any amendments thereto to which the Employer is a party or is otherwise bound.  In the event the Employer has neither signed nor authorized an Industry association to sign a current collective bargaining or participation agreement on its behalf, the Employer shall remain obligated to make timely contributions to each Fund as set forth in the most recent collective bargaining or participation agreement to which the Employer is a party unless the Trustees have received written notice from the Employer, at least 60 days prior to the expiration date of the most recent collective bargaining or participation agreement to which the Employer is a party, that the Employer does not intend to sign a new collective bargaining or participation agreement and will not contribute to the Funds for work performed after the expiration date of the most recent collective bargaining or participation agreement to which it is a party.  If the Employer makes contributions at the rates stated in the current collective bargaining agreement applicable to its Industry, the Employer shall be deemed a party to that current collective bargaining agreement, and shall be obligated to make timely contributions to each Fund as set forth in that collective bargaining agreement. By making contributions to a Fund or agreeing to make contributions to a Fund, the Employer shall be deemed to adopt, accept and ratify the current Employer Trustees and all successor Trustees and adopt, accept and ratify the Trust and all the actions of the Trustees and the Fund thereunder.  Upon expiration of the collective bargaining agreement, the Employer shall be required to make contributions until it is no longer under a duty to make such contributions pursuant to an obligation

arising under the National Labor Relations Act or until it ceases to be an Employer within the meaning of this Agreement as above provided, whichever is later. The Trustees may enforce such contribution obligation in a United States District Court.

(b)    Payment of all Employers' Contributions shall be made by the Employer promptly on the due date established in the Employer's collective bargaining agreement with the Union. If no date is set in the Employer's collective bargaining agreement, contributions shall be made promptly on the 30th day of each month covering all payroll periods during the preceding calendar month.

(c)    Detailed written reports shall be submitted to the Trustees by the Employers together with each monthly payment (regardless of whether contributions are owed for that month), the said reports to be in such form as may be requested from time to time by the Trustees.

(d)    The Trustees may at any time audit the pertinent books and records of any Employer in connection with the above. Pertinent books and records of an Employer include the books and records of any business which is bound by a collective bargaining agreement with the Union which requires contributions to any of the Funds and any other business entity which is affiliated with such business and which either: 1) has employed persons who have performed the same type of work as the employees of the Employer covered by the Union agreement, or 2) is part of a group of trades or businesses "under common control," as that term is used in 29 U.S.C. §1301(b) (1) for withdrawal liability purposes, which includes the Employer.

Pertinent books and records shall include, but not be limited to, the, types of records and documents listed herein for all individuals who perform work for each business described above,(whether or not the individual is covered by a collective bargaining agreement with, the Union or is an Employee as defined in this Agreement and Declaration of Trust or as a matter of law: (1) Payroll records, including payroll journals, time cards, print-outs, ledgers or any other form of payroll record; (2) payroll tax records submitted to federal and state governments, including Forms 941 and W-2; (3) complete business income tax returns; (4) cash disbursement records; (5) general ledgers; (6) records relating to the hiring of trucks, including equipment vouchers, invoices and payment records; and (7) any other records specifically requested by the Funds' auditors, including the classifications of Employees, their social security numbers, and the amount of wages paid and hours worked. The Trustees may, from time to time, designate additional categories of documents as pertinent books and records without further notice to the Employers.

(e)    In the event the Employer fails to submit the required reports and/or pertinent books and records for audit within twenty (20) days after written demand, the Trustees, or their agents, may compute the sum due for any month by adding 10 percent to the number of hours for the month in which the largest number of hours were reported in the previous twelve (12) months or fifty two (52) weeks (or any combination thereof) for which reports reflecting at least one hour of covered work performed were submitted by

-25-

the Employer (hereinafter referred to as the base month). In the event there was an audit disclosing unreported hours for the base month, the amount of said unreported hours plus 10 percent thereof shall be added to arrive at the total hours. The total number of hours for the unreported period as determined aforesaid shall be multiplied by the current contribution rate, and the amount of contributions so computed shall be binding on the Employer and shall be deemed the amount due from the Employer for the purpose of any legal proceeding.

The amount of contributions so computed shall be binding on the Employer for the purposes of any legal proceeding. Alternatively or in addition to the foregoing and any other remedies provided by law, the Trustees may, in their discretion, apply for and be entitled to a mandatory injunction directing the Employer to produce its said books and records for audit. In connection with any such proceeding the Employer shall be obligated to pay the Trustees' reasonable attorneys' fees and all costs and disbursements. Trial by jury of any and all issues shall be waived and no bond shall be required to be posted by the Trustees to obtain the injunction.

In the event there is no base month due to the reason that there are no previous remittance reports submitted by the Employer or no previous audit reports, then the Employer shall be deemed to have the number of employees that the Union reports, in writing, the Employer to be employing, with each employee deemed to be working 40 hours per week for the entire unreported period.

(f)    In the event the Employer submits the required remittance reports, but thereafter such Employer fails to submit the pertinent books and records for audit within 20 days after written demand, such failure shall be a material breach of the Trust Agreement. In such event the Trustees and/or their agents may compute the additional contributions due for any month by taking 50 percent of the number of hours reported for that month and then multiplying said number of hours by the current contribution rate.

The amount of contributions so computed shall be binding on the Employer for the purposes of any legal proceeding Alternatively or in addition to the foregoing and any other remedies provided by law, the Trustees may, in their discretion, apply for and be entitled to a mandatory injunction directing the Employer to produce its said books and records for audit In connection with any such proceeding the Employer shall be obligated to pay the Trustees' reasonable attorneys' fees and all costs and disbursements Trial by jury of any and all issues shall be waived and no bond shall be required.

Section 2.    The Trustees shall have the power to demand, collect and receive contributions and retain service providers or professionals to collect fund delinquencies and calculate such delinquencies shall hold such monies separately as part of each Trust Fund, respectively, for the purposes specified in this Agreement and Declaration of Trust. However, the Board of Trustees shall not be required to compel and enforce the payments of Contributions, or to be personally or collectively responsible therefore, if, in the opinion of the Board of Trustees, the enforcement of the payment of Contributions would

-26-

involve a expense greater to the Fund than the amount to be obtained from any effort to compel or enforce the payment of the Contributions.

In addition to an audit of pertinent books and records, the Trustees are authorized to use any independent evidence to calculate the amount of contributions due from any Employer, if the Trustees, in their discretion, determine that such evidence constitutes a reliable record of contributions owed to the Funds. Calculations based upon such independent evidence shall be held to be presumptively correct and the Employer shall bear the burden of proof in any proceeding contesting such calculations.

Section 3.    The failure of an Employer to pay the contributions required hereunder promptly when due shall be a violation of the Collective Bargaining Agreement between the said Employer and the Union as well as a violation of the Employer's obligations hereunder. Nonpayment of an Employer of any monies due or the failure of the Employer to comply with any other obligation to the Trust Funds shall not relieve any other Employer from his obligation to make payments or to perform any other obligation to the Trust Funds. In addition to any other remedies to which the parties may be entitled an Employer in default for five working days shall be obligated to pay interest, at the rate of 1½ % per month of each monthly amount due for each month, from the first day of the month when the payment was due to the date when payment was made, together with attorneys' fees, auditors' fees and liquidated damages, computed as follows:

(a)  Attorney's fees in collection actions, whether a suit has been filed or, not, shall be equal to the actual amount to be billed to the Trustees by their counsel for work performed in connection with this matter, including matters where the Trustees have referred an Employer to counsel based upon the Employer's failure to timely submit remittance reports in which it is ultimately determined that no contributions are due and owing to the Funds from the Employer for the period at issue;

(b)  Auditor's fees -- $350, or such other amounts as the Trustees in their discretion shall apply, plus travel expenses, for each day expended in auditing the Employer, in all cases in which:

1.    It is determined by such audit that the amount of the Employer's principal delinquent contributions to the Funds for the period covered by the audit exceeds (a) $2,000 in the aggregate or (b) one percent of the total contributions paid by the Employer during the most recent calendar year that is included, in whole or in part, in the period encompassed by the audit, whichever is greater, or

2.    collection of the Employer's delinquent contributions reported by the audit is referred to the Funds' attorney, irrespective of whether such collection involves suit or other court proceeding.

The statement of a Certified Public Accountant making or supervising the audit as to the time expended shall be binding on the Employer for the purpose of any legal proceeding.

-27-

The Funds shall have the right to charge a fee equivalent to that charged for one-half day of auditing, plus any travel expenses incurred, where the Employer has canceled an appointment for an audit on less than one week's notice to the auditor or auditing firm.

The Funds shall have the right to charge an employer travel fees for an audit performed out-of-town, if the employer has refused to send copies of the relevant books and records to the auditor's office or to some other location within the jurisdiction of the Funds.

  3. For purposes of this Section, an estimated audit is considered an audit.

  (c) Additional damages equal to the greater of:

   1. The amount of interest charged on the unpaid contributions, or

   2. Liquidated damages in the form of 20 percent of the unpaid contributions.

Section 4. In addition to any other enforcement remedies which may exist under the Collective Bargaining Agreements and under this Agreement and Declaration of Trust, the Trustees are authorized and empowered to take whatever proceedings may be proper and necessary in their discretion for enforcement of Employer's obligations including but not limited to proceedings at law and in equity and arbitration and any remedies which would be generally available to the parties for enforcement of the aforesaid Collective Bargaining Agreements.

Section 5. Any legal proceedings for enforcement of any Employer's obligations may, if so authorized by the Trustees, be commenced in the names of one Union Trustee and one Employer Trustee in behalf of the Trustees, or they may, for good reason, in their sole discretion, refrain from taking any such action.

## ARTICLE X.
## TERMINATION OF INDIVIDUAL EMPLOYERS

Section 1. The Trustees may, in their sole and absolute discretion, terminate an Employer's participation as an Employer under this Agreement and Declaration of Trust whenever:

  (a) Any Employer Contribution or other payment required to be made by such Employer to or for the account of the Trust Fund shall not be paid when due; or

  (b) Such Employer no longer qualifies as an Employer as defined in Section 1of Article I hereof.

Section 2.    When, as provided in Section 1 of this Article X, an Employer ceases to be an Employer hereunder:

(a)   The Employees of such Employer and their spouses and children shall after 30 days from said date cease to be insured or entitled to any unaccrued benefits under the Welfare Plan or Welfare Trust Fund, and the Trustees shall immediately give such notice thereof as maybe required to any insurance carrier providing such insurance or benefits; provided, however, that accrued claims of Employees shall in no wise be affected.

(b)   The Employees of such Employer shall after 30 days from said date cease to accrue benefits under the Pension Plan or Pension Trust Fund, so long as notice is provided to those Employees.

(c)   Such Employer shall have no further rights or powers under this Agreement and Declaration of Trust, except as hereinafter in this Article X provided.

Section 3.    An Employer who ceases to be an Employer hereunder for the reason stated in Section 1(a) of this Article X, upon payment to the Trustees of all amounts then due from him, including any interest accrued thereon, any and expenses incurred in connection with his default, or upon payment pursuant to an agreed upon settlement of claims against him in accordance with such terms as the Trustees in their sole discretion determine, may be reinstated hereunder by the Trustees, and, in such event the Employees of such Employer shall again be entitled to the benefits of this Agreement and Declaration of Trust, subject to such conditions as may be provided therefor in the Welfare Plan, in the Pension Plan, in the Annuity Plan; in the Job Training Plan or in the Vacation and Sick Leave Plan, respectively.

Section 4.    An Employer, who ceases to be an Employer hereunder for the reason stated in Section 1(a) of this Article X shall continue to remain fully liable for Employer Contributions or other payments due hereunder; and an Employer who ceases to be an Employer for the reason stated in Section 1(b) of this Article X shall remain liable for any Employer Contributions or other payments which, under the circumstances, may be due to the Trustees under the collective bargaining agreement.

## ARTICLE XI.
## EMPLOYER WITHDRAWAL LIABILITY

Section 1.    <u>In General</u>.

(a)   An Employer that withdraws from the Pension Plan after April 28, 1980, in either a complete or partial withdrawal shall owe and pay withdrawal liability to the Plan, as determined under this Article and the Employee Retirement Income Security Act of 1974, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("ERISA") and the Pension Protection Act of 2006.

(b)   For purposes of this Article, all corporations, trades or businesses that are under common control, as defined in ERISA and in regulations of the Pension Benefit Guaranty Corporation ("PBGC"), are considered a single Employer, and the entity resulting from a change in business form described in Section 4218(1) of ERISA is considered to be the original Employer.

Section 2.    Complete Withdrawal Defined.

(a)   The complete withdrawal of an Employer occurs when the Employer:

1.    Permanently ceases to have an obligation to contribute under the Plan, or

2.    permanently ceases all covered operations under the Plan.

(b)   The date of the complete withdrawal of an Employer is the date the Employer's obligation to contribute ceased or the date its covered operations ceased, whichever is earlier.

(c)   For purposes of this section, a withdrawal is not considered to occur solely because the Employer temporarily suspends contributions during a labor dispute involving its employees.

(d)   In the case of a sale of an Employer, whether a withdrawal occurs shall be determined consistent with the applicable provisions of ERISA.

(e)   Notwithstanding the foregoing, effective for complete withdrawals and for cessations of the contribution obligation occurring on and after January 1, 2012, provided the withdrawn Employer made contributions to the Fund for at least the six months immediately prior to the date of the withdrawal or cessation of the contribution obligation, if substantially all of the Employees with respect to whom an Employer has an obligation to contribute to the Pension Trust Fund perform work in the building and construction industry, as defined by the Trustees in such rules as they may adopt from time to time, a complete withdrawal of the Employer occurs only if the Employer:

(i) Continues to perform work in the jurisdiction of the Collective Bargaining Agreement of the type for which contributions were previously required, or

(ii) resumes such work within 5 Plan Years after the date on which the obligation to contribute to the Pension Trust Fund ceases and does not renew the obligation at the time of the resumption. Notwithstanding the foregoing, if the Pension Trust Fund is terminated by mass withdrawal (within the meaning of 29 U.S.C. § 1341A (a) (2)), this paragraph shall be applied by substituting "3 Plan years" for "5 Plan years.

For purposes of this subsection, the Employer shall include, in addition to any person and entity otherwise included under this Trust Agreement or law, all persons and entities operating under another name or in a different business form, but with the same or related owners and/or managers, and subcontractors performing the Employer's work.

Section 3.    Amount of Liability for Complete Withdrawal.

(a)    General. The amount of an Employer's liability for a complete withdrawal shall be its initial liability amount, reduced in accordance with subsection (h). The amount shall be determined as of the end of the Plan Year preceding the date of the Employer's withdrawal.

(b)    Initial Liability Amounts. The initial liability amount:

1.    "Old" Employer. In the case of an Employer that was obligated to contribute for any part of the Plan Year ended February 28, 1980 and for any part of the period from April 29, 1980 through February 28, 1981, the sum of:

(A)    Its proportional share of the balance of Plan's unfunded vested liability as February 28, 1980, plus

(B)    the sum of its proportional share of the balances of the changes in the Plan's unfunded vested liability and of the reallocated amounts for each Plan Year that ended after February 28, 1980, and before the date of the Employer's withdrawal.

2.    New Employer.  In the case of any other Employer, the sum of its proportional shares of the changes in the Plan's unfunded vested liability and of the reallocated amounts for each Plan Year that ended after February 28, 1980, and before the date of the Employer's withdrawal.

(c)    Unfunded Vested Liability Defined.

1.    For purposes of this Article, the term "vested benefit" means a benefit for which a participant has satisfied the conditions for entitlement under the Pension Plan (other than submission of a formal application, retirement, or completion of a required waiting period) whether or not the benefit may subsequently be reduced or suspended by a plan amendment, an occurrence of any condition, or operation of law and whether or not the benefit is considered "vested" or "nonforfeitable" for any other purpose under the Plan.

2.    The Plan's liability for vested benefits as of a particular date is the actuarial value of the vested benefits under the Plan, as of that date. Actuarial value shall be determined on the basis of methods and assumptions approved by the Trustees for purposes of this Article, upon recommendation of the Plan's enrolled actuary.

-31-

3.    The unfunded vested liability shall be the amount, not less than zero, determined by subtracting the value of the Plan's assets from the Plan's liability for vested benefits. The Plan's assets are to be valued on the basis of rules adopted for this purpose by the Trustees upon recommendation of the Plan's enrolled actuary.

(d)    The balance of the Plan's unfunded vested liability as of February 28, 1980, is the amount determined as of February 28, 1980, reduced by 5 percent of such amount for each succeeding complete Plan Year.

(e)    <u>Annual Change in Unfunded Vested Liability</u>.

1.    The change in the Plan's unfunded vested liability for a Plan Year is the amount (which may be less than zero) determined by subtracting from the unfunded vested liability as of the end of the Plan Year the sum of:

(A)    the balance (as of the end of the Plan Year) of the unfunded vested liability as of February 28, 1980, plus

(B)    the sum of the balances (as of the end of the Plan Year) of the changes in the unfunded vested liability for each Plan Year that ended after February 28, 1980, and before the Plan Year for which the change is determined.

2.    The balance of the change in the Plan's unfunded vested liability for a Plan Year is the change in the Plan's unfunded vested liability for that year reduced by 5 percent of such amount for each succeeding complete Plan Year.

(f)    <u>Reallocated Liability Amount</u>.  For each Plan Year ended after February 28, 1980, the reallocated liability amount is:

1.    Any amount of unfunded vested liability assigned to a withdrawn Employer that the Trustees determine in the Plan Year to be uncollectible for reasons arising out of cases or proceedings under Title II, United States Code; or similar proceedings;

2.    any amount of unfunded vested liability that the Trustees determine in the Plan Year will not be assessed as a result of the limitations on liability described in Section 4209, 4219(c) (1) (B), or 4225 of ERISA against an Employer to whom a notice of liability under Section 4219 of ERISA has been sent; and

3.    any amount that the Trustees determine to be uncollectible or unassessable in the Plan Year for other reasons under standards not inconsistent with such regulations as may be prescribed by the Pension Benefit Guaranty Corporation.

The balance of the reallocated liability amount for a Plan Year is the reallocated liability amount for that year reduced by 5% of such amount for each succeeding Plan Year.

-32-

(g)    Apportionment of Unfunded Liability to Employer that has Withdrawn.

1.    "Old" Liability.  An Employer's proportional share of the balance of the Plan's unfunded vested liability as of February 28, 1980, shall be determined by multiplying the balance of the Plan's unfunded vested liability as of that date by a fraction --

(A)    the numerator of which is the total contributions that the Employer was obligated to make to the Plan for the 5 Plan Years ended February 28, 1980, and

(B)    the denominator of which is the total of Employer contributions reported in the audited financial statements of the Plan for the 5 Plan Years ended February 28, 1980, less any contributions otherwise included in that total made by any significant Employer that was not obligated to contribute to the Plan in the period from April 29, 1980, to February 28, 1981, or had withdrawn from the Plan before April 29, 1980.

2.    Liability Changes and Reallocated Uncollectibles. An Employer's proportional share of the change in the unfunded vested liabilities and of the reallocated liability amount for a Plan Year ending after February 28, 1980, shall be determined by multiplying each of those amounts, if any, as determined for a Plan Year by a fraction --

(A)    the numerator of which is the total contributions that the Employer was obligated to make to the Plan for the Plan year in which the change or reallocation arose and the four preceding Plan Years ("Apportionment Base Period") and

(B)    the denominator of which is the total adjusted Employer contributions to the Plan with respect to the Apportionment Base Period, determined as follows:

(i)    The total contributions shall be all Employer contributions actually received by the Plan in the Apportionment Base Period;

(ii)    Notwithstanding paragraph (i), with respect to any Plan Year ended on or before February 28, 1980, the total Employer contributions shall be as reported in the audited financial statements of the Plan for those Plan Years. The total for any Plan Year ending after February 28, 1980, shall be reduced by the amount of any Employer contributions included, consistent with these provisions, in any previous annual total;

(iii)    The total adjusted Employer contributions shall be the total Employer contributions with respect to the Apportionment Base Period, determined under paragraphs (i) and (ii), reduced by any contributions otherwise included in the total that were made by a significant Employer that withdrew from the Plan in or before the Plan Year in which the change or reallocation arose, and by any other Employer to which a notice of withdrawal liability was sent by the Plan within the Apportionment Base Period.

-33-

3.      For purposes of the denominators of the fractions described in paragraphs (1) and (2), "significant Employer" means:

(A)      an Employer that contributed, in any one Plan Year of the relevant period, at least 1 percent of total Employer contributions to the Plan for that year, as determined for purposes of the relevant denominator or, if lower, $250,000 and

(B)      any other Employer that was a member of an Employer association, a group of Employers covered by a single collective bargaining agreement or a group of Employers covered by agreements with a single labor organization, if the contribution obligations of substantially all members of the group ceased in a single Plan Year and the group's aggregate contributions to the Plan in any one Plan Year of the relevant period totaled at least 1 percent of total Employer contributions to the Plan for that year or, if lower, $250,000.

4.      Notwithstanding paragraphs (1) and (2), the numerators of the fractions described in those paragraphs shall not include contributions that the Employer was obligated to make:

(A)      Under a collective bargaining agreement for which there was a permanent cessation of the Employer's obligation to contribute before April 29, 1980, or

(B)      for work performed at a facility at which all covered operations or the Employer's obligation to contribute permanently ceased before April 29, 1980,

if and to the extent that the Employer demonstrates that its total contribution obligation included contributions properly allocable to such a collective bargaining agreement or such work.

(h)      <u>Limitations on the Amount of Withdrawal Liability.</u>

1.      Deductible From the initial liability amount there shall be deducted the lesser of:

(A)      $50,000, or

(B)      3/4 of 1 percent of the Plan's unfunded vested liability as of the end of the Plan Year preceding the Employer's withdrawal, less the excess of the initial amount over $100,000:

2.      The amount of initial liability remaining after application of paragraph (1) shall be reduced, to the extent applicable, in accordance with Section 4219(c) (1) (B) of ERISA.

3.      The amount of initial liability remaining after application of paragraph (2) shall be reduced in accordance with Section 4225 of ERISA, only if and to

-34-

the extent that the Employer demonstrates that additional limitations under that section apply.

Section 4.    Payment of Withdrawal Liability.

(a)    Withdrawal liability shall be payable in installments, in accordance with Section 5. The total amount due in each 12-month period beginning on the date of the first installment shall be the product of --

1.    the highest rate at which the Employer was obligated to contribute to the Plan in the period of 10 consecutive Plan Years ending with the Plan Year in which the withdrawal occurred plus any surcharge payable under ERISA section 305(e)(7), multiplied by

2.    the Employer's average annual contribution base for the 3 consecutive Plan Years, within the 10 consecutive Plan Years ending before the Year in which the withdrawal occurred, during which the Employer's contribution base was the highest,

except that the number of installment payments due in the final year shall be reduced to assure that the total payments will not exceed the Employer's total amortized withdrawal liability.

(b)    If, in connection with the Employer's withdrawal, the Plan transfers benefit liabilities to another plan to which the Employer will contribute, the Employer's withdrawal liability shall be reduced in an amount equal to the value of the unfunded vested benefits that are transferred, determined as of the end of the Plan Year preceding the withdrawal on the same basis as the determination of the Plan's unfunded vested liability under Section 3.

Section 5.    Notice and Collection of Withdrawal Liability.

(a)    General. Notice of withdrawal liability, reconsideration, determination of the amortization period, and of the maximum years of payment shall be as provided in section 4219 of ERISA and in this section.

(b)    Arbitration. A dispute between an Employer and the Plan concerning a determination of withdrawal liability shall be submitted to arbitration as provided in section 4221 of ERISA.  Upon receiving a notice and demand for withdrawal liability from the Plan Trustees, an Employer has 90 days in which to request a review of any specific matter relating to the determination or to furnish additional relevant information.  Within 60 days after receiving the trustees' decision in response to such request (but no later than 180 days after making the request) an Employer wishing to challenge the withdrawal liability determination must invoke arbitration. If the Employer fails to timely initiate arbitration, the withdrawal liability assessed by the Plan Trustees is due and owing according to the payment schedule.  Any arbitration under ERISA Section

-35-

4221 shall proceed in accordance with the Multiemployer Pension Plan Arbitration Rules for Withdrawal Liability Disputes of the American Arbitration Association ("AAA"). Arbitration shall be administered by and conducted at the New York City regional office of the AAA. No issue concerning the computation of withdrawal liability may be submitted for arbitration unless the matter has been reviewed by the Plan in accordance with Section 4219(b) (2) of ERISA and any Plan rules adopted thereunder. The Trustees are not required to arbitrate but can litigate immediately upon default, either to collect installments or the accelerated lump sum if applicable.

(c)    Schedule of Payment.

1.    Withdrawal liability shall be paid in equal monthly installments Notwithstanding the pendency of any review, arbitration or other proceedings, payment shall begin on the first day of the month that begins at least 10 days after the date notice of, and demand for, payment is sent to the Employer. Interest shall accrue on any late payment from the date the payment was due until the date paid, at the rate described in section (d) (2), below.

2.    If, following review, arbitration or other proceedings, the amount of the Employer's withdrawal liability is determined to be different from the amount set forth in the notice and demand, adjustment shall be made by reducing or increasing the total number of installment payments due. If the Employer has paid more than the amount finally determined to be its withdrawal liability, the Plan shall refund the excess with interest at the rate used to determine the amortization period under subsection (a).

(d)    Default.

1.    An Employer is in default on its withdrawal liability if:

(A)    Any installment is not paid when due;

(B)    the Plan has notified the Employer of its failure to pay the liability on the date it was due; and

(C)    the Employer has failed to pay the past-due installment within 60 days after its receipt of the late-payment notice.

2.    Interest shall be charged on any amount in default from the date the payment was due to the date it is paid at the rate of 1 ½% per month for each monthly amount due for each month.

3.    In the case of a default on withdrawal liability, the Plan may require immediate payment of some or all installments that would otherwise be due in the future.

4.    In addition to the event described in paragraph (1), an Employer is in default upon the occurrence of any of the following events (each of which the Trustees

-36-

have determined indicates a substantial likelihood that an Employer will be unable to pay its withdrawal liability):

        (A)    The Employer's insolvency, or any assignment by the Employer for the benefit of creditors, or the Employer's calling of a meeting of creditors for the purpose of offering a compromise or extension to such creditors, or the Employer's appointment of a committee of creditors or liquidating agent, or the Employer's offer of a compromise or extension to creditors, or

        (B)    The Employer's dissolution, or

        (C)    The making (or sending notice of) any intended bulk sale by the Employer, or

        (D)    An assignment, pledge, mortgage, or hypothecation by the Employer of property to an extent which the Trustees determined to be material in relation to the financial condition of the Employer, or

        (E)    The filing or commencement by the Employer, or the filing or commencement against the Employer or any of its property, of any proceeding suit, or action, at law or in equity, under or relating to any bankruptcy, reorganization, arrangement-of-debt, insolvency, adjustment-of-debt, receivership, liquidation, or dissolution by law or statute or amendments thereto, unless such proceeding, suit or action is set aside, withdrawn, or dismissed within 10 days after the date of the filing or commencement, or

        (F)    The entry of any judgment or the issuance of any warrant, attachment, or injunction or government tax lien or levy against Employer or against any of its property which the Trustees determine to be material in relation to the financial condition of the Employer, unless such judgment, attachment, injunction, lien, or levy is discharged, set aside or removed within 10 days after the date such judgment is entered or such attachment, injunction, lien or levy is issued, or

        (G)    The failure of the Employer to maintain current assets in an amount at least equal to current liabilities plus such additional amount as the Trustees may determine is appropriate in the particular circumstances, current assets and current liabilities to be determined in accordance with generally accepted accounting principles, or

        (H)    Default by the Employer on any contractual obligation with the Trustees determine to be material in relation to the financial condition of the Employer, or

        (I)    Such other event as the Trustees may determine indicates a substantial likelihood that the Employer will be unable to pay its withdrawal liability, provided written notice of such determination is given to the Employer with a reasonable

opportunity to demonstrate to the satisfaction of the Trustees that such determination was in error.

(e)      In any suit by the Trustees to collect withdrawal liability, including a suit to enforce an arbitrator's award and a claim asserted by the Trustees in an action brought by an Employer or other party, if judgment is awarded in favor of the Plan, the Employer shall pay to the Plan, in addition to the unpaid liability and interest thereon as determined under subsection (d) (2), liquidated damages equal to the greater of --

1.      the amount of interest changed on the unpaid balance, or

2.      20 percent of the unpaid amount awarded.

The Employer shall also pay attorneys' fees and all costs incurred in the action, as awarded by the court. Nothing in this paragraph shall be construed as a waiver or limitation of the Plan's right to any other legal or equitable relief.

(f)      Prepayment. An Employer may prepay all or part of its withdrawal liability, without penalty.

(g)      The Trustees may adopt rules providing other terms and conditions for an Employer to satisfy its withdrawal liability. Such rules shall be consistent with the purposes and standards of ERISA and shall not be inconsistent with regulations of the PBGC.

(h)      Other Terms and Conditions. The Trustees may require that an Employer post a bond, or provide the Plan other security for payment of its withdrawal liability, if --

1.      The Employer's payment schedule would extend for longer than 18 months;

2.      The Employer is the subject of a petition under the Bankruptcy Code, or similar proceedings under state or other federal laws; or

3.      Substantially all of the Employer's assets are sold, distributed or transferred out of the jurisdiction of the courts of the United States.

Section 6.      Partial Withdrawal.

(a)      Definition. Except as otherwise provided in this section; there is a partial withdrawal by an Employer on the last day of a Plan Year if for such Plan Year:

1.      There is a 70-percent contribution decline, or

2.      there is a partial cessation of the Employer's contribution obligation.

(b)      Further Definition. For purposes of subsection (a):

1.      (A)      There is a 70-percent contribution decline for any Plan Year if during each Plan Year in the 3-year testing period the hours on the basis of which the Employer is obligated to contribute to the Plan do not exceed 30 percent of such hours for the high base year. For purposes of subparagraph (A) --

(i)      The term "3-year testing period" means the period consisting of the Plan Year and the immediately preceding 2 Plan Years.

(ii)      The number of hours referred to in subparagraph (A) for the high base year is the average number of such hours for the 2 Plan Years for which they were the highest within the 5 Plan Years immediately preceding the beginning of the 3-year testing period. The pertinent hours for Plan Years ended by February 28, 1979 shall be deemed to be equal to the Employer's hours for the Plan Year ended February 28, 1980.

(iii)      Covered hours of work under a collective bargaining agreement with respect to which the Employer's contribution obligation permanently ceased before April 28, 1980, or at a facility for which the Employer permanently ceased to be obligated to contribute or permanently ceased all covered operations before April 29, 1980, shall not be taken into account if, and to the extent that, the Employer demonstrates the number of hours allocable to such agreements or facility.

2.      (A)      There is a partial cessation of the Employer's contribution obligation for the Plan Year if, during such year –

(i)      the Employer permanently ceased to have an obligation to contribute under one or more, but fewer than all, Collective Bargaining Agreements under which the Employer has been obligated to contribute under the Plan but continues to perform work in the jurisdiction of the Collective Bargaining Agreement of the type for which contributions were previously required or transfers such work to another location or, effective on and after August 17, 2006, to an entity or entities owned or controlled by the Employer, or

(ii)      the Employer permanently ceased to have an obligation to contribute under the Plan with respect to work performed at one or more, but fewer than all, of its facilities, but continues to perform work at the facility of the type for which the obligation to contribute ceased.

(B)      For purposes of subparagraph (A), a cessation of obligations under a collective bargaining agreement shall not be considered to have occurred solely because one agreement that requires contributions to the Plan has been substituted for another such agreement.

(c)      Building and Construction Employers.  Notwithstanding the foregoing, if substantially all of the Employees with respect to whom an Employer has an

obligation to contribute to the Pension Trust Fund perform work in the building and construction industry as defined by the Trustees, a partial withdrawal of the Employer occurs only if the Employer's obligation to contribute to the Pension Trust Fund continues for less than an insubstantial portion of its continuing work in the Union's jurisdiction. The terms of this subsection (e) shall be effective for partial withdrawals and for cessations of the contribution obligation occurring on and after January 1, 2012, provided the withdrawn Employer made contributions to the Fund for at least the six months immediately prior to the date of the withdrawal or cessation of the contribution obligation.

(d)    Partial Withdrawal -- Amount and Payment. The amount of liability for a partial withdrawal and the total amount due in a 12-month-period with respect to a partial withdrawal shall be pro rata shares of the amounts determined as if the Employer had withdrawn completely, in a manner consistent with the applicable provisions of Sections 4206 and 4219 of ERISA.

Section 7.    Liability Adjustments and Abatement.

(a)    Successive Withdrawals. If, after a partial withdrawal, an Employer again incurs liability for a complete or partial withdrawal, the liability incurred as a result of the later withdrawal(s) shall be adjusted to the extent necessary to avoid duplication of liability.

(b)    Abatement of Partial Withdrawal Liability. The liability of an Employer for a partial withdrawal under section 6 (a) (1) shall be reduced or eliminated in accordance with section 4208 of ERISA.

(c)    Abatement after Renewed or Increased Participation. If an Employer that has withdrawn from the Plan later renews the obligation to contribute, the unpaid balance of the Employer's liability incurred, on account of the earlier withdrawal shall be reduced in accordance with rules adopted by the Trustees pursuant to regulations of the PBGC.

Section 8.    Mass Withdrawal.

Notwithstanding any other provisions of this Article, if all or substantially all contributing Employers withdraw from the Plan pursuant to an agreement or arrangement, as determined under ERISA sections 4209 and 4219(c)(1)(D), the withdrawal liability of each such Employer shall be adjusted in accordance with those ERISA sections.

Section 9.    Notice to Employers.

(a)    Any notice that must be given to an Employer under this Article or under Subtitle E of Title IV of ERISA shall be effective if given to the specific member of a commonly controlled group that has or has had the obligation to contribute under the Plan.

-40-

(b)    Notice shall also be given to any other member of the controlled group that the Employer identifies and designates to receive notices hereunder, in accordance with a procedure adopted by the Trustees.

Section 10.    Free-Look Rule.

Notwithstanding the foregoing provisions of this Article, effective for new Employers on and after January 1, 2012, in accordance with ERISA Section 4210, an Employer that withdraws from the Fund in a complete or partial withdrawal shall not incur withdrawal liability to the Fund if, pursuant to ERISA Section 4210(b)(3), the ratio of the assets of the Plan for the Plan Year preceding the first Plan Year for which the Employer was required to contribute to the Plan to the benefit payments made during that Plan Year was at least 8 to 1, and, pursuant to Section 4210 (a), the Employer:

(a) Had an obligation to contribute to the Fund for less than five Plan Years preceding the date of withdrawal,

(b) was required to contribute to the Fund for each such Plan Year an amount equal to less than 2% of the sum of all Employer contributions made to the Plan for each such year, and

(c) has never avoided withdrawal liability under this Section in any prior Plan Year with respect to the Fund.

Section 11. Treatment of Reductions in Adjustable Benefits.

(a) Effective for withdrawals occurring on or after January 1, 2012, the amount of unfunded vested benefits allocable to an Employer that withdraws from the Fund   after the last day of any Plan Year in which reductions in adjustable benefits (as defined in Code Section 432(e)(8)) become effective is equal to the sum of (1) and (2) where –

(1) is the amount determined in accordance with this Article, taking into account only nonforfeitable benefits that remain in effect after reductions in adjustable benefits, and

(2) is the Employer's proportional share of the unamortized balance of the value of the reduced nonforfeitable benefits ("Affected Benefits") determined as of the end of the Plan Year prior to the withdrawal for each Plan Year in which the reductions became effective in accordance with this Section.

(b)    The unamortized balance of the Affected Benefits as of a Plan Year is the value of that amount as of the end of the year in which the reductions in Affected Benefits took effect ("Base Year") reduced as if that amount were being fully amortized in level annual installments over 15 years, with interest at the Fund's valuation interest rate, beginning with the first Plan Year after the Base Year. There is a separate pool of amortized Affected Benefits calculated for each Plan Year in which reductions take effect

-41-

so that if reductions become effective in more than one Plan Year, the unamortized balance of the Affected Benefits as of a Plan Year is the sum of the unamortized balances of each pool.

   (c)  An Employer's proportional share of the unamortized balance of the Affected Benefits is the product of -

   (1) the unamortized balance as of the end of the Plan Year preceding the withdrawal, and

   (2) a fraction -

    (i) the numerator of which is the sum of all contributions required to be made by the Employer under the Fund for the last 5 plan years ending before withdrawal (excluding surcharges imposed under Code Section 432(e)(7) or ERISA Section 305(e)(7), and

    (ii) the denominator of which is the total amount contributed under the Fund by all Employers for the last 5 Plan Years ending before the withdrawal (excluding surcharges imposed under Code Section 432(e)(7) or ERISA Section 305(e)(7)), increased by any Employer contributions owed with respect to earlier periods that were collected in those Plan Years, and decreased by any amount contributed to the Fund during those Plan Years by Employers who ceased to be obligated to contribute or ceased covered operations.

(d) The value of Affected Benefits is determined using the same assumptions used under this Article X to determine unfunded vested benefits without regard to this Section.

(e) To the extent that the amount of unfunded vested benefits is reduced to reflect outstanding claims for withdrawal liability that can reasonably be expected to be collected, the amount of such outstanding claims attributable to reductions in Affected Benefits shall be disregarded.

## ARTICLE XII. TERMINATION OF THE TRUSTS

Section 1.

   In the case of the Welfare Trust Fund, the Pension Trust Fund, the Annuity Trust Fund, the Job Training Trust Fund or the Vacation and Sick Leave Trust Fund, the Trust may be terminated when there is no longer in force an agreement between the Employers and the Union requiring any Employer contributions to such Trust Fund for the purposes hereinabove provided.

   Each Trust may be terminated at any time by the unanimous vote of all Trustees, with the consent of the Employers and the Union.

Section 2.

In the event of termination of the Welfare, Job Training and Vacation and Sick Leave Trusts or any one of them, the Trustees shall apply the Fund(s) to pay or to provide for the payment of any and all obligations of the said Trust or Trusts and distribute and apply any remaining surplus in such manner as will, in their opinion, best effectuate the purpose of the said Trust or Trusts; provided, however, that no part of the corpus or income of said Trust or Trusts shall be used for or diverted to purposes other than the exclusive benefit of Employees, retired Employees, or the families or beneficiaries of Employees or retired Employees, or the administrative expenses--for said Trust or Trusts (as the case may be) or for other payments in accordance with the provisions of such Plan or Plans. In the event of termination of the Pension or Annuity Trusts, the Trustees shall apply the Fund(s) to pay or provide for the payment of such obligations of the said Trust or Trusts in accordance with federal law.

Section 3.

Upon termination of any Trust, the Trustees shall forthwith notify the Union and each Employer, and the insurance carrier or carriers of the Policy or Policies and all other necessary parties, and shall continue as Trustees for the purpose of winding up the affairs of such Trust, and may take any action with regard to any Policy or Policies which may be required by the insurance carrier or carriers of such Policy or Policies and which the Trustees, in their discretion, may deem appropriate.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

Section 1.

(a)     No Employee or any person claiming by or through such Employee by reason or having been named a beneficiary in a certificate or otherwise shall have any right, title or interest in or to the funds or other property of the Trust Fund or any part hereof, except as specifically provided.

(b)     No monies, property or equity or interest of any nature whatsoever in the Trust or Trust funds or Policies or benefits or moneys payable therefrom shall be subject in any manner, by any Employee or person claiming through such Employee, to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance garnishment, mortgage, lien or charge (except as authorized by a Qualified Domestic Relations Order), and any attempts to cause the same to be subject thereto shall be null and void.  No Employee, or any person claiming by or through any Employee by reason of having been named a beneficiary by the Employee or otherwise, or any Employer, or the Union, or any other person, partnership, corporation or association shall have any right, title or interest in the Trust or any part thereof. Title to all of the money, property and income paid into or acquired by or accrued to the Trust shall be vested in and remain exclusively in the Board of Trustees; and it is the intention of the parties hereto that said Trust shall constitute an irrevocable trust. Except to the extent that such rights or interests may be expressly granted under the provisions of the Plan, or as permitted under applicable law, no benefits

-43-

or monies payable from the Trust shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge and any attempt to so anticipate, alienate, sell, transfer, assign, pledge, encumber or charge the same shall be void. The monies to be paid into said Trust shall not constitute or be deemed monies due to individual Employees, nor shall said monies in any manner be liable for or subject to the debts, contracts, liabilities, or torts of the parties entitled to such money upon a termination of the Trust and Plan, except to the extent that such rights or interests may be expressly granted under the provisions of the Plan, or as permitted under applicable law.

Section 2. No person, partnership, corporation or association dealing with the Trustees shall be obliged to see to the application of any funds or property of the Trust or to see the terms of the Trust have been complied with or be obliged to inquire into the necessity or expediency of any act of the Trustees and every instrument effected by the Trustees shall be conclusive in favor of any person, partnership, corporation or association relying thereon that:

        (a)     At the time of the delivery of said instrument the Trust was in full force and effect;

        (b)     Said instrument was effected in accordance with the terms and conditions of this Agreement and Declaration of Trust; and

        (c)     The Trustees were duly authorized and empowered to execute such instrument.

Section 3. Anything contained in this Agreement and Declaration of Trust, or any amendment hereof, or in the Welfare Plan, Pension Plan, Annuity Plan, Job Training Plan, or Vacation and Sick Leave Plan, or any amendments thereof, to the contrary notwithstanding, no part of the corpus or income of the Welfare Trust Fund, the Pension Fund, the Annuity Trust Fund, the Job Training Fund or the Vacation and Sick Leave Fund shall be used for, or diverted to, purposes other than for the exclusive benefit of the Employees; retired Employees, or the spouses and children or beneficiaries of Employees or retired Employees, or the expenses (including taxes) of said Trust Funds and Plans.

Section 4. The Trustees shall have and maintain an office in the State of New York. The Trustees may from time to time change the location of their office within the State of New York, but no change shall be effective until notice thereof shall have been given to the Union and Employers.

Section 5. Notices given to the Trustees, Union or Employers hereunder, shall (unless herein otherwise specified) be sufficient if in writing and delivered to, or sent by postpaid first class mail or prepaid telegram to, their usual business addresses shown on the signature line hereof. Except as herein otherwise provided, distribution or delivery of any statement or documents required hereunder to be made to the Trustees, Union or Employers shall be sufficient if delivered in person or if sent by postpaid first class mail to his; their or its address above stated or changed as above provided.

Section 6.  Mistaken Contributions. In the event an Employer makes a Fund Contribution in excess of that required by mistake of fact or law and satisfies the requirements of the Funds' 2003 Policy for the Return to Employers of Overpaid Contributions and ERISA Section 403(c), 29 U.S.C. § 1103, together with any amendments and riders thereto, and the Employer timely notifies the Fund of such overpayment, the Fund may, in the sole and absolute discretion of the Board of Trustees, reimburse the Employer after the Trustees determine that a mistake occurred. This section is intended to comply with ERISA Section 403.

Section 7.  The Employer must notify the Funds of an employee's approved absence from a position of employment and contribute on behalf of such employee, to the extent any collective bargaining agreement or participation agreement or law requires for the period of leave. If the Employer does not provide the required notice and a Fund incurs a liability as a result the Employer will be responsible for the Fund's liability.

Section 8.  It is the intent of the Board of Trustees that the Funds maintained under this Agreement be operated and administered as multiemployer plans.

Section 9.  In the event that any provisions of this Agreement shall be held illegal or invalid for any reason, said illegality or invalidity shall not affect the remaining provisions of this Agreement. The provisions held illegal or invalid shall be fully severable and the Agreement shall be construed and enforced as if said illegal or invalid provisions had never been inserted.

## ARTICLE XIV.
## AMENDMENTS

Subject to the provisions of Section 3 of Article XIII hereof, this Agreement and Declaration of Trust may be amended in any respect from time to time or terminated by the Trustees; provided that each amendment shall be duly executed in writing by the Trustees and annexed hereto and copy thereof shall be distributed to the Union and each Employer.  As to any amendment, the Trustees in their sole discretion shall have full power to fix the effective date thereof. The Board of Trustees shall have power to interpret, apply, construe and amend and terminate the provisions of this Agreement and the Plan, and make factual determinations regarding its construction, interpretation and application, and any construction, interpretation and application adopted by the Trustees in good faith shall be afforded the maximum deference permitted by law and be binding upon the Union, the Employers, as well as upon Employees, Beneficiaries and all other persons who may be involved or affected.

## ARTICLE  XV.
## EXECUTION OF AGREEMENTS - SITUS OF TRUSTS

Section 1. This Agreement and Declaration of Trust may be executed in one or more counterparts. The signature of a party of any counterpart shall be sufficient evidence of his execution thereof.

-45-

Section 2. This Agreement and Declaration of Trust shall be deemed to have been executed and delivered in, and with reference to the laws of the State of New York, and it and the Trusts established and created hereunder shall be governed by said laws to the extent not governed by federal law. The Trustees shall be accountable only in the State of New York.

Section 3.  This Agreement and Declaration of Trust shall become effective as of September 24, 2012.

**IN WITNESS WHEREOF**, the parties hereto have duly executed this agreement the day and years first above written:

<u>EMPLOYER TRUSTEES</u>

| | |
|---|---|
| FRANK H. FINKEL | c/o Davis & Warshow, Inc.<br>57-22 49th Street<br>Maspeth, NY 11378-2099 |
| JOSEPH A. FERRARA SR. | President/CEO<br>Ferrara Bros. Building<br>Materials Corp.<br>120-05 31st Avenue<br>Flushing, NY 11354 |
| MARC HERBST | Long Island Contractor's Association<br>150 Motor Parkway, Suite 307<br>Hauppauge, NY 11788 |
| THOMAS CORBETT | Shamrock Materials<br>100 St. Mary's Avenue, 3rd Floor<br>Staten Island, NY 10305 |
| DENISE RICHARDSON | The General Contractors Association of New York, Inc.<br>60 East 42nd Street, Room 3510<br>New York, NY 10165 |

-46-

UNION TRUSTEES

| THOMAS GESUALDI | c/o Local 282 IBT<br>2500 Marcus Avenue<br>Lake Success, NY 11042 |
|---|---|
| LOUIS BISIGNANO | c/o Local 282 IBT<br>2500 Marcus Avenue<br>Lake Success, NY 11042 |
| ANTHONY PIROZZI | c/o Local 282 IBT<br>2500 Marcus Avenue<br>Lake Success, NY 11042 |
| ANTHONY D'AQUILA | c/o Local 282 IBT<br>2500 Marcus Avenue<br>Lake Success, NY 11042 |
| MICHAEL O'TOOLE | c/o Local 282 IBT, 2500 Marcus Avenue<br>Lake Success, NY 11042 |

Employer Trustees:                    Union Trustees:

### AMENDMENT NUMBER 1
### TO RESTATED AGREEMENT AND DECLARATION OF TRUST OF THE
### LOCAL 282 PENSION, WELFARE, ANNUITY, JOB TRAINING, AND
### VACATION AND SICK LEAVE TRUST FUNDS

In accordance with Article XIV of the Restated Agreement and Declaration of Trust of the Local 282 Pension, Welfare, Annuity, Job Training, and Vacation and Sick Leave Trust Funds (the "Trust Funds"), as amended and restated effective September 24, 2012 (the "Trust Agreement"), the Trustees of the Trust Funds hereby amend Article IX of the Trust Agreement, as follows:

In Article IX Section 3 the following change shall be made in the last sentence of the first paragraph thereof:

> The words "from the first day of the month when payment was due to the date when payment was made" shall be replaced with "from the date when payment was due to the date when payment was made".

The above is adopted this 30th day of April 2013

| | |
|---|---|
| Employer Trustee | Union Trustee |
| Employer Trustee | Union Trustee |
| Employer Trustee | Union Trustee |
| Employer Trustee | Union Trustee |
| Employer Trustee | Union Trustee |

-48-

**AMENDMENT NUMBER 2**
**TO RESTATED AGREEMENT AND DECLARATION OF TRUST OF THE**
**LOCAL 282 PENSION, WELFARE, ANNUITY, JOB TRAINING, AND**
**VACATION AND SICK LEAVE TRUST FUNDS**

In accordance with Article XIV of the Restated Agreement and Declaration of Trust of the Local 282 Pension, Welfare, Annuity, Job Training, and Vacation and Sick Leave Trust Funds (the "Trust Funds"), as amended and restated effective September 24, 2012 (the "Trust Agreement"), the Trustees of the Trust Funds hereby amend Article VIII of the Trust Agreement, as follows:

Article VIII, Section 3 shall be amended to add new subsection (bb):

(bb)    To permit one Fund to collect contributions due to the Funds and distribute such contributions in accordance with the allocation established in the applicable Collective Bargaining Agreements.

The above is adopted this 23rd day of July 2013.

_____
Employer Trustee

_____
Employer Trustee

_____
Employer Trustee

_____
Employer Trustee

_____
Employer Trustee

_____
Union Trustee

_____
Union Trustee

_____
Union Trustee

_____
Union Trustee

_____
Union Trustee

**-49-**

00276382.1

## AMENDMENT NUMBER 3
## TO THE AMENDED AND RESTATED AGREEMENT AND DECLARATION OF TRUST OF
## THE LOCAL 282 PENSION, WELFARE, ANNUITY, JOB TRAINING, AND VACATION AND
## SICK LEAVE TRUST FUNDS

WHEREAS, the Local 282 Funds Board of Trustees (the "Board of Trustees") maintains the Local 282 Pension Trust Fund, Local 282 Welfare Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund (collectively the "Funds") pursuant to the Amended and Restated Agreement and Declaration of Trust (the "Trust Agreement"), dated as of September 24, 2012, as amended; and

WHEREAS, Article XIV of the Trust Agreement authorizes the Trustees to amend the Plan; and

WHEREAS, the Board of Trustees desires to amend the Trust Agreement to establish the choice of venue for litigation filed against the Funds;

NOW, THEREFORE, Article XV, Section 2 of the Trust is hereby amended, effective January 25, 2017, to add the following new sentence at the end thereof:

**"Any action relating to or arising under these employee benefit plans shall be brought in and resolved only in either the U.S. District Court for the Southern District of New York or the U.S. District Court for the Eastern District of New York, and in any courts in which appeals from those courts are heard."**

Adopted January 24, 2017

| | |
|---|---|
| _____ | _____ |
| Employer Trustee | Union Trustee |
| _____ | _____ |
| Employer Trustee | Union Trustee |
| _____ | _____ |
| Employer Trustee | Union Trustee |
| _____ | _____ |
| Employer Trustee | Union Trustee |
| _____ | _____ |
| Employer Trustee | Union Trustee |

**Amendment Number 4**
## TO RESTATED AGREEMENT AND DECLARATION OF TRUST OF THE LOCAL 282 PENSION, WELFARE, ANUITY, JOB TRAINING, AND VACATION AND SICK LEAVE FUNDS

In accordance with Article XIV of the Restated Agreement and Declaration of Trust of the Local 282 Pension, Welfare, Annuity, Job Training, and Vacation and Sick Leave Trust Funds (the "Trust Funds"), as amended and restated effective September 24, 2012 (the "Trust Agreement"), the Board of Trustees (the "Trustees") of the Trust Funds hereby amend Article IX of the Trust Agreement as follows:

Article IX, Section 3, Subsection b shall be replaced with the following language:

(b) Auditor's fees-- $350, or such other amounts as the Trustees in their discretion shall apply, plus travel expenses, for each day expended in auditing the Employer, in all cases in which:

1.     it is determined by such audit that the amount of the Employer's principal delinquent contributions to the Funds for the period covered by the audit both (a) exceeds $2,000 in the aggregate and (b) exceeds one percent of the total contributions paid by the Employer during the most recent calendar year that is included, in whole or in part, in the period encompassed by the audit,

or

2.     collection of the Employer's delinquent contributions reported by the audit is referred to the Funds' attorney, irrespective of whether such collection involves suit or other court proceeding.

The above is adopted this Twenty-Second day of January 2018.

UNION TRUSTEES

Thomas Gesualdi

Louis Bisignano

Michael O'Toole

Michael Bourgal

Darin Jeffers

EMPLOYER TRUSTEES

Frank H. Finkel

Joseph A. Ferrara

Marc Herbst

Denise Richardson

Thomas Corbett

**<u>AMENDMENT NUMBER 5 TO THE AMENDED AND RESTATED AGREEMENT AND DECLARATION OF TRUST OF THE LOCAL 282 PENSION, WELFARE, ANNUITY, JOB TRAINING, AND VACATION AND SICK LEAVE TRUST FUNDS</u>**

In accordance with Article XIV of the Amended and Restated Agreement and Declaration of Trust of the Local 282 Pension, Welfare, Annuity, Job Training, and Vacation and Sick Leave Trust Funds (the "Trust Funds"), as amended (the "Trust Agreement"), the Trustees of the Trust Funds hereby amend the Trust Agreement, effective July 1, 2019, as follows:

1. <u>Amendment of the Welfare Trust Fund to Pay Vacation and Sick Leave Benefits</u>. Section 3 of Article II of the Trust Agreement shall be amended by:

    a. Adding the following new sentence at the end of the first paragraph thereof:

        "Effective July 1, 2019, the Welfare Trust Fund shall be maintained for the additional purpose of paying vacation pay and sick leave benefits to Employees entitled to receive such benefits in accordance with the terms, provisions and conditions of the Plan to be formulated and agreed upon hereunder."

    b. Replacing the second sentence of the fourth paragraph within said section with the following:

        The Trustees shall promptly agree upon and formulate the provisions, regulations and conditions of the Welfare Plan herein contemplated, including definitions relating to eligibility of Employees, their spouses and children, waiting periods, full-time employment and any or all other matters relating thereto which the Trustees may deem appropriate for the determination of benefits and the administration of the program The said Welfare Plan need not provide identical benefits for Employees working in different Industries, but benefits, other than vacation pay and sick leave benefits, shall be uniform for the Employees in each Industry. A copy of such Welfare Plan shall be adopted and filed, by the Trustees as part of the records and minutes of the Trustees.

2. <u>Merger of the Vacation and Sick Leave Fund into the Welfare Trust Fund</u>. Article VI of the Trust Agreement shall be amended by replacing the entire article with the following:

        Effective July 1, 2019, in accordance with the Merger Agreement executed on June 26, 2019, the Local 282 Vacation and Sick Leave Trust Fund shall be merged into the Local 282 Welfare Trust Fund by the transfer of its assets and liabilities (including all receivables) at the end of said date to the Welfare Trust Fund. Following July 1, 2019, vacation and sick leave benefits shall be administered by the Welfare Trust Fund, and all references in this Agreement to Article VI, the Vacation and Sick Leave Trust Fund, and the Vacation and Sick Leave Plan, shall be deemed, for periods on and after July 1, 2019, to refer, instead, to Article II, the Welfare Trust Fund, and the Welfare Plan, respectively."

1

Dated: July 23, 2019

_____
Employer Trustee

_____
Employer Trustee

_____
Employer Trustee

_____
Employer Trustee

_____
Employer Trustee

_____
Union Trustee

_____
Union Trustee

_____
Union Trustee

_____
Union Trustee

_____
Union Trustee

2

## AMENDMENT NUMBER 6 TO THE AMENDED AND RESTATED AGREEMENT AND DECLARATION OF TRUST OF THE LOCAL 282 PENSION, WELFARE, ANNUITY, JOB TRAINING, AND VACATION AND SICK LEAVE TRUST FUNDS

In accordance with Article XIV of the Amended and Restated Agreement and Declaration of Trust of the Local 282 Pension, Welfare, Annuity, Job Training, and Vacation and Sick Leave Trust Funds (the "Trust Funds"), as amended (the "Trust Agreement"), the Trustees of the Trust Funds hereby amend Section 9 of Article VIII of the Trust Agreement, effective April 27, 2021, by adding the following underlined language:

The Trustees may authorize an Employer Trustee and a Union Trustee or any joint group equally composed of Employer and Union Trustees, or the Fund Manager, to act for and on behalf of the Trust and the Trustees by executing and delivering notices, assignments, agreements, deeds, mortgages, receipts, releases and any other instruments in writing appropriate for the administration of its trust powers as set forth in this Article, and all persons, partnerships, corporations or associations may rely thereupon that such act or instrument has been duly authorized by and is binding upon the Trust and the Trustees with the same effect and force as if taken by all of the Trustees. Any such delegation of authority to the Fund Manager shall be limited to specific circumstances and shall be limited to executing documents as necessary to effectuate the Trustees' decision regarding such specific circumstance.

_____
Employer Trustee

_____
Employer Trustee

_____
Employer Trustee

_____
Employer Trustee

_____
Employer Trustee

_____
Union Trustee

_____
Union Trustee

_____
Union Trustee

_____
Union Trustee

_____
Union Trustee

204200.2