# Exhibit C

# BUILDING MATERIAL SUPPLIERS CONTRACT
# 2014-2018

AGREEMENT entered into between the undersigned EMPLOYER and LOCAL NO. 282, affiliated with the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, hereinafter referred to as the Union, to govern all hours, wages and conditions of employment herein set forth from the 1st day of July, 2014, through the 30th day of June 2018.

SECTION 1. WAGES

## TIER 1

Drivers and Yardmen who were employed on or before June 30, 2005 shall receive the following wages:

### TIER 1 DRIVERS

| Effective | Per Hour | 8 Hour Day | 40 Hour Week |
|---|---|---|---|
| July 1, 2014 | $30.02 | $240.16 | $1,200.80 |
| July 1, 2015 | $30.55 | $244.40 | $1,222.00 |
| July 1, 2016 | $31.13 | $249.04 | $1,245.20 |
| July 1, 2017 | $31.73 | $253.84 | $1,269.20 |

### TIER 1 YARDMEN

| Effective | Per Hour | 8 Hour Day | 40 Hour Week |
|---|---|---|---|
| July 1, 2014 | $29.68 | $237.44 | $1,187.20 |
| July 1, 2015 | $30.21 | $241.68 | $1,208.40 |
| July 1, 2016 | $30.79 | $246.32 | $1,231.60 |
| July 1, 2017 | $31.39 | $251.12 | $1,255.60 |

## TIER 2

(a) All employees hired on or after July 1, 2005 shall be classified and treated under this CBA as Tier II employees during their first year of service. After employees have completed one year of service, they shall receive, in addition to the increases scheduled herein, upon completion of each additional six months of employment, a wage increase equal to 25 percent of the difference between the wages then in effect for Tier I and Tier II employees. Tier II employees hired on or after July 1, 2005 shall become Tier I employees upon completion of three years of employment with the Employer.

-1-

(b)　Employees hired on or before June 30, 2005 who, at that time, have been employed by the Employer for one or more years shall receive, in addition to the increases scheduled herein, an additional wage increase every six months measured from the commencement of this Agreement equal to 25 percent of the difference between the wages then in effect for Tier I and Tier II employees. Such employees shall attain Tier I status as of July 1, 2007.

(c)　Employees hired on or before June 30, 2005 who, at that time, do not have one year of employment with the Employer, shall receive, in addition to the increases scheduled herein, an additional wage increase equal to 25 percent of the difference between the wages then in effect for Tier I and Tier II employees after completing one year of service. Such employees shall receive similar 25 percent wage increases every six months of employment and shall become Tier I employees upon completion of three years of employments.

(d)　Notwithstanding the foregoing, all Tier II employees shall continue to receive Tier II benefits until they become Tier I employees.

## TIER 2 DRIVERS

| Effective | Per Hour | 8 Hour Day | 40 Hour Week |
|---|---|---|---|
| July 1, 2014 | $25.44 | $203.52 | $1,017.60 |
| July 1, 2015 | $25.94 | $207.52 | $1,037.60 |
| July 1, 2016 | $26.44 | $211.52 | $1,057.60 |
| July 1, 2017 | $27.04 | $216.32 | $1,081.60 |

## TIER 2 YARDMEN

| Effective | Per Hour | 8 Hour Day | 40 Hour Week |
|---|---|---|---|
| July 1, 2014 | $25.16 | $201.28 | $1,006.40 |
| July 1, 2015 | $25.66 | $205.28 | $1,026.40 |
| July 1, 2016 | $26.16 | $209.28 | $1,046.40 |
| July 1, 2017 | $26.76 | $214.08 | $1,070.40 |

In the event the Employer hires a member of Local 282 on a temporary basis (*i.e.,* On a daily basis or to fill in as a vacation man), such driver shall receive first tier salary together with first tier contributions for days worked. This clause is intended to cover short term employment.

## SHOP STEWARDS

Shop Stewards shall receive Fifty Cents (.50) per hour above scale.

All overtime rates shall be increased proportionately. Drivers of 6-wheel (3-axle) tractors and trailers shall receive Two Dollars and Seventy-Five Cents ($2.75) per day additional. This does not apply to bulk material.

If an Employee is assigned to a position in a higher paid classification, he shall be paid at the higher rate for the full day in which he performs any such work, regardless of the number of hours he actually works at the higher paid scale.

An Employee shall not receive less than the wage provided for his own classification, provided he works at least some part of the day in his higher classification.

(e) <u>Pay Day and Method of Payment</u>. The Employer shall have the option to pay on Thursday or Friday either by check or cash for work performed for the previous payroll week. If a holiday falls on Friday, pay day shall be on Thursday; if a holiday falls on Thursday, pay day shall be on Friday.

A man who shapes on Friday and does not go to work shall receive his pay check not later than 8:00 A.M. If he has to wait for his pay he shall be paid in cash and he shall be paid one (1) hour at hourly standard wages if paid after 8:00 A.M. but before 9:00 A.M.; two (2) hours if paid after 9:00 A.M. but before 10:00 A.M.; and a full day's (8 hours) pay if paid after 10:00 A.M. However, he is not to receive such payment unless he stays at the barn. Employers will work out methods to assure the Employees of a reasonable opportunity to cash checks. All Employees shall be paid when checks are due — no exceptions.

Each Employee shall receive a detailed payslip indicating hours worked, overtime and identifying all deductions and their basis.

(f) <u>Dues Check-Off</u>. Between July 1, 2014 and June 30, 2015, the Employer agrees to deduct from the wage rate of each Employee covered by this Agreement and to pay to said Local Union No. 282, after proper execution by each Employee of an authorization form, which form shall be furnished by the Union to the Employer, the sum of One Dollar and Fifteen Cents ($1.15) for each hour paid, and at the applicable premium rate for each hour paid at a premium rate. Effective July 1, 2015, the aforesaid sum of $1.15 shall be increased to One Dollar and Twenty Cents ($1.20). Effective July 1, 2016, the aforesaid sum of $1.20 shall be increased to One Dollar and Twenty-Five Cents ($1.25). Effective July 1, 2017, the aforesaid sum of $1.25 shall be increased to One Dollar and Thirty Cents ($1.30). In addition, the Employer agrees to deduct from the wage rate of each Employee covered by this Agreement and to pay to the Local 282 Building Trust Fund, after proper execution by each Employee of an authorization form, which form shall be furnished by the Union to the Employer, the sum of Ten Cents (.10) for each hour paid. Said sums shall constitute a part of said Employee's Local Union No. 282 Union dues. Payment of dues checked off shall be forwarded to the Union no later than the thirtieth (30th) of each month covering all payroll periods ending during the preceding calendar month. Local Union No. 282 agrees to indemnify and to hold harmless the Employer from any and all claims, actions and/or proceedings arising out of said dues checkoff.

This shall be in addition to any regular monthly Union dues checked off pursuant to written authorization pursuant to law.

## SECTION 2. HOURS, OFF SHIFT WORK & SATURDAYS & SUNDAYS

Eight (8) working hours shall constitute a day's work. Time to be taken when arriving at garage, at dock or at location where material is to be loaded and upon leaving same. Day shift shall commence at flexible starts between 6:30 a.m. and 8:00 a.m. Lists will be posted before the close of the preceding workday. Afternoon shift shall commence at 4:00 p.m. or 5:00 p.m. Night shift shall commence at 12:00 Midnight or 1:00 a.m. Men starting in the morning and working any part thereof shall be paid a full day's (8 hours) pay. Men ordered to work before 6:30 a.m. are to be paid at the rate of time and one-half (1½). Driver to receive one (1) hour travel time if he finishes work at a different yard.

The work week shall be five (5) days, Monday to Friday, inclusive, except as provided herein. All work beyond eight (8) hours in a day, before the usual starting time, or on Saturday shall be paid for at one-and one-half (1½) times the regular rate. If an Employee is requested by a Management representative to remain at or near the premises in order to be available to start work later than the usual time, then if he starts to work later that day he shall be paid from the regular starting time and if he does not start to work, he shall be paid for the time he is asked to remain on standby.

(A) OFF SHIFT WORK

Any single shift that commences at any hour between 4:00 p.m. to 1:00 a.m. will work eight and one half (8½) continuous hours allowing one half (½) hour for lunch. Payment will be at the straight time rate; nine (9) hours pay for eight (8) hours work, including fringe benefits.

Where the job specifications and/or contract provide for night work, the Employer may work five (5) consecutive eight (8) hour nights, Sunday through Friday.

(B) SATURDAY & SUNDAY

1. Work done on Saturday shall be compensated at the rate of time and one half (1½) at the straight time hourly rate for all hours worked.

2. Work done on Sunday is to be compensated at the rate of two (2) times the straight time hourly rate for all hours worked.

3. In order to work on Saturday or Sunday, Employees must shape the Friday immediately preceding any such Saturday or Sunday. Employees who work the night shift shall not have to shape Friday for Saturday or Sunday work, but must shape on Thursday night's shift in order to qualify for Saturday or Sunday work.

4. No work shall be done on Sundays without prior arrangement with the Union. Any Employer who requires work to be done without such prior arrangement with the Union, shall be required to contribute a sum equivalent to all wages paid for that day to Employees covered by this Agreement, to a charity which shall be designated by the Union, which payment shall be enforceable by the Union or any other Employer party to this Agreement.

-4-

SECTION 3. HOLIDAYS AND BEREAVEMENT LEAVE

The days which are to be observed as holidays shall be as follows: New Year's Day, Martin Luther King Jr. Day, President's Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Election Day (Presidential Election Years Only), Thanksgiving Day, Day After Thanksgiving Day (Non-Presidential Election Years Only), Christmas Day and any holiday called for by the State.

Employees ordered to report to work on any of the following holidays: Columbus Day, President's Day and Election Day (non-Presidential year) shall be paid eight (8) hours pay, at the straight time hourly rate, plus one (I) day's holiday pay. Overtime work on the above holidays shall be paid for at two (2) times the straight time hourly rate.

Employees ordered to work on any of the following seven (7) holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Election Day (Presidential elections only), Thanksgiving Day arid Christmas Day are to be paid eight (8) hours pay at two (2) times the straight time hourly rate, plus one (1) day's holiday pay. Overtime work shall be paid for at the rate of four (4) times the straight time hourly rate.

Each Employee shall receive a day's (8 hours) pay for each of said holidays regardless of the day of the week on which it falls, provided he works at least one (1) full day in the calendar week in which the holiday occurs and, further, that he appears at shape-up on all other working days of that week unless prevented from doing so by a justifiable reason.

No work shall be done on any of the holidays enumerated herein without prior special arrangement with the Union. Any Employer who requires work to be done without such prior special arrangement with the Union, shall be required to contribute a sum, equivalent to all wages paid for that day to Employees covered by this Agreement, to a charity which shall be designated by the Union, which payment shall be enforceable by the Union or any other Employer party to this Agreement.

An Employee shall receive two (2) days off with pay in the event the Employee's spouse, mother, father, sister, brother or child dies.

SECTION 4. SENIORITY

Barn seniority shall prevail. Seniority shall be in accordance with classifications. The Union and the Employer will jointly prepare and maintain lists showing the seniority of all Employees. On lay-offs, the Employee with the least seniority shall be the first laid off, and rehiring will be by the inverse order of lay-off. The Shop Steward shall be the last Employee to be laid off and the first to be re-hired. Seniority shall not be deemed breached if an Employee is re-hired within one (1) year after his lay-off, but if a laid-off Employee fails to return to work within twenty-four (24) hours after receiving notification to report for work his seniority shall be deemed to have been broken. The only types of excuse for failing to report within twenty-four (24) hours shall be ill health or inability to reach the Employer's premises within said period of time. If any barn closes down, the Employer shall assign men from the closed barn or barns to the remaining open barns in the order of-seniority in the barn to which they are assigned.

SECTION 5.  MILITARY SERVICE

Any Employee called for Military Service for any branch of the United States Government shall resume seniority with their former Employer, when discharged from such service.

SECTION 6.  LOADING AND YARD WORK

Chauffeurs shall help to load and unload trucks.  Chauffeurs shall also work in the yard when requested to do so by the Employer, provided all available yardmen are working.  If no driving work is available for one (1) or more chauffeurs at the beginning of the shift, the Employer may offer the opportunity to perform yard work to such chauffeurs in seniority order, and they shall have the option to accept or reject such offer.  If a chauffeur accepts such yard work assignment he shall not make any deliveries that day if a chauffeur more senior than he refused the yard work assignment.

SECTION 7.  DELIVERIES

All deliveries by manufacturers' trucks of plaster boards and bag materials are to be made to dealers' yards only.  No member of this Union shall be required to work with non-union men when making deliveries to dealers' yards.

SECTION 8.  UNION RECOGNITION

The Employer hereby recognizes the Union as the sole and exclusive collective bargaining agent for all Employees within the categories covered by this Agreement.  It shall be a condition of employment that all Employees of the Employer covered by this Agreement who are members of the Union in good standing upon the execution of this Agreement shall remain members in good standing and those who are not then members shall, on the sixtieth (60th) day following the execution of this Agreement, become and remain members in good standing in the Union.  It shall also be a condition of employment that all Employees covered by this Agreement and hired on or after its execution, shall, on the sixtieth (60th) day following the beginning of such employment become and remain members in good standing in the Union.

SECTION 9.  SHOP STEWARD

A Shop Steward shall be appointed by the Union from among the Employees in each barn who, in addition to regular duties, shall see that the conditions of this Agreement are not violated by either the Employer or any Employees and, in case of a slack season, he shall be the last man to be laid-off and under no circumstance shall he be discriminated against.

Persons, including Shop Stewards and Working Teamster Forepersons, are absolutely forbidden and are without any actual or apparent authority to, in any manner, interfere or threaten to interfere with the operations of any person, including Employer signatories — or Employers that are non-signatories — to any collective bargaining agreement with this Local without, prior thereto, receiving express approval for such conduct from the Chief Operating officer of this Local.

Upon a determination by the Union that an Employer has attempted to undermine the conditions established by the Agreement or that Employees have not satisfied their obligations under the Agreement, and that it would be in the interests of the bargaining unit to appoint a Shop Steward from outside the bargaining unit, the Union may appoint such an individual as Shop Steward until it determines that substantial compliance with the conditions in the Agreement has been restored.

An Employee who has been appointed as an On-Site Steward shall maintain his position on the seniority list of the Employer he was employed by at the time of his appointment for the duration of his appointment, provided he returns to his Employer within fifteen (15) working days of the termination of his employment.

SECTION 10. DISCHARGES

Employees may be discharged for just cause, including but not limited to, negligence or inefficiency in duties, intoxication, disorderliness, reckless driving, failure to report regularly for work without sufficient reason, a bad accident record, and deliberate fraud on the Employer or on a customer of the Employer. The policy will be for management to discuss discharge cases with a qualified Union representative before making the discharge effective, except in case of more serious infractions like drunkenness, fraud or extreme disorderliness.

SECTION 11. PROBATIONARY PERIOD

Probationary period for new Employees shall be sixty (60) working days. During such probationary period the Employer shall not make any benefit fund contributions to the Local 282 Trust Funds.

SECTION 12. BUSINESS REPRESENTATIVES

The Employer agrees that any duly authorized Business Representative of the Union shall at all times be permitted to have free access to any place of work under the jurisdiction of the Employer and of conferring with any member therein for the purpose of inspection of membership cards of said Employees or in regard to any matter connected to the terms of this Agreement; but shall not visit the jobs for the purpose of promoting the cause of any other association, whether Employers or Employees.

SECTION 13. ARBITRATION

Should any dispute arise between the Employer and the Union concerning the application or interpretation of any provision of this Agreement or concerning any term or condition of employment under this Agreement, the representatives of the Employer and the Union shall attempt to adjust the controversy between themselves. In the event that they are unable to adjust the same, the dispute shall be submitted to one of the impartial arbitrators designated below.

Any employee, whether on the seniority list or not, who wishes to make a claim due to an alleged infraction of rules in reference to the Union Agreement, must first be obligated to shape either the home barn of the Employer or the job site by 8:00 a.m. The Employee must make himself known to supervisory personnel on the job. An employee who is not on the seniority list

of the employer must remain on the job site and be available to work for at least the first four (4) hours of the day. The employer must receive notification of any such claim by an individual employee within 30 days of the alleged violation. All claims which do not meet these requirements shall be declared null and void.

If the Employer agrees to pay the claim, the claimant must remain on the job site for the remainder of the day.

The parties agree that they will not go to Court to prevent any arbitration.

The parties agree that they will not go to Court to vacate or appeal any arbitration involving an individual member (e.g., discharge, suspension, wage claim).

List of Impartial Arbitrators:

RICHARD ADELMAN, HOWARD EDELMAN

JACK TILLEM, RALPH BERGER

In each matter submitted to arbitration the Employer Representative and the Union shall select the Arbitrator by lot.

In any particular situation where an Arbitrator is to be selected, the parties involved in the selection process may agree upon any alternate procedure for such selection.

The list of impartial Arbitrators may be expanded or contracted and substitutions therein may be made upon agreement of the Union and the Employer.

It is understood that the costs for any arbitration proceeding instituted pursuant to the terms of this Agreement shall be shared equally by the parties thereto. Should either party to said arbitration refuse to participate in the selection procedure set forth in this Agreement, within ten (10) working days after notice thereof by the other party, then the non-participating party shall accept the designation of the Arbitrator selected by the participating party and agrees to take part in the arbitration and agrees to be bound by the decision of the selected Arbitrator.

If the dispute concerns the discharge of an Employee, the discharged Employee shall have the right to be present at the proceedings. If it is found that he has been wrongfully discharged, he may be reinstated with back pay for time lost.

<u>SECTION 14. FEDERAL AND STATE LAWS</u>

The Employers do hereby agree to comply fully with all the laws pertaining to Social Security, Unemployment Insurance and Workers' Compensation.

SECTION 15. WELFARE, PENSION AND ANNUITY TRUST FUNDS; JOB TRAINING TRUST FUNDS

### TIER 1

(a) <u>Welfare</u>. Between July 1, 2014 and June 30, 2015, the Employer shall contribute Fourteen Dollars and Twenty Cents ($14.20) to the Local 282 Welfare Trust Fund ("Welfare Fund") for each hour worked under this Agreement during the regular work-week (Monday-Friday), up to a maximum of forty (40) hours. Effective July 1, 2015, the aforesaid contribution rate of $14.20 shall be increased to Fifteen Dollars and Zero Cents ($15.00). Effective July 1, 2016, the aforesaid contribution rate of $15.00 shall be increased to Fifteen Dollars and Seventy Cents ($15.70). Effective July 1, 2017, the aforesaid contribution rate of $15.70 shall be increased to Sixteen Dollars and Thirty-Five Cents ($16.35).

(b) <u>Pension</u>. For the entire term of this Agreement, the Employer shall contribute Nine Dollars and Sixty-Nine Cents ($9.69) to the Local 282 Pension Trust Fund ("Pension Fund") for each hour worked under this Agreement during the regular work-week (Monday-Friday), up to a maximum of forty (40) hours.

(c) Contributions to the Welfare and/or Pension Fund for work performed on Saturday or Sunday will be a maximum eight (8) hours for each day. Hours worked shall include paid holiday hours.

(d) <u>Annuity</u>. Between July 1, 2014 and June 30, 2015, the Employer shall contribute Four Dollars and Thirty Cents ($4.30) to the Local 282 Annuity Trust Fund ("Annuity Fund") for each hour paid at the straight time rate. Effective July 1, 2015, the aforesaid contribution rate of $4.30 shall be increased to Four Dollars and Eighty Cents ($4.80). Effective July 1, 2016, the aforesaid contribution rate of $4.80 shall be increased to Five Dollars and Forty Cents ($5.40). Effective July 1, 2017, the aforesaid contribution rate of $5.40 shall be increased to Six Dollars and Zero Cents ($6.00). For the entire duration of this Agreement, for each hour paid at a premium rate, the Employer will make the contribution to the Annuity Fund at the applicable premium rate.

(e) <u>Vacation-Sick Leave Fund</u>. Between July 1, 2014 and June 30, 2015, the Employer shall contribute Three Dollars ($3.00) per hour for each hour worked under this Agreement to the Local 282 Vacation-Sick Leave Trust Funds. Effective July 1, 2015, the aforesaid contribution rate of $3.00 shall be increased to Three Dollars and Ten Cents ($3.10). Effective July 1, 2016, the aforesaid contribution rate of $3.10 shall be increased to Three Dollars and Fifteen Cents ($3.15). Effective July 1, 2017, the aforesaid contribution rate of $3.15 shall be increased to Three Dollars and Twenty-Three Cents ($3.23). Employees shall retain the right to use any unused vacation days that they accrued prior to June 30, 2005, and shall be paid for such days at the wage rate in effect at the time that any such days are used.

### TIER 2

(a) <u>Welfare</u>. Between July 1, 2014 and June 30, 2015, the Employer shall contribute Eleven Dollars and Ninety Cents ($11.90) to the Local 282 Welfare Trust Fund ("Welfare Fund") for each hour worked under this Agreement during the regular work-week (Monday-

Friday), up to a maximum of forty (40) hours. Effective July 1, 2015, the aforesaid contribution rate of $11.90 shall be increased to Twelve Dollars and Fifty ($12.50). Effective July 1, 2016, the aforesaid contribution rate of $12.50 shall be increased to Thirteen Dollars and Twenty ($13.20). Effective July 1, 2017, the aforesaid contribution rate of $13.20 shall be increased to Thirteen Dollars and Eighty Cents ($13.80).

(b) Pension. For the entire term of this Agreement, the Employer shall contribute Eight Dollars and Eighty-Seven Cents ($8.87) to the Local 282 Pension Trust Fund ("Pension Fund") for each hour worked under this Agreement during the regular work-week (Monday-Friday), up to a maximum of forty (40) hours.

(c) Contributions to the Welfare and/or Pension Fund for work performed on Saturday or Sunday will be a maximum eight (8) hours for each day. Hours worked shall include paid holiday hours.

(d) Annuity. Between July 1, 2014 and June 30, 2015, the Employer shall contribute One Dollar and Seventy-Nine and One-Half Cents ($1.795) to the Local 282 Annuity Trust Fund ("Annuity Fund") for each hour paid at the straight time rate. Effective July 1, 2015, the aforesaid contribution rate of $1.795 shall be increased to Two Dollars and Twenty-Nine and One-Half Cents ($2.295). Effective July 1, 2016, the aforesaid contribution rate of $2.295 shall be increased to Two Dollars and Sixty-Nine and One-Half Cents ($2.695). Effective July 1, 2017, the aforesaid contribution rate of $2.695 shall be increased to Three Dollars and Nine and One-Half Cents ($3.095). For the entire duration of this Agreement, for each hour paid at a premium rate, the Employer will make the contribution to the Annuity Fund at the applicable premium rate.

(e) Vacation-Sick Leave Fund. For the entire term of this Agreement, the Employer shall contribute the sum of Two dollars and Eighty Cents ($2.80) per hour for each hour worked under this Agreement to the Local 282 Vacation-Sick Leave Trust Funds. Employees shall retain the right to use any unused vacation days that they accrued prior to June 30, 2005, and shall be paid for such days at the wage rate in effect at the time that any such days are used.

## BOTH TIERS

(a) Job Training. The Employer and the Union agree to establish a Job-Training Trust Fund ("Job Training Fund"), in accordance with Section 302 of the Taft-Hartley Act, which shall be funded by the payment by the Employer for every hour paid, up to a maximum of forty (40) hours per Employee per week, at the rate of Ten Cents ($.10) per hour. Nothing herein contained is intended, nor shall it be construed, to prohibit the Employer from continuing the practice of hiring from any source or from training its own drivers at its own cost and expense.

(b) Payments to the Welfare, Pension, Annuity, Vacation and Sick Leave and Job Training Funds shall be made for all pay periods ending within a calendar month forty-five (45) days after the close of that calendar month. Payment forms shall be furnished by the Funds prior to the fifth (5th) day of each month.

An Employer who fails to make payment to the Welfare, Pension, Annuity, Vacation and Sick Leave or Job Training Funds, Dues or Building Fund Check-off when due, shall be subject to all the remedies set forth in Section 502(g)(2) of ERISA.

(c) The Trust Agreement governing the Local 282 Welfare, Pension, Annuity, Vacation and Sick Leave and Job Training Trust Funds, as it shall be amended from time to time, is hereby, made a part of this Agreement with the same force and effect as if fully incorporated herein, and the Employer and the Union hereby agree that upon the execution of this Agreement they shall be deemed parties to said Trust Agreements. Failure of the Employer to make payments of said contributions promptly when due shall authorize the Union to take immediate economic action against the Employer, without waiting for arbitration, notwithstanding any other provisions in this Agreement. Before any action is taken by the Union or its members, the Employer shall be entitled to notice in writing by certified or registered mail, return receipt requested, giving him an opportunity to make his payments within five (5) days and if he fails to make the payments then the foregoing procedure may be followed by the Union or the Employees. Those Employees who would have worked but for the economic action shall be paid their wages and fringes by the Employer.

SECTION 16. SURETY BOND

(a) The Employer shall provide a Surety Bond to guarantee payment of contributions to the Welfare, Pension, Annuity, Vacation-Sick Leave Trust Funds and Job Training Funds and dues to the Union as provided for in this Agreement. Said Surety Bond shall be in the following amounts:

| | |
|---|---|
| an Employer employing 1 to 5 Employees | $10,000 |
| an Employer employing 6 to 10 Employees | $15,000 |
| an Employer employing 11 to 15 Employees | $20,000 |
| an Employer employing 16 to 20 Employees | $25,000 |
| an Employer employing 21 to 25 Employees | $50,000 |
| an Employer employing 26 to 50 Employees | $100,000 |
| an Employer employing 51 and over Employees | $150,000 |

Employees referred to herein shall include all persons on the Employer's seniority list.

In lieu of a bond to secure payment of contributions to the Welfare, Pension, Annuity, Vacation-Sick Leave Trust Funds and Job Training Funds, and Dues to the Union, the Employer may, if and to the extent that the Trustees of the Welfare, Pension, Annuity, Vacation-Sick Leave Trust Funds and Job Training Funds so authorize in writing:

(1) Deposit cash, in an amount determined pursuant to paragraph (a) of this Section, in escrow with a financial institution approved by the Trustees to be held pursuant to the term of an escrow agreement authorized by the Trustees; or

(2) Deliver to the Trustees the personal guarantee, with such terms and conditions as may be required by the Trustees in their sole discretion, of

-11-

one (1) or more of the duly appointed officers of the Employer pursuant to which each such officer will promise to pay and to hold himself personally liable to pay to the Trustees upon demand any contributions which the Employer does not timely pay to the Welfare, Pension, Annuity, Vacation-Sick Leave and Job Training Funds.

## SECTION 17. IN COURT

An Employee shall be paid at his regular rate for time spent appearing as a witness in court litigation involving his Employer, and if he does not work that day, then-he shall receive a full day's (8 hours) pay.

## SECTION 18. LUNCH HOURS

Each Employee shall be allowed one half-hour (½ hour) for lunch between the hours of 11:30 a.m. and 1:30 p.m., and at equivalent times for other shifts. If an Employee is deprived, because of work, of his lunch hour or any part thereof he shall receive time and one-half (1½%) for the part of the lunch hour from which he was deprived.

## SECTION 19. TRANSPORTATION – BREAKDOWNS

When a truck is to be brought to the shop for maintenance, the Employer shall be so notified before the end of the preceding work day, unless it is for reasons that arise after the end of the Employee's work day. When a truck breaks down or requires emergency repairs, the Employer will provide transportation for the Employee back to his point of origin and the Employee's time will be computed to the time of arrival at his' point of origin of that day, provided the Employee notifies the Employer's office promptly of the breakdown. Yardmen shall be paid back to the point of origin, same as a chauffeur. A driver is to be transported and paid full time if he finishes work in a different yard.

An Employee shall not be required to change over from one piece of equipment to another piece of equipment more than once for the purpose of making deliveries during any day, except by reasons of breakdowns. In the event of such change-over, the truck originally used shall not thereafter be used during that regular shift, and such change-over shall then be to an empty truck. This shall not prohibit the transporting of equipment by a driver who is assigned only to such work for such day; nor shall it prohibit moving equipment to a different location at the same dock.

## SECTION 20. LEAVE OF ABSENCE

(a)   Leaves of absence without pay may be granted by the Employer during the period from December 15th to March 15th.

(b)   Leaves of absence or lay-offs during periods of extended lack of work may be granted by agreement of Employer and Union.

(c)   When regular employment is not available for an Employee, he shall be laid off for lack of work. During such lay-off, the Employee shall retain seniority without the need to

shape regularly. When regular employment becomes available, the Employee on lay-off shall be notified by the Employer to return to work by certified mail, return receipt requested, to his last known address. To preserve his seniority, an Employee must report to work within three (3) working days after receipt of such letter.

SECTION 21. PICK-UP TRUCKS – SUBURBANS

    (a)    All pick-up trucks and suburbans must be manned by Employees covered by this Agreement who will also load and unload the vehicles they drive except that the following may drive and load and unload the vehicles they drive:

    (1)    Maintenance man, with normal equipment.

    (2)    Field engineer, with normal equipment

    (3)    Survey party, with surveyors equipment.

    (4)    Superintendent and Assistant Superintendent, broom swept.

    (5)    Upper echelon management personnel, broom swept.

    (6)    Watchmen, broom swept.

    (7)    Timekeeper, broom swept.

    (8)    Checker, broom swept.

    (9)    Cost engineer, broom swept.

    (10)    Foreman may drive his crew, with picks, shovels, crowbars, sledge hammers, hand tools and small chain saws, on the job site only.

    (b)    Not as a regular practice, but as special occasion requires it, a foreman may drive a pick-up on a job site to transport a Jack hammer, vibrator or hand generator.

    (c)    Where there is a small, one-stop, separate contract job, to be completed in no more than two (2) work days where a job yard is not warranted, it is permissible for a fore- man to drive a pick-up to make one drop in the morning and one pick-up in the evening with a crew and the following: picks, shovels, crowbars, sledge hammers, hand tools, small chain saws, jackhammer, vibrator and generator.

    (d)    PROVIDED, HOWEVER, that because of possible difficulty in ensuring uniform enforcement of these provisions, where an Employer has no hauling equipment larger than pick-ups none of the above exceptions apply.

    (e)    Each morning the Shop Steward shall be provided with a list of jobs for that day.

SECTION 22.  PROTECTION OF RIGHTS

(a) <u>Struck Work</u>.  It shall not be a violation of the Agreement nor cause for discharge, nor shall such Employee be permanently replaced, if he or she refuses to enter upon any property involved in a primary labor dispute, or refuses to go through or work behind any primary picket line, including the primary picket line of Unions party to this Agreement, and including primary picket lines at the Employer's places of business.

(b) <u>Struck Goods</u>.  It shall not be a violation of this Agreement and it shall not be cause for discharge or disciplinary action, nor shall such Employee be permanently replaced in the event an Employee refuses to perform any service which his Employer undertakes to perform as an ally of an Employer or person whose Employees are on strike, and which ser- vice, but for such strikes, would be performed by the Employees of the Employer or person on strike.

SECTION 23.  EMPLOYERS HIRING TRUCKS

The Employer shall not hire trucks unless the trucks of the Employer which are in good operating condition and which are of the type needed for the particular work are also in operation.  It is understood that the established practice of hiring specialized equipment for certain purposes may be continued, however.  When trucks are hired, the Employer shall hire only from others whose drivers receive wages, working conditions, benefits and standards of employment at least as favorable as those contained herein.

(a) The Employer shall not hire or start outside trucks or equipment unless all his available, suitable trucks and equipment are in use.

(b) <u>Daily Hired Truck List</u>.  Each morning the Employer shall provide the Shop Steward with a list of trucks hired for that day.  Said list shall be posted by the Shop Steward.

In the event economic conditions are such that the trucks owned as of June 30, 1984 or the date of the first collective bargaining agreement (whichever is applicable) are not working for three (3) continuous months and during said three (3) months the Employer has not hired any outside trucks, it shall be considered that the trucks are in excess due to a failing economy and therefore the Employer shall be free to sell such idle trucks.  Time during which a truck is not working during inclement weather shall not be counted nor shall the periods of December 15th thru March 15th be counted towards said three (3) month period.

The Employer will not participate in any fashion, scheme, or plan (either directly or indirectly through relatives, device business associates or Employees) of this Agreement.

SECTION 24.  OUT OF TOWN EXPENSES

Employees who are sent out of town and remain overnight shall be paid their necessary expenses while traveling and for meals and sleeping accommodations.

-14-

SECTION 25. HIGH RISE WORK

If the Employer, in any guise, engages in any work as a High-Rise Contractor, he shall be covered for such work by the provisions of the Local 282 High Rise Agreement, which are incorporated herein by reference. This shall not apply to Employers, deliveries of building materials (not including fabricated and structural steel) to building sites. Fabricated and structural steel deliveries shall be covered by past practice.

SECTION 26. SUCCESSORS

This Agreement shall be binding upon the parties hereto, their successors, administrators, executors and assigns. In the event the entire operation or any part thereof is sold, leased, transferred or taken over by sale, transfer, lease, assignment, receivership, or bankruptcy proceedings, (said purchaser, lessee, transferee, assignee, administrator, executor, receiver, hereafter-referred to as "successor"), the Employees of the Employer affected shall be employed by the successor and such operation or part thereof shall continue to be subject to the terms and conditions of this Agreement for the life thereof. If the successor does not have a collective bargaining agreement with Local 282 at the time of the-transaction, the Employees employed by the successor, pursuant to the terms of this section, shall be maintained by the successor as a separate collective bargaining unit and shall not be integrated with any other Employees, whether or not the successor's Employees are represented by any other labor organization. The Employer shall give notice of the existence of this Agreement to any potential successor. Such notice shall be in writing, with a copy to the Union, prior to the time the Employer executes a contract or transaction as herein described with any successor. The Union shall also be advised of the exact nature of the transaction, not including financial details. No transaction described herein shall become effective unless and until the Union has been notified in writing by the Employer and the successor that the successor has agreed to assume the obligations of this Agreement.

SECTION 27. GOVERNMENTAL APPROVAL

The Employers and the Union agree that they shall jointly submit this Agreement to the appropriate government agency requesting approval, if submission is required, and that they will exercise their best good faith efforts to secure approval.

SECTION 28. NON-DISCRIMINATION

The Employer and the Union agree there will be no discrimination against any Employee or applicant for employment, with respect to race, creed, color, national origin, sex, age, handicap, marital status, sexual orientation or affectional preference in all employment decision including but not limited to recruitment, hiring, compensation, training and apprenticeship, promotion, upgrading, demotion, downgrading, transfer, lay-off and termination, and all other terms and conditions of employment, except as provided by law.

SECTION 29. POLYGRAPH

No Employee shall be required to take any form of lie detector test as a condition of employment.

SECTION 30. D.R.I.V.E.

The Employer will recognize a lawful, voluntary authorization for the DRIVE deduction from wages, to be transmitted by the Local Union to such organization as the Local Union may lawfully designate. The DRIVE deduction shall be made from the Employees wages only after a duly signed authorization card has been filled out. The Employer further agrees to forward said contributions to D.R.I.V.E., International Brotherhood of Teamsters, 25 Louisiana Avenue, Washington, DC 20001.

SECTION 31. NAME ON VEHICLE

Any truck or vehic1esperforming bargaining unit work, or owned or operated by or on behalf of the Employer must have the name of the owner of the truck prominently displayed thereon.

SECTION 32. FINES – VIOLATIONS

The Employer shall pay or reimburse the Employee in full for all fines which result from overloading, spilling or material and any condition of the vehicle, its accessories, equipment or the maintenance of the same, the primary responsibility for such matters being assumed by the Employer, providing the Employee had reported condition to Employer.

The Employer shall not discharge or discipline an Employee or refuse to hire an Employee on the basis of violations or tickets received by the Employee due to Employer acts.

Whenever a Driver is fined or penalized because of a spill beyond the control of the Employee, overload (including maximum weight or load distribution) or faulty equipment, the Employer shall pay all costs and damages assessed against the Employee, including bail bonds, legal fees, fines, and any lost earning opportunity that the Employee might suffer. All fines must be paid by the Employer on or before the date returnable, and the driver must be furnished with a receipt evidencing payment of such fine by the Employer. The Employer may exercise its right to contest the citation, and shall indemnify the Employee for any costs or damages resulting from its decision to contest the citation.

If the Employer is required to appear in court, outside of normal working hours, for the above referenced causes, he shall be paid eight (8) hours pay at the straight time rate, without fringes. It is the responsibility of the Employee to turn over to the job supervisor any citation within twenty-four (24) hours of receipt. Failure to turn in a citation will relieve the Employer of any responsibility to pay for court appearance, or any other costs. The job supervisor shall provide an appropriate written receipt to the Employee.

SECTION 33. MATERNITY LEAVE

A pregnant Employee shall be permitted to continue working so long as she is capable of performing satisfactorily and medically permitted to do so. The Employer reserves the right to request the Employee provide written statements from her doctor as to her continued employability during the last trimester of her pregnancy. An Employee may elect to begin maternity leave when medically required to do so or at the end of the seventh (7th) month of

pregnancy, whichever is earlier, and shall return from such leave as soon as her physical condition permits, but no later than sixty (60) days after the date of delivery. If the Employee's medical condition prohibits a return to employment by such sixtieth day, and satisfactory proof of such fact has been provided to the Employer, the continued absence of the Employee will be treated as any other type of extended illness would be treated, for leave purposes, by the Employer.

SECTION 34. EFFECTIVE DATES

This Agreement when signed becomes effective on the 1st day of July, 2014 and shall remain in full force and effect through June 30, 2018.

SECTION 35. DOUBLE BREASTED OPERATION

The Employer hereby agrees that in order to protect and preserve the work opportunities of the Employees covered under this Agreement, it shall not establish or participate in a double-breasted operation within the geographical jurisdiction of Local 282, namely the City of New York, Nassau and Suffolk Counties, or outside said area if the work is to be performed within said area.

SECTION 36. SCOPE OF AGREEMENT

No provision of this Agreement is intended to create any obligation on the part of the Union which is enforceable against the Union by individual Employees.

SECTION 37. DRUG TESTING CLAUSE

A Labor Management Cooperation Committee shall be established the following purposes:

    (a)    To improve communication between representatives of Labor and Management

    (b)    To provide a forum for discussion of problems of the industry.

    (c)    To assist drivers and employers in resolving problems of mutual concern that li outside the normal grievance and to resolve minor problems before they become formal grievances.

    (d)    To study and explore ways of eliminating potential problems which reduce the competitiveness and inhibit the economic development of the industry. This committee is no intended to circumvent, replace or modify the grievance procedure.

SECTION 38. DRUG TESTING CLAUSE

The drivers covered by this collective bargaining agreement shall fully comply with t drug testing provisions as established by all Department of Transportation regulations and sh be subject to random testing.

## SECTION 39.  SIGNATURES

This agreement must be countersigned by either the President or the Secretary-Treasurer of the Union and is not valid unless so countersigned.