UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
THOMAS GESUALDI, LOUIS BISIGNANO,
MICHAEL O'TOOLE, MICHAEL C. BOURGAL,
DARIN JEFFERS, FRANK H. FINKEL, MARC
HERBST, THOMAS CORBETT, ROBERT G.
WESSELS and ROCCO TOMASSETTI, SR., as
Trustees and Fiduciaries of the Local 282 Welfare
Trust Fund, the Local 282 Pension Trust Fund, the
Local 282 Annuity Trust Fund, the Local 282 Job
Training Fund, and the Local 282 Vacation and Sick
Leave Trust Fund,

            Plaintiffs,

    vs.

GWA MECHANICAL INC.,

            Defendant.
-----------------------------------------------------------------X

Civil Action No.:
2:24-cv-02049-SIL

## DECLARATION OF KEN JONES

I, Ken Jones, under penalty of perjury and in lieu of an affidavit as permitted by 28 U.S.C. § 1746, declare as follows:

  1.  I am currently a supervisor at Citrin Cooperman Advisors LLC ("CCA")[1], and was formerly a supervisor at the accounting firm Wagner & Zwerman LLP ("W&Z").

  2.  During the time that I was employed at W&Z, W&Z performed agreed-upon procedures engagements for the Local 282 Trust Funds (the "Funds").

---

[1] Citrin Cooperman" is the brand under which Citrin Cooperman & Company, LLP, a licensed independent CPA firm, and Citrin Cooperman Advisors LLC serve clients' business needs. The two firms operate as separate legal entities in an alternative practice structure.

3. I received an associate degree in accounting from Nassau Community College in 1975 and a bachelor of science degree in accounting from St. John's University in 1977.

4. Since obtaining my accounting degrees, I have worked for six accounting firms and one labor union.

5. I began my employment at CCA in November 2023.

6. Prior to my current employment, I worked at Gettry Marcus CPA, P.C. between November 2021 and October 2023, W&Z between April 2006 and October 2021, DePietto, Blum, Falzarano & Co., LLP between September 2003 and April 2006, Abrams, Herde and Merkel LLP between July 1993 and September 2003, and Coltin, Baddish & Shapiro LLP between March 1986 and May 1993. Each of these entities are or were accounting firms.

7. During my employment at W&Z, I performed and/or supervised the performance of agreed-upon procedures engagements for employee benefit funds.

Background

8. W&Z performed agreed-upon procedures engagements (commonly referred to as "audits" by the Fund Office[2]) on behalf of plaintiffs, the Trustees of the Local 282 Trust Funds.

9. I am familiar with the Funds' agreed-upon procedures engagements performed by W&Z.

10. An agreed-upon procedures engagement is one in which an accounting firm is engaged by a client to issue a report of findings based on specific procedures performed on a certain subject matter. W&Z performed agreed-upon procedures engagements with respect to the

---

[2] It should be noted that an agreed-upon procedures engagement is not an audit. An agreed-upon procedures engagement is one in which a practitioner is engaged by a client to issue a report of findings based on specific procedures performed on subject matter.

2

10065246.2

Local 282 Funds in order to assist the Funds' Trustees in determining whether employers contributed to the Funds in accordance with the applicable collective bargaining agreements.

11. The Trustees engaged W&Z to perform an agreed-upon procedures engagement with respect to GWA Mechanical Inc. ("GWA") in order to determine whether GWA contributed to the Funds in accordance with the applicable collective bargaining agreements and, if not, to determine the amount of the delinquencies.

12. I am aware that the Funds' Restated Agreement and Declaration of Trust (the "Trust Agreement") requires the following documentation be produced by GWA for an agreed-upon procedures engagement:

    (a) Payroll records, including payroll journals, timecards, print-outs, ledgers or any other form of payroll record;

    (b) Payroll tax records submitted to federal and state governments, including Forms 941, NYS-45ATT, W-2's;

    (c) Complete business income tax returns;

    (d) Cash disbursements records;

    (e) General ledgers;

    (f) Records relating to the hiring of trucks, including equipment vouchers, invoices and payment records; and

    (g) Any other records specifically requested by the Funds' accountants, including the classification of Employees, their social security numbers, and the amount of wages paid and hours worked.

13. Prior to performing the agreed-upon procedures engagement, the Fund Office advised W&Z that GWA was bound to the Building Material Freight Suppliers Agreement with Local 282 for the period commencing May 1, 2018 (the "CBA").

14. I am familiar with the terms of the CBA as related to Employer contributions. Specifically, the CBA requires GWA to contribute to the Funds at specified hourly

3

rates on behalf of their truck drivers based on either "hours paid" or "hours worked," with certain caps and premium rate requirements specified therein.

   15. W&Z performed the agreed-upon procedures for the period from September 1, 2018 through October 1, 2019 (AUP #20-1143).

   16. I performed work on this agreed-upon procedures engagement, supervised the work of other W&Z personnel on this agreed-upon procedures engagement, and oversaw the preparation of the independent accountant's report on applying agreed-upon procedures. A copy of AUP #20-1143 is attached as Exhibit A.[3]

AUP #20-1143

   17. On February 5, 2020, W&Z began performing the agreed-upon procedures.

   18. GWA representative Paula Pope provided us with the necessary documents and information.

   19. Specifically, we utilized the following documents regarding GWA:

- Payroll Journals;
- Quarterly Payroll Tax Returns (Form 941 and NYS-45 ATT's);
- General Ledgers; and
- Form 1120 (Corporate Tax Returns).

*See* Ex. A (AUP #20-1143), at 3 (worksheet page).

---

[3] Under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), P.L. 104-91, which became effective April 14, 2003, health plans (which include the Welfare Fund) and their "business associates" (which include auditors and plaintiffs' counsel) are prohibited from disclosing "protected health information" ("PHI") regarding a health fund participant. Given this legislation and other confidentiality and privacy concerns, information identifying the participants involved here (*i.e.*, their last names and social security numbers) which is not necessary for determination of this motion has been redacted in the agreed-upon procedures report annexed hereto as Exhibit A.

4

10065246.2

20. We also inspected all hours reported on remittance reports submitted by or on behalf of GWA to the Funds based on worksheets provided to us by the Fund Office.

21. On March 1, 2021, W&Z issued AUP #20-1143 reflecting our findings. *See* Ex. A.

22. AUP #20-1143 reflects that GWA owes $3,514.01 in contributions for the period from September 1, 2018 through October 1, 2019. *See* Ex. A (AUP #20-1143), at 1-2.

23. GWA's delinquencies, as reflected in AUP #20-1143, are due to GWA's failure to contribute for hours worked by or paid to employees on GWA's payroll.

24. Once W&Z recalculated the payroll hours, we reconciled the payroll records with GWA's State Quarterly payroll tax returns and its Federal 941 Quarterly payroll tax returns.

25. W&Z then inspected and recalculated the weekly hours worked, wage rates, and gross payroll for each driver identified on the payroll and entered this information into a spreadsheet.

26. W&Z compared the number of hours that appeared on GWA's payroll records to worksheets that the Funds provided us reflecting the number of hours that GWA reported to the Funds on its remittance reports for the period, and noted that there were instances in which GWA did not report all of its drivers' hours, as reflected on its payroll records, to the Funds in accordance with the contribution requirements of the CBA.

27. GWA presented no evidence that it contributed to other benefit funds for the hours it failed to contribute to the Funds.

28. W&Z then applied the applicable hourly contribution rate to recalculate the amount owed. The cover pages for AUP #20-1143 reflect the calculation of the total number of

hours for each Fund for which corresponding contributions were not paid multiplied by the applicable hourly contribution rate. *See* Ex. A (AUP #20-1143), at 1-2.

29. AUP #20-1143 includes "Worksheets" broken down by each of the five Funds. There are Worksheets for each driver, and each worksheet includes four columns per Fund: (1) "Actual" — representing the number of hours actually worked by or paid to, as applicable per Fund, each driver as reflected on GWA's payroll records, (2) "Reported" – representing the number of hours that GWA reported to the Funds on the remittance reports that it submitted to the Funds, and (3) "Diff." — representing the difference between the number of actual hours (*i.e.*, the number of hours on payroll) and the number of reported hours. *See, e.g.*, Ex. A (AUP #20-1143), Worksheet, at 6-7 (redacted to exclude the driver's name).

Interest for AUP #20-1143

30. It is my understanding that for the period covered by AUP #20-1143, the Trust Agreement states that interest begins to accrue at the rate of 1½ percent per month (18% per year).

31. Interest was calculated by (a) taking 18% of each delinquency, (b) dividing that number by 365 days to determine a daily interest rate, and (c) multiplying that number by the number of days between the date in which the contributions were due and February 24, 2021. Interest is not compounded but instead is simple interest.

32. The amount of interest due on the delinquencies identified on AUP #20-1143 through February 24, 2021 is $1,028.01. *See* Ex. A (AUP #20-1143), at 1-2.

33. In addition, interest continues to accrue from February 25, 2021 until the date of payment.

34. It is my understanding that Michael S. Adler details interest calculations in his declaration from February 25, 2021 to date.

6

10065246.2

Fees for AUP #20-1143

      35.     W&Z charged the Funds $1,353.93 in fees for completing AUP #20-1143.

      36.     The individuals that performed work on AUP #20-1143 were partner Vincent Preto ("VP"), myself ("KJ"), staff employee Gary Cheung ("GC"), staff employee Bistra Zwerman ("BZ") and staff employee Trish Keller ("TK"). Attached as Exhibit B is spreadsheet detailing the hours expended, and corresponding amounts charged.

I declare under penalty of perjury that to the best of my knowledge the foregoing is true and correct.

Dated: June 5, 2024
Woodbury, New York

_____
Ken Jones

10065246.2