UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

| | | |
|---|---|---|
| THOMAS GESUALDI, LOUIS BISIGNANO, MICHAEL O'TOOLE, MICHAEL C. BOURGAL, DARIN JEFFERS, FRANK H. FINKEL, MARC HERBST, THOMAS CORBETT, ROBERT G. WESSELS and ROCCO TOMASSETTI, SR., as Trustees and Fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Fund, and the Local 282 Vacation and Sick Leave Trust Fund, | : : : : : : : : : : | Civil Action No.: 2:24-cv-02049-SIL |
| Plaintiffs, | : : | |
| vs. | : : | |
| GWA MECHANICAL INC., | : : | |
| Defendant. | : : | |

---------------------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR DEFAULT JUDGMENT**



Michael S. Adler
COHEN, WEISS AND SIMON LLP
909 Third Avenue, 12th Floor
New York, New York 10022
Telephone:    (212) 563-4100
Facsimile:    (212) 695-5436

*Counsel for Plaintiffs*


Dated:  June 7, 2024


10068095.1

## **TABLE OF CONTENTS**

Page

STATEMENT OF FACTS ................................................................................................. 1

    The Parties and Collective Bargaining and Trust Agreement ............................................ 1

ARGUMENT .................................................................................................................... 3

I.     THE TRUSTEES ARE ENTITLED TO A DEFAULT JUDGMENT .............................. 3

II.    GWA IS BOUND BY THE TERMS OF THE TRUST AND COLLECTIVE
       BARGAINING AGREEMENTS ................................................................................ 4

III.   GWA'S ADMITTED FAILURE TO MAKE THE CONTRIBUTIONS OWING
       CONSTITUTES A VIOLATION OF SECTION 515 OF ERISA .................................. 5

IV.   THE TRUSTEES ARE ENTITLED TO DAMAGES PURSUANT TO SECTION
       502(g)(2) OF ERISA AND THE TRUST AGREEMENT ............................................. 5

       A.    Contributions ........................................................................................ 6

             1.    The Agreed-Upon Procedures Engagement (Audit) .................................. 6

             2.    Estimated Contributions ......................................................................... 8

             3.    Late-Paid Contributions ......................................................................... 9

       B.    Interest .................................................................................................. 9

       C.    Liquidated Damages .............................................................................. 9

       D.    Audit Fees ............................................................................................. 9

       E.    Attorney's Fees and Costs ..................................................................... 10

V.     THE TRUSTEES ARE ENTITLED TO AN ORDER REQUIRING THE
       COMPANY TO SUBMIT ALL OUTSTANDING REMITTANCE REPORTS ........... 14

VI.   NOTWITHSTANDING THE AWARD OF DAMAGES FOR THE
       ESTIMATED AUDIT, THE TRUSTEES ARE ENTITLED TO AN ORDER
       REQUIRING GWA TO SUBMIT TO AUDIT .......................................................... 14

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
    522 F.3d 182 (2d Cir. 2008)....................................................................................11

*Au Bon Pain Corp. v. Artect, Inc*.,
    653 F.2d 61 (2d Cir. 1981)........................................................................................4

*Benson v. Brower's Moving & Storage, Inc.*,
    726 F.Supp. 31 (E.D.N.Y. 1989) *aff'd* 907 F.2d 310 (2d Cir. 1990).......................5

*Cent. States, Se. and Sw. Areas Pension Fund v. Cent. Transp., Inc.*,
    472 U.S. 559 (1985)...................................................................................................5

*Cent. States, Se. and Sw. Areas Pension Fund v. O'Brien & NYE Cartage Co.*,
    06 Civ. 4988, 2007 WL 625430 (N.D. Ill. Feb. 22, 2007)........................................4

*Ferrara v. Inter-City Mech. Corp.*,
    Report.......................................................................................................................12

*Ferrara v. Nexus Mech.*,
    Decision & Order, No. 11 Civ. 2774 (ERK) (SMG) Dkt. No. 12 (E.D.N.Y.
    Mar. 13, 2012)..........................................................................................................13

*Ferrara v. Northwest Construction and Excavating Corp.*,
    Memorandum Decision and Order, 10 Civ. 01277 (BMC) Dkt. No. 26
    (E.D.N.Y. Sept. 30, 2010)........................................................................................13

*Finkel v. Romanowicz*,
    577 F.3d 79 (2d Cir. 2009).........................................................................................4

*Fuchs v. Tara General Contracting, Inc.*,
    No. 06-CV-1282 (ETB) 2009 WL 2922840 (E.D.N.Y. Sept. 8, 2009) .....................7

*Gesualdi v. Cirillo*,
    No. 09-CV-4570 (KAM)(JMA) 2011 WL 666196 (E.D.N.Y. Jan. 3, 2011) ............8

*Gesualdi v. Fortunata Carting Inc.*,
    5 F. Supp. 3d 262 (E.D.N.Y. 2014) ..........................................................................7

*Gesualdi v. Innovative Disposal Solutions*,
    No. 09 Civ. 820(ADS)(ARL) 2011 WL 1158444 (E.D.N.Y. Jan. 18, 2011) ......5, 12

*Gesualdi v. MMK Trucking, Inc.*,
    No. 09 Civ. 1484(SLT)(AKT) 2010 WL 3619569 (E.D.N.Y. Aug. 24, 2010) .........5

*Gesualdi v. Quadrozzi Equip. Leasing Corp.*,
Order, No. 11 Civ. 00115.................................................................................13

*Grabois v. Action Acoustics. Inc.*,
94 Civ. 7386, 1995 WL 662127 (S.D.N.Y. Nov. 9, 1995) ........................................7

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*,
973 F.2d 155 (2d Cir. 1992)...............................................................................4

*Iron Workers Dist. Council of W. N.Y. and Vicinity Welfare Pension Funds v.*
*Hudson-Steel Fabricators & Erectors, Inc.*,
68 F.3d 1502 (2d Cir. 1995)...............................................................................6

*Jaspan v. Glover Bottled Gas Corp.*,
80 F.3d 38 (2d Cir. 1996)...............................................................................6, 14

*La Barbera v. Best Friends Trucking Co.*,
07 Civ. 4226 (NG)(JO) 2010 WL 1692509 (E.D.N.Y. Apr. 27, 2010) ...................12

*La Barbera v. Tadco Constr. Corp.*,
647 F.Supp.2d 247 (E.D.N.Y. 2009) ..................................................................10

*LaBarbera v. Cent. Design Sys. Inc.*,
No. 06 Civ. 2709 (ARR) (RML) 2006 WL 3422645 (E.D.N.Y. Nov. 28, 1996).........13

*LaBarbera v. Clestra Hauserman, Inc.*,
369 F.3d 224 (2d Cir. 2004)...............................................................................10

*LaBarbera v. David Liepper & Sons, Inc.*,
No. 06 Civ. 1371 (DLI)(JMA) 2006 WL 2423420 (E.D.N.Y. July 6, 2006) ............9

*LaBarbera v. Rockwala, Inc.*,
No. 06 Civ. 6641 (CPS) 2009 WL 1383294 .........................................................8

*LaBarbera v. Specialty Flooring Sys., Inc.*,
No. 08 Civ. 2428, 2009 WL 700066 (E.D.N.Y. Mar 10, 2009) ..............................6

*LeBlanc-Sternberg v. Fletcher*,
143 F.3d 748 (2d Cir. 1998)...........................................................................10, 13

*Local 282 Welfare Trust Fund v. A. Morrison Trucking. Inc.*,
92 Civ. 2076, 1993 WL 120081 (E.D.N.Y. Mar. 30, 1993) ..................................6

*Mason Tenders Dist. Council v. Envirowaste & Transcontractors, Inc.*,
No. 98 Civ. 4040, 1999 WL 370667 (S.D.N.Y. June 7, 1999)..............................10

*N.Y. Ass'n for Retarded Children v. Carey*,
711 F.2d 1136 (2d Cir. 1983)............................................................................11

*New York Teamsters Conf. Pension and Retirement Fund v. Boening Bros. Inc.*,
   92 F.3d 127 (2d Cir. 1996)..................................................................................14

*Shim v. Millennium Group*,
   No. 08 Civ. 3022 (FB) 2010 WL 2772493 (E.D.N.Y. June 21, 2010) ....................11

*Trs. of Local 7 Tile Indus. Welfare Fund v. Caesar Max Tile Corp.*,
   No. 13-CV-924 (RRM) (VMS) 2014 WL 991723 (E.D.N.Y. Feb. 12, 2014)
   (R&R adopted Mar. 13, 2014) ..............................................................................7

*Trs. of Metal Polishers Local 8A-28A Funds v. Prestige Restoration and Maint., LLC*,
   986 F.Supp.2d 159 (E.D.N.Y. Nov. 26, 2013) ........................................................7

*Trustees of Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*,
   460 F.3d 1253 (9th Cir. 2006) .............................................................................10

*Trustees of Laborers Union Local No. 1298 of Nassau & Suffolk Ctys. Benefit Funds v. Sitework Mgmt., Inc.*,
   No. 14-CV-3052 (ADS) (AKT) 206 F. Supp. 3d 790 (E.D.N.Y. 2016)....................7

**Statutes**

29 U.S.C. 1132(g)(2)(D) ...........................................................................................10

29 U.S.C. §§ 1002(3) and 1002(37)............................................................................1

29 U.S.C. §1132(g)(2) .........................................................................................5, 10

29 U.S.C. § 1132 (g)(2)(E) ......................................................................................10

ERISA SECTION 515, 29 U.S.C. § 1145 ...............................................................5, 10

ERISA Section 3(21) 29 U.S.C. § 1002(21)................................................................1

ERISA SECTION 502(g)(2).....................................................................................5, 6

ERISA Section 502(g)(2)(C), 29 U.S.C. § 1132(g)(2)(C)............................................9

ERISA Section 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D) .........................................10

Labor Management Relations Act Section 302(c)(5)(b) 29 U.S.C. §186(c)(5)(b)'s .....................4

**Other Authorities**

Building Material Freight Suppliers Memorandum of Agreement with Local 282 .......................2

Federal Rule of Civil Procedure 8(d) ..........................................................................3

Federal Rule of Civil Procedure 55(a) .............................................................................1

Local Civil Rule 55.2 .........................................................................................................1

Plaintiffs, the Trustees and fiduciaries (the "Trustees") of the Local 282 Welfare, Pension, Annuity, Job Training, and Vacation and Sick Leave Trust Funds (collectively, the "Funds") respectfully submit this memorandum of law in support of their Motion for Default Judgment against defendant GWA Mechanical Inc. ("GWA") for the amount of $517,365.98, plus $165.47 in per diem interest (beginning June 11, 2024).

As set forth below and in the accompanying papers, the Trustees are entitled to a default judgment against GWA pursuant to Federal Rule of Civil Procedure 55(a) and this Court's Local Civil Rule 55.2.

## STATEMENT OF FACTS

The Parties and Collective Bargaining and Trust Agreement

The Funds are multiemployer employee benefit plans under Sections 3(3) and 3(37) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") 29 U.S.C. §§ 1002(3) and 1002(37).  Plaintiffs are the Trustees and fiduciaries of the Funds under ERISA Section 3(21) 29 U.S.C. § 1002(21).  (Decl. of Michael S. Adler ("Adler Decl.") Ex. A (Compl.) ¶¶ 4-5).

GWA is a party to the Building Material Freight Suppliers Memorandum of Agreement with Building Material Teamsters Local 282, International Brotherhood of Teamsters ("Local 282") for the period from May 1, 2018 through April 30, 2023 (the "2023 MOA"). (Decl. of Joseph Puccio ("Puccio Decl.") ¶ 12; Ex. B (2023 MOA); Ex. C (Building Material Freight Suppliers Collective Bargaining Agreement with Local 282 for the period from May 1, 2014 through April 30, 2018 (the "2018 CBA") incorporated by reference into the 2023 MOA).

The CBAs provide that the Restated Agreement and Declaration of Trust (the "Trust Agreement") the Funds' governing document, is "hereby made a part of this Agreement

-1-

with the same force and effect as if fully incorporated herein, and GWA and Local 282 hereby agree that upon the execution of this Agreement they shall be deemed parties to said Trust Agreement[]." (Puccio Decl. Ex. Ex. C (2018 CBA) at 11; Adler Decl. Ex. A (Compl.) ¶ 12).

The Trust Agreement provides:

> In the event the Employer has neither signed nor authorized an Industry association to sign a current collective bargaining agreement on its behalf, the Employer shall remain obligated to make timely contributions to each Fund as set forth in the most recent collective bargaining agreement to which the Employer is a party unless the Trustees have received notice from the Employer, at least 60 days prior to the expiration of the most recent collective bargaining agreement to which the Employer is a party, that the Employer does not intend to sign a new collective bargaining agreement and will not contribute to the Funds for work performed after the expiration of the most recent collective bargaining agreement to which it is a party. If the Employer makes contributions at the rates stated in the current collective bargaining agreement applicable to its Industry, the Employer shall be deemed a party to that current collective bargaining agreement, and shall be obligated to make timely contributions to each Fund as set forth in that collective bargaining agreement.

(Puccio Decl. Ex. A (Trust Agreement) at 24-25).

GWA evinced intent to be bound by the Building Material Freight Suppliers Memorandum of Agreement with Local 282 for the period from May 1, 2023 through April 30, 2029 (the 2029 MOA") (collectively, with the 2023 MOA and 2018 CBA, the "CBAs"). (Puccio Decl. ¶ 14; Ex. D (2029 MOA)).

Specifically, GWA did not notify the Trustees of intent not to sign a new collective bargaining agreement, as required by the Trust Agreement. (Puccio Decl. ¶ 16).

The CBAs obligate GWA to submit remittance reports[1] and remit contributions to the Funds on behalf of its employees who are covered by the CBAs, at specified rates for each hour of covered employment, subject to certain limitations set forth in the CBAs.  (Puccio Decl. Ex. A (2023 MOA); Ex. B (2018 CBA) at 9-11; Ex. D (2029 MOA); Adler Decl. Ex. A (Compl.) ¶ 11).

Pursuant to the CBAs, contributions are due forty-five (45) days after the close of the calendar month.  (Puccio Decl. Ex. A (2023 MOA); Ex. B (2018 CBA) at 10; Ex. D (2029 MOA)). The CBAs and the Trust Agreement also require GWA to submit to periodic audits (referred to as "agreed-upon procedures engagements." (Puccio Decl. Ex. A (Trust Agreement), at 25; Adler Decl. Ex. A (Compl.) ¶ 15).

<u>The Litigation</u>

This action commenced on March 20, 2024 with the filing of the Summons and Complaint.  (Adler Decl. Ex. A (Compl.)). GWA was served with the complaint on March 22, 2024.  The Affidavit of Service was filed with the Clerk of Court on March 22, 2024.  (Adler Decl. Ex. B (Aff. of Svc.)). GWA has not answered or otherwise moved with respect to the complaint, and the time for GWA to answer or otherwise move has not been extended. (Adler Decl. ¶¶ 7-8). The Clerk of the Court entered GWA's default on April 25, 2024. (Docket No. 8).

## **ARGUMENT**

## I.    **THE TRUSTEES ARE ENTITLED TO A DEFAULT JUDGMENT**

Federal Rule of Civil Procedure 8(d) provides that a default constitutes an admission of all well-pleaded factual allegations in the Compl., except those relating to damages.

---

[1] Remittance reports provide the Employer's statement of the employees who performed work covered by the CBAs and the number of hours each such employee worked in covered employment.  (Puccio Decl. ¶ 19; Ex. A (Trust Agreement), at 25).

*See, e.g.*, *Finkel v. Romanowicz*, 577 F.3d 79, 83 n. 6 (2d Cir. 2009); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).  Here, GWA is in default and therefore admits the well-pled allegations of the complaint as to liability.  *See Greyhound*, 973 F.2d at 158.  In particular, GWA admits that it is party to the CBAs and that it failed remit the contributions owing, submit to audit, or submit remittance reports, as alleged in the complaint.

Even though GWA's failure to respond to the complaint constitutes an admission of the well-pled allegations as to liability, the relevant declarations and documents establish and prove that GWA is liable for the contributions and attendant damages due, failed to submit to audit and failed to submit relevant remittance reports.

## II.    GWA IS BOUND BY THE TERMS OF THE TRUST AND COLLECTIVE BARGAINING AGREEMENTS

Section 302(c)(5)(b) of the Labor Management Relations Act (the "LMRA") 29 U.S.C. §186(c)(5)(b)'s requirement that payments to a trust fund must be made pursuant to a "written agreement with the employer," may be satisfied even though the agreement was not signed by the employer in question, where the employer's conduct in making fund contributions adequately established that the employer intended to adopt the agreement.

Here, GWA signed the 2023 MOA, which in turn bound it to the Trust Agreement. *See Cent. States, Se. and Sw. Areas Pension Fund v. O'Brien & NYE Cartage Co.*, 06 Civ. 4988, 2007 WL 625430, *3 n.1 (N.D. Ill. Feb. 22, 2007) ("This Court finds it incredible that a corporation would bind itself to the terms of documents that it did not direct someone to read and investigate," and holding that the employer was bound to trust agreement amendment's venue selection provision even though that provision was not in the trust agreement or participation agreement at the time that the participation agreement was executed).

Here, GWA did not terminate the 2023 MOA pursuant to Trust Agreement terms, Puccio Decl. ¶ 16; Ex. A (Trust Agreement) at 24-25, and therefore is bound by the 2029 MOA's terms.

III.   **GWA'S ADMITTED FAILURE TO MAKE THE CONTRIBUTIONS OWING CONSTITUTES A VIOLATION OF SECTION 515 OF ERISA**

The trustees of a multiemployer plan have a fiduciary obligation under ERISA to collect delinquent contributions owed to the plan by employers. *See Cent. States, Se. and Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 571-72 (1985) ("ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries….").

Section 515 of ERISA, 29 U.S.C. § 1145, provides the statutory basis for trustees to collect delinquent contributions from employers, stating:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. *See also, e.g., Gesualdi v. Innovative Disposal Solutions*, No. 09 Civ. 820(ADS)(ARL) 2011 WL 1158444, at *2 (E.D.N.Y. Jan. 18, 2011); *Gesualdi v. MMK Trucking, Inc.*, No. 09 Civ. 1484(SLT)(AKT) 2010 WL 3619569, at *4 (E.D.N.Y. Aug. 24, 2010).

GWA violated Section 515 by not remitting contributions due to the Funds. *Id.*

IV.   **THE TRUSTEES ARE ENTITLED TO DAMAGES PURSUANT TO SECTION 502(g)(2) OF ERISA AND THE TRUST AGREEMENT**

When trustees prevail in a Section 515 action for delinquent contributions, Section 502(g)(2) of ERISA requires that the court award the trustees not only the contributions owing but also interest on the unpaid contributions, liquidated damages, and reasonable attorney's fees and costs. *See* 29 U.S.C. §1132(g)(2); *Benson v. Brower's Moving & Storage, Inc.*, 726 F.Supp. 31,

-5-

36 (E.D.N.Y. 1989) *aff'd* 907 F.2d 310 (2d Cir. 1990) (noting that "[t]here is no question that Section 502(g)'s remedies are *mandatory*."). Section 502(g)(2) also requires payment of contributions that become due between the time suit is filed and when judgment is entered. *See Iron Workers Dist. Council of W. N.Y. and Vicinity Welfare Pension Funds v. Hudson-Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1506 (2d Cir. 1995); *LaBarbera v. Specialty Flooring Sys., Inc.*, No. 08 Civ. 2428, 2009 WL 700066, at *1 n1 (E.D.N.Y. Mar 10, 2009) (same).

The Trust Agreement, to which GWA is bound, similarly requires interest, liquidated damages, audit fees, and attorney's fees and costs. (Puccio Decl. Ex. A (Trust Agreement) at 27-28).

The following are the amounts which should be awarded to the Funds:

A.    **Contributions**

1.    The Agreed-Upon Procedures Engagement (Audit)

As noted, the Trustees have a fiduciary obligation to collect contributions. The right to audit is critical to ensuring that all contributions due are accounted for and collected. *See Jaspan v. Glover Bottled Gas Corp.*, 80 F.3d 38, 41 (2d Cir. 1996) ("Fund trustees have a fundamental duty to locate and take control of fund property – a duty for which the right to audit is crucial") (citations omitted). In accordance with this obligation, the Trustees perform agreed-upon procedures engagements (commonly referred to as "audits") of companies that are bound to a collective bargaining agreement. (Puccio Decl. ¶ 21). The Funds performed such an audit of GWA for the period from September 1, 2018 through October 1, 2019 (Audit # 20-1143). The accompanying declaration of the Trustees' outside auditor, Ken Jones, specifies in detail the procedures used to determine GWA's $3,514.01 audited contribution delinquency.

It is well-established that courts may assess damages by relying on the results of audits or an auditor's opinion. *See Local 282 Welfare Trust Fund v. A. Morrison Trucking. Inc.*,

92 Civ. 2076, 1993 WL 120081, at *2 (E.D.N.Y. Mar. 30, 1993) ("Plaintiffs are correct in asserting that it is appropriate to rely on an audit to prove that defendant did not make the required contributions.") (Citations omitted); G*rabois v. Action Acoustics. Inc.*, 94 Civ. 7386, 1995 WL 662127, at *5 n. 3 (S.D.N.Y. Nov. 9, 1995) ("Courts have found it appropriate to rely on an audit or auditor's opinion to prove that defendant employers did not make required contributions to the funds.") (Citations omitted); *Gesualdi v. Fortunata Carting Inc.,* 5 F. Supp. 3d 262, 273 (E.D.N.Y. 2014) (awarding requested contributions where plaintiff submitted audit reports, worksheets, declarations of auditor explaining basis for results that could be verified by the Court); *Trustees of Laborers Union Local No. 1298 of Nassau & Suffolk Ctys. Benefit Funds v. Sitework Mgmt., Inc.,* No. 14-CV-3052 (ADS) (AKT) 206 F. Supp. 3d 790, 796 (E.D.N.Y. 2016) (modifying R & R denying delinquent contributions based solely on audit report where plaintiffs submitted a 14-page audit report complete with worksheets detailing calculations of unpaid contributions); *Trs. of Local 7 Tile Indus. Welfare Fund v. Caesar Max Tile Corp.,* No. 13-CV-924 (RRM) (VMS) 2014 WL 991723, at *4 (E.D.N.Y. Feb. 12, 2014) (relying on audit report that included supporting data) (R&R adopted Mar. 13, 2014); *Trs. of Metal Polishers Local 8A-28A Funds v. Prestige Restoration and Maint., LLC,* 986 F.Supp.2d 159, 167 (E.D.N.Y. Nov. 26, 2013) (relying on audit report where auditor submitted affidavit explaining calculations); *Fuchs v. Tara General Contracting, Inc.,* No. 06-CV-1282 (ETB) 2009 WL 2922840, at *7 (E.D.N.Y. Sept. 8, 2009) (awarding unpaid contributions where auditor declaration accompanied audit report and explained how amounts were calculated).

Considering the Funds' reasonable calculation of delinquent contributions as set forth in the Audit, and as detailed in the Declaration of Ken Jones, the Court should find that GWA

owes the Funds $3,514.01 in contributions due for the period from September 1, 2018 through October 1, 2019.

        2.    <u>Estimated Contributions</u>

As noted, the Trustees have a fiduciary obligation to collect contributions.

If an Employer refuses to submit to audit or fails to submit remittance reports, the Trustees estimate the contributions due based on formulae in the Trust Agreement.  (Puccio Decl. ¶ 27; Ex. A (Trust Agreement) at 25-26; Adler Decl. Ex. A (Compl.) ¶¶ 22-25);  *Gesualdi v. Cirillo*, No. 09-CV-4570 (KAM)(JMA) 2011 WL 666196, at *3 fn.3 (E.D.N.Y. Jan. 3, 2011) (applying this Trust Agreement provision to calculate contributions due for months in which remittance reports were not submitted, noting that the provision also states: "the amount of contributions so computed shall be binding on the employer and shall be deemed the amount due from the employer for the purpose of any legal proceeding.");  *LaBarbera v. Rockwala, Inc*., No. 06 Civ. 6641 (CPS) 2009 WL 1383294, at *5 (E.D.N.Y. May 15, 2009 (estimating contributions due based on same formula).

As a result of GWA's failure to submit to audit or submit remittance reports, the Trustees estimated the contributions due based on estimate formulae in the Trust Agreement. (Puccio Decl. ¶¶ 30-37). In short, for months where remittance reports were not submitted, contributions due were estimated by adding 10% to the number of hours for the month in which the greatest number of hours were reported in the previous twelve months (in which at least one hour of covered employment was reported), and multiplying that number of hours by the applicable contribution rate.  (*Id*.; Ex. E (remittance reports)).

Applying that formula, GWA owes $332,230.80 in estimated contributions for October 2021 through March 2024.  (*Id*).

3.    Late-Paid Contributions

GWA paid late $4,335.04 in contributions for the month of March 2020, with payment being remitted on July 17, 2020. (Puccio Decl. ¶ 38; Adler Decl. Ex. A (Compl.) ¶ 36).[2]

B.    **Interest**

The Trust Agreement provides for interest on contributions at the rate of 1-1/2 percent per month, or eighteen percent (18%) per year.  (Puccio Decl. Ex. A (Trust Agreement) at 27).  *See also LaBarbera v. David Liepper & Sons, Inc.*, No. 06 Civ. 1371 (DLI)(JMA) 2006 WL 2423420, at *3 (E.D.N.Y. July 6, 2006) (applying 1-1/2 percent per month interest rate under comparable Trust Agreement provision).  Accordingly, the Trustees seek interest on the unpaid and late-paid contributions at a rate of eighteen percent per year.

GWA owes $79,296.07 in total interest, plus owes $165.57 in per diem interest (which begins accruing on June 11, 2024). (Adler Decl. ¶¶ 34-46).

C.    **Liquidated Damages**

Pursuant to Section 502(g)(2)(C) of ERISA, 29 U.S.C. § 1132(g)(2)(C) and the Trust Agreement, GWA is obligated to remit liquidated damages.  (Puccio Decl. Ex. A (Trust Agreement) at 27).  *See also LaBarbera v. David Liepper & Sons, Inc.*, No. 06 Civ. 1371 (DLI)(JMA) 2006 WL 2423420, at *4 (E.D.N.Y. July 6, 2006) (describing comparable Trust Agreement provision).  GWA owes $93,371.88 in liquidated damages. (Adler Decl. ¶¶ 47-51).

D.    **Audit Fees**

The Trust Agreement provides that an employer is liable for the Funds' auditors fees where the collection of delinquent contributions founding owing in an audit was referred by the Trustees to counsel.  (Puccio Decl. Decl. Ex. A (Trust Agreement) at 30-31 ("Auditor's fees –

---

[2] The complaint mistakenly lists the March contributions as May contributions.

… in all cases in which: … collection of GWA's delinquent contributions reported by the audit is referred to the Funds' attorney.")).  Here, the outside auditors charged the Funds $1,353.93 in fees for performing Audit #20-1143.  (Puccio Decl. ¶ 40; Jones Decl. ¶ 35; Ex. B (spreadsheet)).  *See La Barbera v. Tadco Constr. Corp.*, 647 F.Supp.2d 247, 254 (E.D.N.Y. 2009) (awarding audit costs); *see generally* 29 U.S.C. § 1132 (g)(2)(E) (providing for award of "other legal or equitable relief as the court deems appropriate").

    E.    **Attorney's Fees and Costs**

            Section 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D) also requires an award of attorney's fees and costs upon a determination that an employee benefit plan is entitled to judgment for unpaid contributions.  *See LaBarbera v. Clestra Hauserman, Inc.*, 369 F.3d 224, 226 (2d Cir. 2004) (noting that award of attorney's fees and costs is mandatory under 29 U.S.C. § 1132(g)(2)); *Mason Tenders Dist. Council v. Envirowaste & Transcontractors, Inc.*, No. 98 Civ. 4040, 1999 WL 370667 at *2 (S.D.N.Y. June 7, 1999) ("[a]lthough the amount of any such award rests within the Court's discretion, the award itself is mandatory" in an action to collect delinquent contributions under ERISA Section 515); *see also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (holding that expenses such as "duplicating, postage, telephone, computerized legal research and other office expenses" are ordinarily recoverable and not absorbed into an attorney's fee as overhead); *Trustees of Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.,* 460 F.3d 1253, 1258-59 (9th Cir. 2006) (awarding reimbursement under 29 U.S.C. 1132(g)(2)(D) for computerized legal research costs).    Further, the Trust Agreement provides that in collection actions, the Trustees are entitled to an award of attorney's fees equal "to the actual amount to be billed to the Trustees by their counsel for work performed in connection with this matter."  (Puccio Decl. Ex. A (Trust Agreement) at 30).

-10-

To calculate attorney's fees, courts in the Second Circuit determine the reasonable hourly rate, defined as "what a reasonable, paying client would be willing to pay," and multiply that rate by the number of hours reasonably expended in prosecuting an action. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 (2d Cir. 2008) *superseding* 493 F.3d 110 (2d Cir. 2007). To be awarded attorney's fees and costs, plaintiffs must present contemporaneous time records that indicate "for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

As outlined by the Court in *Shim v. Millennium Group*, No. 08 Civ. 3022 (FB)(VVP) 2010 WL 2772493, *1 n.2 (E.D.N.Y. June 21, 2010) in considering "reasonableness" of the hourly rates and hours expended, the Court looks toward case-specific factors, which include:

> the 'complexity and difficulty of the case, the available expertise and capacity of the client's other counsel, the resources required to prosecute the case effectively, the timing demands of the case, [and] whether an attorney might have an interest in achieving the ends of the litigation or might initiate the representation himself,'— *Arbor Hill*, 522 F.2d at 184, 187–90—as well as the twelve factors the Fifth Circuit employed in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The *Johnson* factors include (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to properly perform the relevant services; (4) the preclusion of other employment attendant to counsel's acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) fee awards in similar cases. *Johnson*, 488 F.2d at 717–19.

Specifically, the attorneys and paralegals litigating this case for the Funds have significant experience, including handling many ERISA actions on behalf of the Funds and other

-11-

clients before the Court.  The attorneys who worked on this case therefore have substantial

experience in cases seeking to collect delinquent contributions on behalf of employee benefit

plans.  (Adler Decl. ¶¶ 60-61).

       Proving damages, even in default motions, takes considerable time and effort.  As

noted in *La Barbera v. Best Friends Trucking Co.*, 07 Civ. 4226 (NG)(JO) 2010 WL 1692509, at

* 2 (E.D.N.Y. Apr. 27, 2010):

> Despite defendant's default in this straightforward ERISA action,
> and despite [counsel's] acknowledged expertise in ERISA litigation,
> the work required of plaintiffs' counsel was time-consuming and
> painstaking, and resulted in the recovery of a significant amount of
> unpaid contributions.

       As is evident from the detailed explanation in the Adler Decl. ¶ 58, counsel

expended time and effort in this action drafting demand letters, communicating with the Fund

Office prior to the filing of the complaint, preparing the complaint, communicating with the

Trustees regarding the case, calculating the amounts and preparing this default motion.  (Like with

all default motions, even in instances where prior motions in the same case have been filed,

extensive time is necessary to calculate and update the amounts due, revise the documents filed to

account for the additional amounts due, audit disputes, and communications with the defendant,

among other changes).

       The Trustees note that the rates agreed to after negotiations with counsel and

charged here are in line with the rates recently awarded by the Court in comparable ERISA

collection actions.  *See, e.g., See, e.g., Gesualdi, et al. v. Rockwala Inc., et ano*, Default Judgment,

No. 18 Civ. 5470 (JBW) Dkt. No. 15 (E.D.N.Y. Feb. 21, 2019) (awarding for 2016 to 2017, $425

per hour for partners and $115 per hour for paralegals, and for 2018, $450 per hour for partners

and $120 per hour for paralegals as of 2019) – as detailed in *Gesualdi, et al. v. Rockwala Inc., et*

*ano*, Declaration of Michael S. Adler, No. 18 Civ. 5470 (JBW) Dkt. No. 11-4, at 10-13 (E.D.N.Y.

Nov. 14, 2018); *Ferrara v. Inter-City Mech. Corp.*, Report and Recommendation, No. 10 Civ. 05843 (SJF) (WDW) Dkt. No. 38, at 8 (E.D.N.Y. Apr. 15, 2013) adopted by Order, Dkt. No. 39 (E.D.N.Y. Jun. 7, 2013) (finding that the rates charged "are reasonable for ERISA work in the Eastern District," and recommending approval of a partner rate at $400 per hour and paralegal rate at $110 per hour); *Ferrara v. BD Haulers Inc.*, Default Judgment, No. 11 Civ. 0940 (ADS) (WDW) Dkt. No. 18 (E.D.N.Y. Feb. 24, 2012) (approving senior associate rate of $375 per hour, junior associate rate of $275 per hour, and paralegal rate of $110 per hour); *Ferrara v. Nexus Mech.*, Decision & Order at 2, No. 11 Civ. 2774 (ERK) (SMG) Dkt. No. 12 (E.D.N.Y. Mar. 13, 2012) (same); *Ferrara v. Joseph Speizio Excavating Corp.*, Default Judgment and Order, No. 11 Civ. 0764 (SJF) (ETB) Dkt. No. 22 (E.D.N.Y. Mar. 21, 2012) (same); *Ferrara v. Atlas Concrete Structures Corp.*, Memorandum & Order, No. 11 Civ. 2775 (JS) (ETB) Dkt. No. 33 (E.DN.Y. Aug. 20, 2012) (same); *Gesualdi v. Quadrozzi Equip. Leasing Corp.,* Order, No. 11 Civ. 00115 (RJD) Dkt. No. 23 (E.D.N.Y. Dec. 12, 2012) (same). *See also Ferrara v. Northwest Construction and Excavating Corp.*, Memorandum Decision and Order, 10 Civ. 01277 (BMC) Dkt. No. 26 (E.D.N.Y. Sept. 30, 2010) (awarding $93,247.40 in attorney's fees and $18,613.18 in costs (excluding audit costs) in a default motion where considerable discovery and motion practice took place prior to the default motion filing).

The Trustees are therefore entitled to $7,069.00 in attorney's fees incurred on behalf of the Funds in this action.  (Adler Decl. ¶ 57 & Ex. C (bills)).

The Trustees are also entitled to recover the costs that they have been necessarily incurred in the prosecution of this action. *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (expenses such as "duplicating, postage, telephone, computerized legal research and other office expenses" are ordinarily recoverable and not absorbed into an attorney fee as

-13-

overhead); *LaBarbera v. Cent. Design Sys. Inc.*, No. 06 Civ. 2709 (ARR) (RML) 2006 WL 3422645, at *4 (E.D.N.Y. Nov. 28, 1996) (citations and internal quotations omitted) ("A prevailing party may be reimbursed for expenditures which add to the proceeding and are not part of the attorney's ordinary overhead."). The total amount of costs expended in this action, excluding audit fees, is $530.29. (Adler Decl. ¶ 62; Ex. C (bills); Ex. D (invoice)).

## V.   THE TRUSTEES ARE ENTITLED TO AN ORDER REQUIRING THE COMPANY TO SUBMIT ALL OUTSTANDING REMITTANCE REPORTS

As set out above, GWA is required to submit remittance reports pursuant to the CBAs and Trust Agreement, as well as ERISA. The Funds need remittance reports from employers so that accurate allocation of contributions due can be made to GWA's employees. Accordingly, the Trustees are entitled to an order requiring GWA to submit all outstanding remittance reports.

## VI.   NOTWITHSTANDING THE AWARD OF DAMAGES FOR THE ESTIMATED AUDIT, THE TRUSTEES ARE ENTITLED TO AN ORDER REQUIRING GWA TO SUBMIT TO AUDIT

As set out above, GWA is required to submit to audit pursuant to the CBAs and Trust Agreement, as well as ERISA. In fact, "Fund trustees have a fundamental duty to locate and take control of fund property—a duty for which the right to audit is crucial." *Jaspan*, 80 F.3d at 41. The Trust Agreement provide that the Trustees are entitled to a mandatory injunction directing GWA to submit to audit. (Puccio Decl. Ex. A (First Trust Agreement) at 27; Ex. B (Second Trust Agreement) at 25). Accordingly, money damages are not sufficient to make the Funds whole and the Trustees are entitled to an order directing GWA to submit its books and records to audit for the period commencing [first date of estimated audit period], to determine the contributions due to the Funds. *See e.g.*, *New York Teamsters Conf. Pension and Retirement Fund v. Boening Bros. Inc.*,

92 F.3d 127, 130-32 (2d Cir. 1996) (affirming district court order requiring employer submit to audit).

## **CONCLUSION**

For the foregoing reasons, the Trustees respectfully request that the Court (a) grant them judgment in the total amount of $517,365.98, plus $165.47 in per diem interest (beginning June 11, 2024) for unpaid and estimated contributions, interest, liquidated damages, audit fees, attorney's fees and costs pursuant to ERISA and the Trust Agreement; (b) order GWA to submit all outstanding remittance reports; and (c) order GWA to submit its books and records to audit for all unaudited periods.

Dated: June 7, 2024
      New York, New York

/s/ Michael S. Adler
Michael S. Adler
COHEN, WEISS and SIMON LLP
909 Third Avenue, 12th Floor
New York, New York 10022
212-563-4100

Attorneys for Plaintiffs

-15-